# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| MICHAEL J. BYNUM and CANADA HOCKEY LLC d/b/a EPIC SPORTS,<br><br>Plaintiffs,<br><br>vs.<br><br>TEXAS A&M UNIVERSITY ATHLETIC DEPARTMENT; TEXAS A&M UNIVERSITY 12TH MAN FOUNDATION; BRAD MARQUARDT, in his individual capacity; ALAN CANNON, in his individual capacity; and LANE STEPHENSON, in his individual capacity,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 4:17-cv-00181<br><br>Jury Trial Demanded |

## FIRST AMENDED COMPLAINT

Plaintiffs Michael J. Bynum ("Bynum") and Canada Hockey LLC doing business as Epic Sports (collectively "Plaintiffs"), pursuant to Rule 15(a)(2), Federal Rules of Civil Procedure, and the agreement of the parties, bring this first amended complaint against the Texas A&M University Athletic Department ("A&M Athletic Department"), the Texas A&M University 12th Man Foundation (the "Foundation"), and Brad Marquardt, Alan Cannon, and Lane Stephenson, all in their individual capacities (collectively the "Defendants"). In support thereof, Plaintiffs allege the following:

## NATURE OF ACTION

1.      "An Aggie does not lie, cheat or steal or tolerate those who do."  This is the Aggie Code of Honor by which Texas A&M students and alumni are expected to abide.  Yet Defendants blatantly ignored these values when they unlawfully took a written biography of E. King Gill—the individual famously known as the "12th Man" and the man behind the Aggie's claimed 12th Man tradition—and copied and distributed it as if it was their own in complete disregard of Plaintiffs' exclusive copyright.

2.      The Defendants did so because of their unyielding desire to prove that Texas A&M University (the "University") is the true owner of the "12th Man" tradition, story, and trademark— a crucial component of Defendants' well-publicized and years-long campaign to build the University's 12th Man brand and increase donations to the A&M Athletic Department.  The Defendants' conduct, as detailed below, constitutes willful copyright infringement and an unconstitutional taking of Plaintiffs' property.

3.      In January 2014, Defendants published an article titled "The Original 12th Man" on the official website for news about Aggie athletics.  The A&M Athletic Department, however, did not own the story it published. Bynum, an accredited sports author who had been researching and writing about Gill since before 1997, did.

4.      Several years after Defendants received a PDF copy of Bynum's unpublished biography of E. King Gill titled "An A&M Legend Comes to Life" (the "Gill Biography"), for the sole and limited purpose of locating certain additional photos for Bynum's book, defendant Marquardt retyped his printed copy of the Gill Biography, changed the title, deleted Bynum's name, and made other minor edits such as writing Gill's first name wrong.  Defendants thereafter published this pirated version of Bynum's work.  The article was promoted to hundreds of thousands of people

2

on the Internet and through social media during a critical time during which there were ongoing trademark disputes over the 12TH MAN trademark, as well as a $450-million capital campaign—claimed in 2012 to be the largest stadium redevelopment in college football history—by the A&M Athletic Department to refurbish Kyle Field football stadium, the "Home of the 12th Man."

5.      Bynum intended to publish the Gill Biography as the opening chapter of his book about the life and lasting impact of E. King Gill, titled 12th Man: The Life and Legend of Texas A&M's E. King Gill (the "*12th Man* book").  But by unlawfully taking, copying, and publishing the heart of Bynum's work profiling Gill to Bynum's core audience, Defendants destroyed Plaintiffs' prospects for a successful print run, and the *12th Man* book remains unpublished to this day.

## PARTIES

6.      Plaintiff Bynum is an individual residing in Birmingham, Alabama.  Bynum is the copyright owner of the Gill Biography at issue in the instant action.  He is also an author of, and the editor and copyright owner of the unpublished *12th Man* book, in which the Gill Biography serves as an opening chapter.

7.      Plaintiff Canada Hockey LLC is a Delaware limited liability corporation with its principal place of business in Birmingham, Alabama.  Canada Hockey LLC is in the business of publishing books under the Epic Sports imprint.  Bynum is the sole shareholder and President of Canada Hockey LLC.  Pursuant to a publishing agreement with Bynum, Canada Hockey LLC owns the exclusive rights to publish the *12th Man* book, including the Gill Biography, in hardcover, softcover, and e-book formats.

3

8.      Texas A&M University Athletic Department is the athletic department of Texas A&M University, a public university in the Texas A&M University System established by the State of Texas and based in College Station, Texas.  The A&M Athletic Department is 100% self-supporting and receives no funding from the State of Texas or public tax dollars, pursuant to Tex. Const. art. VII, § 17(f) and other state law.  In addition to its annual revenue from ticket sales, media rights, and other licensing agreements, the A&M Athletic Department is funded by co-defendant, the Foundation.  *See id.*

9.      Defendant Texas A&M University 12th Man Foundation (the "Foundation") is a 501(c)(3) non-profit organization operated for the benefit of the University with a principal place of business at 756 Houston Street, College Station, Texas.  The Foundation accepts donations to provide financial support to the A&M Athletic Department.  Donations to the Foundation are paid to the A&M Athletic Department to fund student-athlete scholarship costs, new facilities, facility upgrades, athletic programs, and the general operating budget needs of the A&M Athletic Department.  According to the Foundation's public tax forms and the Foundation's website, during the four-year period from July 1, 2010 to June 30, 2014, the Foundation received contributions of $390,689,133 on behalf of the A&M Athletic Department, and after making distributions to the A&M Athletic Department in the sum of $65,104,669, had net assets of $340,638,940.

10.      On information and belief, Brad Marquardt is an individual residing in this District at 9246 Brookwater Circle, College Station, Texas.  Marquardt is the Associate Director of Media Relations for the A&M Athletic Department.  He is responsible for providing content for the A&M Athletic Department's official Twitter account dedicated to its football program, @AggieFootball.  He previously served as the editor of the Foundation's alumni publication, the "12th Man Sports

Hotline," a precursor to the current publication, the "12th Man Magazine." In the A&M Athletic Department, Marquardt reports to co-defendant Alan Cannon.

11.     On information and belief, Alan Cannon is an individual residing in this District at 608 Castlebrook Drive, College Station, Texas. Cannon is the Associate Athletic Director of Media Relations for the A&M Athletic Department. Cannon is responsible for handling media relations for all men's and women's sports programs by the A&M Athletic Department, with a focus on football. Upon information and belief, Cannon was responsible for the content of articles published on the A&M Athletic Department's former official website, www.aggieathletics.com ("the A&M Athletic Department Website") (which is now www.12thman.com).

12.     On information and belief, Lane Stephenson is an individual residing in this District at 1309 Bayou Woods Drive, College Station, Texas. Stephenson is the former Director of News & Information Services at Texas A&M University. Upon information and belief, at least in 2014, Stephenson was responsible for the content of the University's e-newsletter and website, the "TAMU Times" (now known as "Texas A&M Today"), and the University's official Twitter account, @TAMU.

**JURISDICTION AND VENUE**

13.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332(a), and 1338(a).

14.     This Court has personal jurisdiction over A&M Athletic Department and the Foundation because each maintains its principal place of business in this District. This Court has personal jurisdiction over Marquardt, Cannon, and Stephenson (collectively, the "individual Defendants") because, upon information and belief, each of them resides within this District.

Personal jurisdiction is also proper in this District because a substantial part of the events giving rise to the claims alleged herein arose in this District.

15.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c) and § 1400(a), because (a) a substantial part of the events giving rise to Plaintiffs' claims alleged herein occurred in this District and (b) all Defendants are subject to personal jurisdiction in this District.

## FACTS

### Bynum's Longstanding Business of Developing and Publishing Sports Books

16.     Bynum is a widely-published author and editor of sports history and memorabilia books covering a range of sports including football, ice hockey, basketball, baseball, and soccer. His experience in publishing sports books began in the 1970's, when he served as a student manager for the University of Alabama's football team under Coach Paul "Bear" Bryant. Bynum's first book, *High Tide*, a profile of the 1977 Alabama team and their journey to win the national championship, was published in 1978. After writing two more books over the next two years, he worked as a researcher for NBC TV's *Bear Bryant: Countdown to 315*, which Joe Namath narrated.

17.     Since then, Bynum has written, edited, and published approximately 100 other books, including books on well-known figures, teams, and games in football. For example, in 1980, Bynum published his first book on the Texas A&M football program, *Aggie Pride: A Story of Class and Courage.* He has also edited or published books on the University of Texas-Texas A&M rivalry, a centennial history of Texas Christian University's football program, biographies of Texas football heroes such as Doak Walker, Sammy Baugh, John David Crow, and Darryl Royal, and a coffee table book on Texas high school football titled *King Football*.

18.     Bynum's sports history and memorabilia books have been well-received, generating strong sales. Several of his books on ice hockey, including books about the Toronto Maple Leafs,

6

the Detroit Red Wings, the Montreal Canadiens, and Canadian hockey history, have sold more than 50,000 copies each. Bynum's books on the Michigan, Tennessee, Iowa, and Ohio State football teams similarly sold over 50,000 copies each. His books on Texas football have likewise sold extremely well. *King Football* sold more than 50,000 copies in various editions, and his book on the Aggie-Longhorn football rivalry sold over 25,000 copies.

19.     Bynum's role in the creation of his books is often as a researcher and editor. Bynum begins his book development process by conducting extensive research, including interviewing friends and family of the individuals to be profiled, and reviewing original documents such as photographs, letters, and diaries. He regularly employs writers on a work-for-hire basis to use his original research to write specific pieces for inclusion in his books. At times, he purchases the rights to reprint previously published content.

20.     Major publishing houses have published books edited by Bynum. Canada Hockey LLC, Bynum's own publishing company, has also published several of his books under the imprint Epic Sports.

### Bynum's *12th Man* Book on E. King Gill

21.     While working on *Aggie Pride*, his first book on the Texas A&M football program, and while interviewing A&M officials for his biography of Paul "Bear" Bryant, Bynum was drawn to the lore of Texas A&M's "12th Man," a tradition in which A&M students, or "Aggies," stand together during football games. The University's now famous 12th Man tradition was inspired by the actions of E. King Gill at the 1922 football game known as the "Dixie Classic." Gill, a squad player for A&M's football team, who was already training with the university's basketball team, was up in the press box watching his team face the then top-ranked Prayin' Colonels of Centre College, when he was waved down to the sideline before halftime to suit up in case his injured

7

team ran out of reserve players.  Gill stood on the sideline, ready to play, for the remainder of the game.

22.     Gill's commitment to step up for his team when in need later became a legend that was passed down from generation to generation of Aggies.  Today, the 12th Man tradition is a symbol of the Aggies' unity, loyalty, and willingness to serve when called upon to do so, and is woven into many aspects of life at A&M.  In 1988, the A&M Athletic Department erected new signage on the student section of its football stadium, Kyle Field, declaring it as the "Home of the 12th Man."  In 1990, Texas A&M University registered the trademark 12TH MAN with the U.S. Patent and Trademark Office. Since then, it has aggressively enforced its trademark.  On the University's website at www.12thman.tamu.edu, the University boasts that it has fought over 550 infringement issues.  This includes legal actions against the Seattle Seahawks and Indianapolis Colts of the NFL, both of which refer to their fans as the "12th Man."  The A&M Athletic Department has also erected two statues of Gill that stand on the University's campus.  The Aggie Club, an organization founded in 1950 to raise donations to support the A&M Athletic Department, was later renamed the "12th Man Foundation" in the late 1980's.  Numerous other organizations, scholarships, and programs at the University are named after the 12th Man tradition born out of Gill's spirit.

23.     Despite these public acknowledgements of Gill's contribution to A&M, Bynum recognized that A&M's official history of Gill, the "original 12th Man," was lacking because it essentially reduced Gill's lifetime of commitment to A&M and service to his community to his actions at a single football game.

24.     Bynum wanted to flesh out Gill's *entire* story, and began developing a book that would separate the individual behind the Aggie tradition from the legend as well as present a modern-day look at Gill's lasting impact on A&M football.  This book would eventually become Bynum's

8

*12th Man* book.  Bynum conducted substantial background research on Gill, including visits to Gill's hometown and Texas libraries and archives.  In 1997, Bynum hired Whit Canning, a well-known sportswriter for the *Fort Worth Star-Telegram*, on a work-for-hire basis to use Bynum's research and write a biography of Gill, which Bynum planned to include in his *12th Man* book.  That same year, Canning, who had earlier written biographies on Doak Walker and Sammy Baugh for Bynum, supplemented Bynum's research with his own investigative efforts and delivered to Bynum the Gill Biography, titled "An A&M Legend Comes to Life," as well as a game story account of the 1922 Dixie Classic.

25.    Over the next decade, Bynum continued to research Gill for his *12th Man* book as well as other individuals, teams, and games in Texas football history for other sports books he was working on.  In 2000 and 2001, Bynum made multiple trips to Texas, including visits to Gill's high school in Dallas and to Texas A&M.  During those visits, Bynum met with the A&M Athletic Department personnel, including Marquardt, an Associate Director of Media Relations, and Cannon, then, an Assistant Athletic Director for Media Relations.  Bynum informed Marquardt and Cannon of his research and work to develop the *12th Man* book in order to confirm certain facts about Gill's athletic tenure at Texas A&M.  Bynum also worked with Glen Johnson, a photographer for the A&M Athletic Department, and representatives from the Cushing Archives at the University to locate photographs that Bynum licensed to include in his *12th Man* book.  On prior occasions, Bynum has similarly contacted A&M Athletic Department personnel, including Marquardt and Cannon, to confirm facts to be incorporated into his other sports books about football in Texas, the Southwest Conference, and the Big 12 Conference.

9

26.     Bynum devoted over 1,500 hours to conducting research for, and writing and editing the *12th Man* book.  During this process, Bynum asked his friend and confidante, Jerry Cooper, to proofread his drafts.  By 2006, Bynum was close to completing the draft of the *12th Man* book.  The draft included the Gill Biography in its entirety, except for the last two sentences, which were inadvertently excluded during the layout design process.  Bynum asked Cooper, who was the longtime editor of the magazine for the Association of Former Students of Texas A&M University (the "Association"), to approach executives of the Foundation and the Association to inquire whether those organizations might be interested in purchasing copies of the *12th Man* book once it published to distribute as gifts to their members.  Miles Marks, then, the head of the Foundation, and Rusty Burson, then, the Editor of the Foundation's magazine, asked Cooper for a draft of the *12th Man* book to review in anticipation of their meeting, which Cooper provided.  In or around November 2006, Cooper also met with Marks and Burson in person, and showed them a draft of Bynum's *12th Man* book.  *See* Ex. A, which is a true and correct copy of an email from Cooper to Bynum dated November 20, 2006.  It was Bynum's understanding that neither organization decided to move forward with purchasing commitments for the *12th Man* book.  *See* Ex. B, which is a true and correct copy of an email from Cooper to Bynum dated June 22, 2014.

27.     Between his other projects, Bynum continued to revise the contents and layout of his *12th Man* book through mid-2010, when he decided he would tighten the book's design and get it ready for publication in the near future.  The text of the Gill Biography remained unchanged, but included the final two sentences that were inadvertently omitted from the earlier draft of the *12th Man* book he provided to Cooper in 2006.

28.     On June 18, 2010, Bynum emailed Marquardt and Johnson to ask for help with locating additional photographs for use in his *12th Man* book.  Bynum attached to this email the 2010

draft of the *12th Man* book in PDF format for Marquardt's and Johnson's review. *See* Ex C, which is a true and correct copy of the email and attachment from Bynum to Marquardt and Johnson dated June 18, 2010. As shown in Ex. C, Bynum granted Marquardt and Johnson access to the 2010 draft of his *12th Man* book for their "review" only. Bynum clearly explained in his email that the attachment was "a ***draft version*** of the 12th Man Book on E. King Gill and Texas A&M football." He also explicitly stated: "Please note that this is a ***work in progress and is not in final form yet***." *Id.* Further, he noted that the photo credits in the draft had not been updated yet.

29.     As shown below and in Ex. C, the cover of the 2010 draft of the *12th Man* book indicated that the book was "Edited by Mike Bynum" and included the logo of Epic Sports, Bynum's publishing imprint:



In addition, page 5[1] of the *12th Man* book included an "Editor's Note" by "Mike Bynum," in anticipation of publication. *See id.*

30.    As shown in the excerpt below, page 6 of the 2010 draft included a clear copyright notice indicating that Bynum's publishing imprint, Epic Sports, owned the copyright to the *12th Man* book and that no part of the book may be reproduced or used in any form or by any means without the permission of the publisher, i.e., Epic Sports:

---

**Acknowledgments:**

Alan Cannon, Colin Killian, Brad Marquardt and the Texas A&M Athletic Media Relations staff, Jerry Cooper, David Chapman and Jennifer Bradley of the Cushing Memorial Archives at Texas A&M University, Bo Carter and the Big 12 Media Relations Office, Charlie Fiss and the AT&T Cotton Bowl.

Copyright © 2010 by Epic Sports.
All rights reserved.

ISBN 1-928846-49-1

No part of this work covered by the copyright hereon may be reproduced or used in any form or by any means graphic, electronic, or mechanical, including photographing, recording, taping, or in information storage and retrieval systems without the permission of the publisher.

**Photo Credits:**
*AllState Sugar Bowl:* 57.
*Glen Johnson:* 3, 8, 30-all, 49, 106,107, 108-both, 109, 110, 111, 112, 113, 114, 115, 116-117, 118, 119, 12, Back Cover.
*Centre University Archives:* 38, 41-both.
*Corbis Bettman Photos:* 84.
*Corpus Christi Caller-Times:* 31.
*Cushing Memorial Library Archives:* 1, 9, 13-bottom, 14-both, 15, 16-both, 17, 18, 19, 20, 23, 24, 25, 26, 27, 28, 29, 35, 37-all, 39, 40-both, 44, 45-both, 52, 53-both.
*Getty Images:* 91, 122, 123, 124, 126, 127. .
*Oak Cliff High School:* 10-both, 11-both, 12, 13-top.
*Texas A&M Athletic Dept.:* Front Cover, 2, 33, 34, 42, 43, 47, 50-51, 54, 56-both, 64,65,66,69,75, 78, 80, 82, 86, 87, 88, 89, 90-bottom, 93, 96-both, 98, 99, 102, 103, 105-both.
*University of Texas at Arlington Archives:* 58, 59, 60, 61, 62, 63, 68, 72, 77, 90-top, 92, 94, 95.
*University of Texas Archives:* 7, 46.

**Cover and Book Design:** Kathy Sellers, Communication Arts; and James Wilkins, Birmingham, Ala.
**Typefaces:** Berkeley Old Style, Giza, Volta, Minion, Trade Gothic.

Published by: Epic Sports, Birmingham, Ala.

---

*See id.*

_____

[1] The first page of the 2010 draft of the *12th Man* book was intentionally left blank.

31.     The first page of the Gill Biography appeared on page 9 of the 2010 draft.  As shown in the excerpt below and Ex. C, this page included the title of the Gill Biography, "An A&M Legend Comes to Life," and an author byline to Canning, who, as noted, authored the chapter as a work-made-for-hire for Bynum, and who, because of his longtime work as a sportswriter for the Fort Worth Star Telegram, was well known to the University and the A&M Athletic Department:



32.     Due to intervening work on soccer/football books in Great Britain between 2010 and 2013, Bynum delayed publication of the *12th Man* book.  In late 2013, Bynum planned to publish the *12th Man* book in the fall of 2014 to coincide with the 75th anniversary of A&M's 1939 championship season and the 1939 radio show in College Station that made public for the first time the story of Gill as Texas A&M's 12th Man.  Bynum also noted that the A&M Athletic Department's recent membership to the Southeastern Conference (the "SEC") in 2012 had elevated the A&M Athletic Department's football program to the national stage.  In preparation for publication, Bynum, in November 2013, executed a publishing agreement with Canada Hockey

LLC, providing it the exclusive publishing rights for hardcover, softcover, and e-book versions of the *12th Man* book.

33.     While finalizing his draft of the *12th Man* book, Bynum emailed Marquardt as late as December 28, 2013 to ask a question about a former A&M football coach. Marquardt replied on December 29, 2013, stating that he did not know the answer. *See* Ex. D, a true and correct copy of an email exchange between Marquardt and Bynum dated December 28 and 29, 2013.

**Defendants Unlawfully Take and Copy the Gill Biography by Creating a Near Verbatim Copy, Remove and Alter Plaintiffs' Copyright Management Information, and Distribute and Display the Infringing Copy with False Copyright Management Information**

34.     In mid-January 2014, during the NFL playoffs, Texas A&M University, primarily through the A&M Athletic Department, launched a campaign to promote its ongoing claim that it is the true owner of the "12th Man," not the Seattle Seahawks, who had qualified for the 2014 NFL playoffs and whose fan base calls itself the "12th Man." For example, on January 11, 2014, a day after the Seattle Seahawks won a playoff game, the A&M Athletic Department posted an image of a statue of E. King Gill and the following message on its Twitter account @AggieFootball:



*See* Ex. E, which is a true and correct copy of a screenshot from the @AggieFootball Twitter page.

35.     At the time, the A&M Athletic Department's @AggieFootball Twitter account had approximately 145,000 followers.  The A&M Athletic Department's campaign asserting its status as the "real" 12th Man soon became national news.

36.     The Foundation also sought to reaffirm Texas A&M as the true owner of the 12th Man on its Twitter account @12thManFndtn by using the hashtag "#12thMan."  *See* Ex. F, which is a collection of true and correct copies of screenshots from the @12thManFndtn Twitter page.

37.     The story behind the 12th Man tradition, including background information on Gill, is central to the Foundation's solicitations for donations.  For example, the "About Us" section of the Foundation's website concludes by stating:

> Just as E. King Gill, the original 12th Man, once came out of the crowd to stand ready to help his team, our fans can still literally help our performances on the field by supporting the 12th Man Foundation.  You won't be asked to sweat it out on the field, but your tax-deductible financial support will propel the Aggies to even greater heights.

*See* Ex. G.

38.     Upon information and belief, the A&M Athletic Department and the Foundation created a strategic plan to show that Texas A&M is the true owner of the 12th Man that included providing little known information about the individual that inspired the 12th Man tradition, E. King Gill.

39.     Upon information and belief, the A&M Athletic Department and the Foundation directed staff at the A&M Athletic Department, including at least Marquardt and Cannon, to find background information on Gill that could be used to promote the 12th Man story and solicit more donations.

40.     And on January 22, 2014, only weeks after his email exchange with Marquardt, Cooper alerted Bynum that Defendants had taken Bynum's copy of the Gill Biography—which had

15

never been published or available to the public before—and published a near verbatim copy of it as a

feature story in the January 21, 2014 edition of the TAMU Times e-newsletter, which included a

hyperlink to a page on the A&M Athletic Department Website displaying the infringing copy of

Bynum's Gill Biography.  Reproduced below is an excerpt of a true and correct copy of Cooper's

email to Bynum, attached hereto as Ex. H:

---

**From:** Jerry Cooper <cooper1@cullums.org>
**To:** Mike Bynum <mjbsports2@yahoo.com>
**Cc:** Whit Canning <maz83@aol.com>
**Sent:** Tuesday, January 21, 2014 3:45 PM
**Subject:** Fwd: TAMUtimes: Tuesday, Jan. 21, 2014

Mike and Whit,
Today an item appeared in Texas A&M's e-mail newsletter "TAMU Times" about the original
12th Man, E. King Gill, and it had a link to the complete story on the Athletic Department
webpage (click on "More" at the end of the blurb below).

http://www.aggieathletics.com//ViewArticle.dbml?DB_OEM_ID=27300&ATCLID=209380492
&utm_source=tamutimes&utm_medium=email&utm_campaign=2014-01-21

The text is word-for-word (except for a brief omission) what Whit Canning wrote for your "12th
Man" book. About 15 paragraphs from the end, several paragraphs of text appears to have been
inadvertently omitted.

Although it is attributed as follows: "by Whit Canning - special to Texas A&M Athletics" there
is no permission line or other credit on it.  I believe that when I approached the 12th Man
Foundation for you a number of years back to see if they would help you get the book published,
they made a copy of the story and stuck it in a file.  When the Athletic Department ran across it,
it obviously was picked up and placed on the Athletics website.

I spoke to Whit Canning today and he said no one from the Athletic Department ever contacted
him about using the text.
Jerry Cooper

---

41.    Bynum later discovered that the infringing article had first appeared on the A&M

Athletic Department Website on January 19, 2014.  The A&M Athletic Department's Website at

that time received approximately 10,000 unique visitors every day and approximately 50,000 page views daily.   The link to the infringing article on the A&M Athletic Department Website was shared on social media at least 700 times by January 21, 2014.

42.     The page on the A&M Athletic Department Website that displayed the infringing article also displayed various advertisements through which the A&M Athletic Department gained revenue.

43.     After investigating the matter further, Bynum confirmed that Defendants had copied the Gill Biography nearly word-for-word, with the exception of a few typographical errors—including the misidentification of Gill as *Edward* King Gill, rather than *Earl* King Gill—grammatical differences, and the revision of a few short paragraphs.   *Cf.* Ex. C *to* Ex. I, the latter of which is a true and correct copy of an email from Cooper to Bynum containing the text of the infringing article copied from the A&M Athletic Department Website.

44.     The Gill Biography is the critical opening to Bynum's *12th Man* book.

45.     In addition, the infringing article displayed on the A&M Athletic Department Website appeared under a different title, "The Original 12th Man," and displayed the following altered author byline, "by Whit Canning, special to Texas A&M Athletics," with no attribution to Plaintiffs.   In journalism, the phrase "special to" is commonly used to indicate that a piece was written exclusively for a newspaper, magazine, or other publication by a correspondent or freelancer who is paid for their story by the publisher.

46.     Upon information and belief, Bynum's correspondence with Marquardt in late December 2013 (*see* Ex. D) reminded Marquardt that he had a copy of Bynum's 2010 draft of the *12th Man* book that Marquardt could take, copy, and use to further the Foundation's and the A&M Athletic Department's goals of promoting their claim to the 12th Man.

47.     Upon information and belief, in or around early January 2014, Marquardt took a printed copy of the 2010 draft of the *12th Man* book that Bynum had emailed to him in June 2010 for the limited purpose of reviewing photos, and, although he knew, or had reason to know, that the 2010 draft of the *12th Man* book was an unpublished draft, directed his secretary to retype the Gill Biography so it could be used to refute the Seattle Seahawks' claim to the 12th Man and support Defendants' claim to exclusive rights in the 12th Man story, which was integral to the Foundation's campaign for generating continued donations.

48.     Marquardt also removed and altered Plaintiffs' copyright management information ("CMI") from the *12th Man* book by intentionally removing or causing to be removed information identifying Bynum and Bynum's Epic Sports imprint, inserting or causing to be inserted the phrase "special to Texas A&M Athletics," and altering or causing to be altered the title of the Gill Biography to "The Original 12th Man."

49.     As admitted by Marquardt in an email dated January 22, 2014, Marquardt then distributed the plagiarized copy of the Gill Biography to Stephenson (*see* Ex. B), and possibly to others on the A&M Athletic Department staff, including Cannon, for approval and publication on the A&M Athletic Department Website. *See* Ex. B.

50.     The A&M Athletic Department distributed and displayed an unauthorized copy of the Gill Biography containing the altered CMI when it uploaded the copy to the A&M Athletic Department Website, where it was displayed to the public.

51.     Defendants' acts are, among other things, egregious violations of the University's own Employee Use & Engagement Guidelines for social media ("Engagement Guidelines"). Listed as a "basic principle" to engaging in social media on behalf of or as a representative of the University or any of its entities is the following mandate: "Respect copyright laws and give credit to sources of

18

written content, images and ideas you reference or use."  The Engagement Guidelines further explain that employees must "[o]btain permission from the copyright owner before using copyrighted material such as original works of authorship including videos and images or literary, dramatic, musical, and artistic works. Provide a link to the original material if possible."  *See* Ex. J, which is a true and correct copy of the University's Engagement Guidelines.

52.     In addition to their unauthorized copying, distribution, and display of the Gill Biography, Defendants repeatedly advertised the infringing article to A&M football fans—the precise audience for Bynum's *12th Man* book—driving readers to the A&M Athletic Department Website and increasing valuable publicity for the A&M Athletic Department.  On January 19, 2014, in the hours leading up to the NFL's National Football Conference Championship game between the Seattle Seahawks and the San Francisco 49ers, Seahawks fans posting about the game with the hashtag #12thMan made #12thMan a trending topic on Twitter.  In an attempt to diminish the association between the Seattle Seahawks and "12th Man," the A&M Athletic Department used the infringing copy of the Gill Biography to remind Seahawks fans that Gill was Texas A&M's original 12th Man on its official Twitter account @AggieAthletics. The since-deleted tweet read:

> Since 1922 the #12thMan has made Aggieland his home
> http://t.co/bMWZVSiAjE pic.twitter.com/E2vdbwXig7

–Texas A&M Football (@AggieFootball) January 19, 2014

53.     This promotional tweet, which was sent to approximately 145,000 followers, contained a shortened URL that linked to the page on the A&M Athletic Department Website displaying the infringing article, providing access to the infringing article to anyone viewing the A&M Athletic Department's Twitter page.  Thousands of fans retweeted the post.

54.     Less than an hour later, the University also promoted the infringing article to its

approximately 160,000 Twitter followers through its official Twitter account, @TAMU:



Thousands of Twitter users also retweeted this tweet. *See* Ex. K, which is a true and correct copy

of a page from the @TAMU Twitter page.

55.     Defendants' vociferous efforts to drive the conversation surrounding the #12th Man

hashtag on Twitter to Texas A&M received wide attention.  For example, that evening, Yahoo!

Sports published a blog post titled "Texas A&M trolls the Seattle Seahawks and its '12th man' on

Twitter."  Ex. L is a true and correct copy of an article on the Yahoo! Sports website.  The blog

post re-printed the shortened URL linking to the page on the A&M Athletic Department Website

displaying the infringing article, further increasing the number of views.  Moreover, the author of

the blog post, Graham Watson, tweeted a link of her post to her approximately 16,000 Twitter

followers.

56.     On information and belief, Stephenson promoted the infringing article further by

featuring it at the top of the January 21, 2014 edition of the TAMU Times e-newsletter and on the

front page of the TAMU Times website on the same day.  The TAMU Times e-newsletter was sent

to approximately 77,000 subscribers primarily consisting of Texas A&M students, alumni, faculty,

staff, and donors.  The TAMU Times e-newsletter and website displayed a preview of the infringing article, which stated: "E. King Gill never led Texas A&M to a national championship, but because of one simple act in Dallas in 1922, he became the most revered Aggie of them all; the 12th Man. (more...))."  Clicking on the hyperlink "more..." led users to a page on the A&M Athletic Department Website displaying the infringing article.  *See* Ex. H. A true and correct copy of a screenshot of the TAMU Times website taken by Bynum on the morning of January 22, 2014, is shown below and attached hereto as Ex. M:



**Bynum Notifies Defendants of the Infringement and Learns the Extent to Which the Infringing Acts Had Harmed the Market for His *12th Man* Book**

57.    On the morning of January 22, 2014, Bynum, after receiving Jerry Cooper's email from the day before, sent Cannon and Marquardt an email requesting that the infringing article be immediately removed from the A&M Athletic Department Website.  Bynum noted that the story had never been cleared for publication with anyone and that their taking and use of his Gill

Biography was unauthorized, unlawful, and a breach of ethics.  *See* Ex. N, which is a true and correct copy of an email string between Bynum, Marquardt, and Cannon dated January 22, 2014.

58.    Marquardt responded several hours later, advising Bynum that the infringing article was no longer on the A&M Athletic Department Website and attempting to reduce the Defendants' conduct to a mere "mix-up," despite the fact that he had actual knowledge, or had reason to know based on the June 22, 2010 email from Bynum and the CMI Marquardt removed and altered from the *12th Man* book, that the Gill Biography was owned by Plaintiffs and had never been licensed to the A&M Athletic Department.  Tellingly, Marquardt admitted in his email to Bynum:

> *We remain very interested in utilizing Whit's story, however.  With the Seattle Seahawks and their 12th Man getting a lot of attention in the NFL, the story was an important part of our strategic plan to show Texas A&M is the true owner of the "12th Man."*

In an afterthought, Marquardt added:

> It was an incredibly coincidental mix-up on my part. I was cleaning my office, which you may recall is generally a cluttered mess.  While going through files, I found a story of the 12th Man on some slightly yellowed 8.5x11 paper.  I had no recollection of it [sic] origin.  But *I'm always seeking background info on the 12th Man, especially since we joined the SEC and reporters aren't as familiar with the history of the 12th Man.  I asked my secretary to key it in for me which she did.*  A few days after that, my co-worker asked if I had anything on the 12th Man. Coincidentally, I did and that's how a 16-year old story found its way on the internet.

Ex. N (emphasis added).

59.     In that email, Marquardt requested to *re-post* the Gill Biography on the A&M Athletic Department Website as an "excerpt" to the *12th Man* book.  When Bynum did not provide an immediate response, stating only that he would be willing to work with Marquardt and the A&M Athletic Department and that the draft *12th Man* book in Marquardt's possession was not the final version, Marquardt, in a follow up email, stated again that "***we're keen to have access to Whit's story*** ...." *Id.* (emphasis added).  Bynum ultimately declined.

60.     Although Defendants removed the infringing article from the A&M Athletic Department Website on January 22, 2014, their widespread promotion of it had grown out of their control and led to further infringement.  In particular, Defendants' display and distribution of the infringing article, and promotional social media posts containing hyperlinks to the infringing page of the A&M Athletic Department Website, caused fans to copy the infringing article in its entirety and re-post it on various online forums for Texas A&M fans, including on www.tamu.247sports.com and www.AgTimes.com, and forward it by email, further harming Plaintiffs' market for the *12th Man* book.

61.     For example, several months later, on April 12, 2014, Cooper alerted Bynum that he received an email containing an exact copy of the infringing article that was displayed on the A&M Athletic Department Website.  The email had been forwarded multiple times, further harming Bynum's market for the *12th Man* book. *See* Ex. I.

62.     Upon information and belief, at least Marquardt and the A&M Athletic Department directly infringed Plaintiffs' exclusive rights to reproduce the copyrighted work in copies, to distribute copies of the work, to make a derivative work, and to display the copyrighted work publicly.

63.    Upon information and belief, Defendants' infringing article has been distributed to and/or viewed by hundreds of thousands of people that comprise the market for Plaintiffs' *12th Man* book.  Such widespread distribution occurred as a result of at least Marquardt and the A&M Athletic Department's unauthorized copying, distribution, and display of the Gill Biography, and Defendants' further promotion of the unlawful copy through hyperlinking to the page on the A&M Athletic Department Website displaying the infringing article. Thus, all Defendants knowingly induced, caused, and materially contributed to the infringing acts of others.

64.    Upon information and belief, because the public distribution of the Gill Biography was an important part of Defendants' strategy to show that Texas A&M is the true owner of the 12th Man tradition, and increase donations to the A&M football program, the A&M Athletic Department and the Foundation at all times had an obvious and direct financial interest in the infringement of the Gill Biography.

65.    By reason of Defendants' infringement, Plaintiffs have sustained substantial injury, loss, and damage to their copyrights in the Gill Biography, and to their business.

66.    By reason of Marquardt's and the A&M Athletic Department's intentional, multiple violations of the Digital Millennium Copyright Act, Bynum has sustained substantial injury, loss, and damage to his business.

## FIRST CAUSE OF ACTION

### Copyright Infringement Against Marquardt, Cannon, Stephenson, and the A&M Athletic Department, 17 U.S.C. § 501

67.    Plaintiffs hereby restate and re-allege the allegations set forth in paragraphs 1 through 66 above and incorporate them herein by reference.

68.     The Gill Biography consists of original material that is copyrightable subject matter under the Copyright Act, 17 U.S.C. § 101 *et seq.*

69.     Bynum is the copyright owner of the *12th Man* book and the Gill Biography.

70.     Bynum is the owner of U.S. Copyright Registration No. TXu002020474 for the 2010 draft of the *12th Man* book containing the Gill biography at issue.

71.     Pursuant to a publishing agreement with Bynum, Epic Sports, the publishing imprint of Canada Hockey LLC, owns the exclusive rights to publish the *12th Man* book and Gill Biography.

72.     Marquardt had access to the 2010 draft of the *12th Man* book containing the Gill Biography when Bynum provided the draft in PDF format to Marquardt in June 2010.

73.     Marquardt copied the Gill Biography nearly word-for-word to create an infringing article that is substantially and strikingly similar to Bynum's Gill Biography.

74.     Marquardt distributed the infringing copy of the Gill Biography for its further copying, display, and publication.

75.     The A&M Athletic Department copied, distributed, and displayed the infringing copy of the Gill Biography when it uploaded the infringing article to the A&M Athletic Department Website, where it was publicly displayed from at least January 19, 2014 through January 22, 2014.

76.     Cannon approved the distribution and display of the infringing copy of the Gill Biography on the A&M Athletic Department Website, where it was publicly displayed from at least January 19, 2014 through January 22, 2014.

77.     Stephenson was responsible for featuring the infringing copy of the Gill Biography in the TAMU Times e-newsletter and on the homepage of the TAMU Times website.

78.     Without consent, authorization, approval, or license, Marquardt, Cannon, Stephenson, and the A&M Athletic Department knowingly and willfully infringed Bynum's exclusive rights in the Gill Biography.

79.     Marquardt, Cannon, Stephenson, and the A&M Athletic Department have realized unjust profits, gains, and advantages from their infringements. Plaintiffs are entitled to recover from Defendants such gains, profits, and advantages in an amount to be determined at trial.

80.     As a direct and proximate result of Marquardt's, Cannon's, Stephenson's, and the A&M Athletic Department's direct copyright infringement, Plaintiffs have suffered monetary loss and are entitled to the recovery of damages and profits from Marquardt, Cannon, Stephenson, and the A&M Athletic Department in amounts to be determined at trial.

## SECOND CAUSE OF ACTION

### Contributory Copyright Infringement Against All Defendants

81.     Plaintiffs hereby restate and re-allege the allegations set forth in paragraphs 1 through 80 above and incorporate them herein by reference.

82.     Due to the use and public display of the infringing copy of the Gill Biography on the Internet, the Gill Biography was directly infringed.

83.     All Defendants induced, caused, and materially contributed to the infringing acts of others by encouraging, inducing, allowing, and assisting others to copy, reproduce, display, and distribute Defendants' infringing article.  In particular, all Defendants participated in a campaign to use background information on Gill to promote Texas A&M as the true owner of the 12th Man trademark and story and encouraged the unauthorized use of the Gill Biography.

26

84.     In addition to his acts of direct copying, Marquardt was responsible for the promotional tweet from the @AggieFootball Twitter account hyperlinking to the page on the A&M Athletic Department Website displaying the infringing article.

85.     Stephenson and the A&M Athletic Department were responsible for the promotional tweet from the @TAMU Twitter account hyperlinking to the same infringing page on the A&M Athletic Department Website, and for featuring the infringing article in the TAMU Times e-newsletter and homepage of the TAMU Times website, both of which hyperlinked to the same infringing page on the A&M Athletic Department Website.

86.     Cannon, the Foundation, and the A&M Athletic Department approved and encouraged the unauthorized distribution and display of the infringing article on the A&M Athletic Department Website.

87.     Defendants at all times had knowledge of these acts and the infringement of the Gill Biography.

88.     The acts and conduct of Defendants, as alleged above, constitute contributory copyright infringement.

89.     As a direct and proximate result of Defendants' copyright infringement, Plaintiffs have suffered monetary loss and are entitled to the recovery of damages from Defendants in amounts to be determined at trial.

## THIRD CAUSE OF ACTION

### Vicarious Copyright Infringement Against the Foundation and the A&M Athletic Department

90.     Plaintiffs hereby restate and re-allege the allegations set forth in paragraphs 1 through 89 above and incorporate them herein by reference.

91.     The Foundation's mission is to obtain donations for and support the success of the A&M Athletic Department.

92.     Historical and biographical background on the 12th Man tradition, Gill, and Gill's impact on Texas A&M was and is intertwined with the Foundation's fundraising efforts for the benefit of the A&M Athletic Department.

93.     As the primary source of funding for the A&M Athletic Department, which receives no funding from the State of Texas or public tax dollars, the Foundation has at all times had the right and ability to control and supervise the infringing acts of Marquardt and the A&M Athletic Department.

94.     As the employer of Marquardt, who is the Director of Media Relations for the A&M Athletic Department, the A&M Athletic Department has at all times had the right and ability to control and supervise the infringing acts of Marquardt.

95.     Further, since the Foundation receives donations to support the success of the A&M Athletic Department programs, and the Foundation funds the A&M Athletic Department through such donations, the Foundation and the A&M Athletic Department at all times had an obvious and direct financial interest in the infringement of the Gill Biography.

96.     The acts and conduct of the Foundation and the A&M Athletic Department, as alleged above, constitute vicarious copyright infringement.

97.     As a direct and proximate result of Defendants' copyright infringement, Plaintiffs have suffered monetary loss and are entitled to the recovery of damages from the Foundation in amounts to be determined at trial.

## FOURTH CAUSE OF ACTION

**Violations of the Digital Millennium Copyright Act Against Marquardt and the A&M Athletic Department,
17 U.S.C. § 1202**

98.    Plaintiffs hereby restate and re-allege the allegations set forth in paragraphs 1 through 97 above and incorporate them herein by reference.

99.    The *12th Man* book, which embodied the infringed Gill Biography, contained CMI as such term is defined in 17 U.S.C. 1202(c).

100.    Marquardt intentionally removed CMI from the *12th Man* book by omitting the notice of copyright, including the editor, copyright owner, and publisher information contained therein, when he created the infringing copy of the Gill Biography.

101.    Marquardt intentionally inserted, or caused to be inserted, the phrase "special to Texas A&M Athletics" after the byline to Canning in the infringing copy of the Gill Biography.

102.    Marquardt intentionally altered, or caused to be altered, the title of the Gill Biography in an attempt to establish ownership of the stolen 12th Man story from "An A&M Legend Comes to Life" to "The Original 12th Man."

103.    Marquardt distributed CMI along with the infringing copy of the Gill Biography knowing that the CMI was false, and had been removed and altered without the authority of the copyright owner or law.

104.    Marquardt distributed his infringing copy of the Gill Biography knowing that the CMI had been removed and altered without the authority of the copyright owner or law, and knowing, or having reasonable grounds to know, that his actions would induce, enable, facilitate, or conceal his infringement.

105.    The A&M Athletic Department distributed CMI knowing that the CMI was false and had been removed and altered without the authority of the copyright owner or law when it distributed the infringing copy of the Gill Biography provided by Marquardt by uploading it to the A&M Athletic Department Website, and knowing, or having reasonable grounds to know, that its actions would induce, enable, facilitate, or conceal infringement.

106.    Due to the acts and conduct of Marquardt and the A&M Athletic Department, as alleged above, Marquardt and the A&M Athletic Department are liable for violations of § 1202 of the Digital Millennium Copyright Act.

107.    As a direct and proximate result of Defendants' copyright infringement, Plaintiffs have suffered monetary loss and are entitled to the recovery of damages from Defendants in amounts to be determined at trial.

## FIFTH CAUSE OF ACTION

### Unconstitutional Taking of Property Without Compensation
### in Violation of Section 17 of Article 1 of the Constitution of the State of Texas
### Against the A&M Athletic Department

108.    Plaintiffs hereby restate and re-allege the allegations set forth in paragraphs 1 through 66 above and incorporate them herein by reference.

109.    The claim asserted in this section is pleaded alternatively to the claims asserted above.

110.    Bynum is the copyright owner of the *12th Man* book and the Gill Biography. Bynum's interest in these exclusive copyrights is a property interest protected by Section 17 of Article 1 of the Constitution of the State of Texas.

111.    The A&M Athletic Department took, damaged, and/or destroyed Plaintiffs' property through its blatant and intentional infringement of Plaintiffs' copyright (*i.e.*, its unauthorized use and wide-spread distribution of the Gill Biography), which was done by the A&M Athletic Department without any contractual or other right or consent, and without any compensation to Plaintiffs, such compensation having been denied, for the purposes of bolstering its claim to "the 12th Man" and generating income for the benefit of the University and its athletic programs.

112.    The A&M Athletic Department's actions, as described above, constitute a taking, damaging, or destroying of Plaintiffs' property without adequate compensation, in violation of Section 17 of Article 1 of the Constitution of the State of Texas.

113.    Plaintiffs have suffered monetary damages as a result of Defendants' actions for which they seek recovery.

## SIXTH CAUSE OF ACTION

**Unconstitutional Taking of Property Without Compensation
in Violation of the Fifth and Fourteenth Amendments of the Constitution of the
United States Against the A&M Athletic Department**

114.    Plaintiffs hereby restate and re-allege the allegations set forth in paragraphs 1 through 66 above and incorporate them herein by reference.

115.    The claim asserted in this section is pleaded alternatively to the claims asserted above.

116.    Bynum is the copyright owner of the *12th Man* book and the Gill Biography. Bynum's interest in these exclusive copyrights is a property interest protected by the Fifth Amendment of the Constitution of the United States, made applicable to the States through the Fourteenth Amendment of the Constitution of the United States.

31

117.    The A&M Athletic Department took, damaged, and/or destroyed Plaintiffs'
property through its blatant and intentional infringement of Plaintiffs' copyright (*i.e.*, its
unauthorized use and wide-spread distribution of the Gill Biography), which was done by the
A&M Athletic Department without any contractual or other right or consent, and without any
compensation to Plaintiffs, such compensation having been denied, for the purposes of bolstering
its claim to "the 12th Man" and generating income for the benefit of the University and its athletic
programs.

118.    The A&M Athletic Department's actions, as described above, constitute a taking,
damaging, or destroying of Plaintiffs' property without adequate compensation, in violation of the
Fifth and Fourteenth Amendments of the Constitution of the United States.

119.    State procedures are either inadequate or unavailable for Plaintiffs to seek just
compensation for the A&M Athletic Department's taking.

120.    Plaintiffs have suffered monetary damages as a result of Defendants' actions for
which they seek recovery.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiffs request the following relief:

1.    An Order awarding Plaintiffs their actual damages and Defendants' profits resulting
from the infringement of Plaintiffs' copyrights, in an amount to be determined at trial.

2.    An Order awarding Plaintiffs their damages and Marquardt's and the A&M Athletic
Department's profits or, in the alternative, statutory damages for each of Marquardt's and the A&M
Athletic Department's violations of the Digital Millennium Copyright Act.

3.    An Order granting recovery of Plaintiffs' attorneys' fees and costs associated with
their claims under the Digital Millennium Copyright Act.

32

4.    An Order granting pre-judgment interest at the legally allowable rate on all amounts owed.

5.    Alternatively, an Order awarding Plaintiffs just compensation for the A&M Athletic Department's taking of Plaintiffs' property, in an amount to be determined at trial.

6.    Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38, Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury of all issues triable of right by a jury.

Dated:  April 17, 2017

Respectfully submitted,

/s/ Jason Cross
Jason Cross, *Attorney-in-Charge*
Texas State Bar No. 24045727
S.D. Tex. Bar No. 617020
Alison M. Rowe
Texas State Bar No. 24032717
S.D. Tex. Bar No. 35955
FROST BROWN TODD LLC
100 Crescent Court, Suite 350
Dallas, Texas 75201
Phone: (214) 545-3472
Fax: (214) 545-3473
Email:  jcross@fbtlawcom
Email:  arowe@fbtlaw.com

Douglas M. Hall (*Admitted Pro Hac Vice*)
Pennsylvania State Bar No. 307876
FROST BROWN TODD LLC
Union Trust Building
501 Grant Street, Suite 800
Pittsburgh, Pennsylvania 15219
Phone: (412) 513-4300
Fax: (412) 513-4299
Email:  dmhall@fbtlaw.com

*Attorneys for Plaintiffs Michael J. Bynum*
*and Canada Hockey LLC d/b/a Epic Sports*

34

### CERTIFICATE OF SERVICE

The undersigned certifies that on April 17, 2017, the foregoing document was electronically submitted with the Clerk of Court for the United States District Court, Southern District of Texas, using the electronic case filing system of the Court, and served on the attorneys of record via same.

/s/ Jason Cross_____

0135841.0646109   4841-5963-0662v4

35