### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| MICHAEL J. BYNUM and CANADA HOCKEY LLC d/b/a EPIC SPORTS, | § § § | |
| Plaintiffs, | § § | |
| vs. | § § | |
| | § | Civil Action No. 4:17-cv-00181 |
| TEXAS A&M UNIVERSITY ATHLETIC DEPARTMENT; TEXAS A&M UNIVERSITY 12TH MAN FOUNDATION; BRAD MARQUARDT, in his individual capacity; ALAN CANNON, in his individual capacity; and LANE STEPHENSON, in his individual capacity, | § § § § § § § | Jury Trial Demanded |
| Defendants. | § | |

### PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT
### TEXAS A&M UNIVERSITY 12TH MAN FOUNDATION'S MOTION TO DISMISS

Plaintiffs Michael J. Bynum ("Bynum") and Canada Hockey LLC d/b/a Epic Sports ("Epic Sports") (collectively "Plaintiffs") file this response in opposition to the Rule 12(b)(6) Motion to Dismiss (**ECF No. 33** ("Def.'s Mot.")) filed by Defendant Texas A&M University 12th Man Foundation (the "Foundation"), respectfully stating as follows:

**I.**   <u>**Introduction**</u>

In its Motion to Dismiss, the Foundation seeks to shield itself from liability for its copyright infringement by arguing that the Plaintiffs' Amended Complaint does not meet the requisite minimum pleading requirements. The Foundation does so, however, on the premise of an inapplicable pleading standard. Specifically, the Foundation, throughout its Motion, improperly attempts to impose the heightened pleading standards for ***fraud claims*** under Rule 9(b), Federal Rules of Civil Procedure. But those heightened standards do not apply to Plaintiffs' contributory

and vicarious infringement claims.  For those claims—the ones actually alleged against the Foundation in Plaintiffs' Amended Complaint—under Rule 8, Federal Rules of Civil Procedure, and *Twombly* and *Iqbal*, Plaintiffs need only show that the allegations in the Amended Complaint state a claim that is plausible on its face—that is, that the allegations, taken as true, allow this Court to draw the reasonable inference that the Foundation is liable for the misconduct alleged, or at the very least, raise a reasonable expectation that discovery will reveal evidence of the necessary elements of those claims.  Plaintiffs have done so here.  As shown below, Plaintiffs' Amended Complaint contains allegations that are more than sufficient to support "plausible" contributory and vicarious infringement claims against the Foundation, and, as such, the Foundation's Motion should be denied.

## II.   Factual Background

For years, the Foundation, A&M Athletic Department, and University have been involved in a strategic campaign to protect and promote their "12th Man" trademark in order to show that Texas A&M is the "true home" of the "12th Man."[1]  (Am. Compl. ¶¶ 2, 9, 22, 26, 36–40, 47.) Their efforts have included, among other things: (1) erecting new signage on the student section of its football stadium, Kyle Field, declaring it as the "Home of the 12th Man;" (2) registering the trademark 12TH MAN with the U.S. Patent and Trademark Office; (3) aggressively enforcing the "12th Man" mark by fighting over 550 infringement issues, including legal actions against the Seattle Seahawks and Indianapolis Colts of the NFL, both of which refer to their fans as the "12th Man;" (4) erecting two statues of E. King Gill that stand on the University's campus; and (5) changing the name

---

[1] The University's now famous "12th Man" tradition was inspired by the actions of E. King Gill at the 1922 football game known as the "Dixie Classic."  Gill, a squad player for A&M's football team, who was already training with the university's basketball team, was up in the press box watching his team face the then top-ranked Prayin' Colonels of Centre College, when he was waved down to the sideline before halftime to suit up in case his injured team ran out of reserve players.  Gill stood on the sideline, ready to play, for the remainder of the game.  (Am. Compl. ¶21.)

of The Aggie Club, an organization founded in 1950 to raise donations to support the A&M Athletic Department, to the "12th Man Foundation." (*Id.* ¶ 22.) The "12th Man" mark, and the Foundation's and Texas A&M's strategic plan to promote and protect it, have been vital to the Foundation's fundraising efforts and its financial support of the A&M Athletic Department, which is 100% self-supporting and receives no funding from the State of Texas or public tax dollars, pursuant to Article VII, section 17(f) of the Texas Constitution and other state law. (*Id.* ¶ 8.) And it has been wildly successful. For instance, between July 1, 2010 and June 30, 2014, the Foundation received contributions of $390,689,133 on behalf of the A&M Athletic Department, and made payments to the A&M Athletic Department in the sum of $65,104,669. (*Id.* ¶9.) Obviously, in the time since June 30, 2014, these contributions and payments have increased.

There can thus be no question that both the Foundation and the A&M Athletic Department were financially motivated throughout the relevant time period to protect and promote their "12th Man" brand. This ultimately led to the A&M Athletic Department ignoring and then removing Plaintiffs' copyright notices and any reference to Plaintiffs from Plaintiffs' story of E. King Gill and the birth of Texas A&M's "12th Man" tradition, thereby willfully infringing and stealing Plaintiffs' intellectual property. (*Id.* ¶¶ 46–48.) This motivation was confirmed by Brad Marquardt, the Associate Director of Media Relations for the Texas A&M Athletic Department, in a January 22, 2014 email:

> We remain very interested in utilizing Whit's story, however. With the Seattle Seahawks and their 12th Man getting a lot of attention in the NFL, ***the story was an important part of our strategic plan to show Texas A&M is the true owner of the "12th Man."***

(*Id.* ¶ 58 (emphasis added).)

The Foundation participated in the overall "strategic plan" and the infringement referenced in Mr. Marquardt's January 2014 email and that is at issue in this case. Among other things, in the late

1980's, it changed its name to "The 12th Man Foundation"; it worked for years to establish the historic connection between the "12th Man" brand and the A&M Athletic Department; and it even assisted in directing research efforts to uncover additional facts about the original "12th Man" to support the narrative.  (*Id.* ¶¶ 2, 9, 22, 26, 36–40, 47.)

Moreover, the Foundation and the University are inextricably linked beyond the story of E. King Gill, the original "12th Man," and their mutual desire to promote and protect the "12th Man" mark.  For example, the Foundation is the "official source" for all University athletic tickets (including a direct link on the A&M Athletic Department's previous and current website that automatically forwards any user who clicks on "Tickets" to the Foundation's website), and the A&M Athletic Director sits on the Foundation's Board of Trustees.  (*See* Texas A&M Ticket Center, https://www.12thmanfoundation.com/ticket-center.aspx; Staff Directory, http://12thman.com/staff.aspx?staff=478.)  During the relevant period, members of the A&M Athletic Department and the Foundation had access to Plaintiffs' unpublished work.  (Am. Compl. ¶26.)

Taken together, it is plain that the Foundation benefitted from the infringement of Plaintiffs' work, had no incentive to put a stop to it, and specifically directed research efforts to shore up the connections between the A&M Athletic Department and the "12th Man" brand.

## III.   <u>Standard of Review</u>

A motion to dismiss under Rule 12(b)(6) "is viewed with disfavor and is rarely granted." *Jones v. Tubal-Cain Hydraulic Sols., Inc.*, No. 4:16-CV-01282, 2017 WL 1177995, at *2 (S.D. Tex. Mar. 30, 2017) (Harmon, J.) (citing *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982)).  Dismissal is never warranted simply because the court believes the plaintiff is unlikely to prevail on the merits.  *Clark v. Amoco Prod. Co.*, 794 F.2d 967,

970 (5th Cir. 1986).  Even if it appears an almost certainty that the facts alleged cannot be proved, the complaint cannot be dismissed so long as it states a claim under the Rules.  *Id.*

The "complaint must be liberally construed in favor of the plaintiff."  *Jones*, 2017 WL 1177995, at *2.  "[A]ll reasonable inferences are to be drawn in favor of the plaintiff's claims, and all factual allegations pleaded in the complaint must be taken as true."  *Id.* (citing *Overton v. JPMC Chase Bank*, No. H-09-3690, 2010 WL 1141417 (S.D. Tex. Mar. 20, 2010)).  The complaint should "contain sufficient factual matter . . . to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  This is satisfied when the plaintiff alleges "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

## IV.   <u>Plaintiffs' Allegations Are Not Impermissibly General</u>

Initially grasping at straws, the Foundation argues Plaintiffs' claims against it should be dismissed because Plaintiffs' allegations "improperly lump" all Defendants together.  (Def.'s Mot. at 3–4.)  The Foundation cites numerous cases that seemingly support its argument.  (*Id.*)  In fact, they do not.  The cases cited by and on which the Foundation relies concern and are assessed under the higher pleading standard for fraud under Rule 9(b), and not the pleading standards under Rule 8 that are applicable here.  *See, e.g.*, *In re Parkcentral Glob. Litig.*, 884 F. Supp. 2d 464, 470–71 (N.D. Tex. 2012) (noting that "[b]ecause Plaintiffs' claims sound in fraud, Fed. R. Civ. P. 9(b) pleading standards apply").  Because the Foundation, as it does throughout its Motion, ignores the applicable pleading standard under Rule 8 and improperly seeks to raise the bar and impose the higher pleading standards for fraud under Rule 9(b), the Court should disregard the Foundation's arguments.

The Foundation's authority is further distinguishable because the cited cases address allegations that were facially implausible or in which no facts connecting certain defendants were pleaded.  For example, in *Hinojosa v. Livingston*, 807 F.3d 657 (5th Cir. 2015), the plaintiff used "blanket" terms to allege that prison officials committed constitutional violations for failing to provide water for prisoners.  The court found these allegations implausible for certain institutional actors who did not have the ability to perform such a task.  And in *Del Castillo v. PMI Holdings North America, Inc.*, No. 4:14-CV-3435, 2015 WL 3833447 (S.D. Tex. June 22, 2015), the Court found that the plaintiff had failed completely to allege facts connecting certain defendants to the allegations in the complaint.

As shown in more detail below, this is not the case here.  Plaintiffs have alleged specific facts tying the actions of the Foundation to the infringement, and, as alleged, it is not facially implausible that the Foundation worked in concert with the A&M Athletic Department to solidify Texas A&M's ownership of the "12th Man" and ultimately infringe Plaintiffs' copyright. Therefore, Plaintiffs' allegations are not impermissibly general and do not, at least with respect to the Foundation and the claims asserted against it, "improperly lump" all Defendants together, and, as such, the Foundation's Motion should be denied.

## V.      Plaintiffs' Contributory Infringement Claim Should Not be Dismissed

"To establish a claim for contributory copyright infringement, a copyright owner must show that the defendant, (1) with knowledge of the infringing activity, (2) induces, causes or materially contributes to infringing conduct of another." *Suncoast Post-Tension, Ltd. v. Scoppa*, No. 4:13-CV-3125, 2014 WL 12596472, at *4 (S.D. Tex. July 17, 2014) (citing *Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 790 (5th Cir. 1999)).  Regarding the first element, a plaintiff need not show "actual knowledge" of the infringement; rather, a plaintiff need only show that the

defendant had reason to know of the infringement. *Id.* at *4 (quoting *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 487 (1984)).

The Foundation argues Plaintiffs have failed to state such a cause of action for contributory infringement in their Amended Complaint because Plaintiffs failed to specifically allege the "who, what, when, or how" of the Foundation's knowledge of the infringing acts. (Def.'s Mot. at 4.) This of course is not the relevant pleading standard. The Foundation has improperly sought to conflate the heightened pleading standard for fraud claims under Rule 9(b) with the applicable pleading standard for causes of action such as contributory infringement under Rule 8. For contributory infringement, the plausibility standard of *Twombly* and *Iqbal* "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements." *Flagg v. Stryker Corp.*, 647 F. App'x 314, 316 (5th Cir. 2016) (internal quotation marks omitted).

Here, Plaintiffs' allegations are facially plausible to allow the Court to reasonably infer that the Foundation is liable for contributory infringement, or at the very least, raise a reasonable expectation that discovery will reveal the necessary evidence supporting such liability. Specifically, Plaintiffs allege that:

- The Foundation's mission is to fund the A&M Athletic Department, and the association of the "12th Man" with Texas A&M and its Athletic Department is a significant aspect of the Foundation's fundraising efforts (Am Compl. ¶¶ 2, 4, 9, 22, 36–39, 47);

- The Foundation, in conjunction with the A&M Athletic Department, created a strategic plan to show that Texas A&M was the true owner and home of the "12th Man" (*id.* ¶ 38);

- The Foundation itself participated in the strategic plan to promote and protect the "12th Man" brand, which has been vital to raising and providing funds for the A&M Athletic

Department, which is 100% self-supporting and receives no funding from the State of Texas or public tax dollars, pursuant to Article VII, section 17(f) of the Texas Constitution and other state law (*id.* ¶¶ 8, 36–39, 58);

- The strategic campaign has been wildly successful for the Foundation and A&M's Athletic Department, which is evidenced by the fact that, during the four-year period from July 1, 2010 to June 30, 2014, the Foundation received contributions of $390,689,133 on behalf of the A&M Athletic Department, and made payments to the A&M Athletic Department in the sum of $65,104,669 (*id.* ¶ 9);

- The Foundation directed the Athletic Department—the alleged direct infringers—to conduct research on E. King Gill, the original "12th Man," to promote their narrative (*id.* ¶ 39); and,

- The Foundation made its own copy of Plaintiffs' unpublished story (*id.* ¶ 40).

Taken together, these allegations are more than sufficient to support a reasonable inference that the Foundation had knowledge of the allegedly infringing activity, or at the very least had reason to know of such activity, and that it induced, caused, or materially contributed to such activity. Additionally, Plaintiffs' factual allegations regarding the Foundation's actions raise a reasonable expectation that further discovery would likely reveal, for example, the communications between the Foundation and the direct infringers and any contributions the Foundation made to such infringement. Accordingly, the allegations in the Amended Complaint meet the applicable pleading standard under Rule 8 and *Twombly* and *Iqbal*, and, as such, the Foundation's Motion with respect to Plaintiffs' contributory infringement claims should be denied.

**VI.**     <u>**Plaintiffs' Vicarious Infringement Claim Should Not be Dismissed**</u>

Vicarious liability for infringement may be imposed where the defendant: "(1) has the right and ability to supervise the infringing conduct; and (2) has an obvious and direct financial interest in the infringement." *Wood v. B L Bldg. Co.*, No. CIV.A.H-03-713, 2004 WL 5866352, at *19 (S.D. Tex. June 22, 2004). Cases in this District do not require an affirmative act (or omission) on the part of the vicarious infringer. *See, e.g.*, *Scoppa*, 2014 WL 12596472, at *4; *Guajardo v. Freddie Records, Inc.*, No. CV H-10-2024, 2013 WL 12144152, at *7 (S.D. Tex. Apr. 9, 2013), *report and recommendation adopted*, No. CV H-10-2024, 2013 WL 12144073 (S.D. Tex. June 27, 2013). Like contributory infringement allegations, vicarious infringement allegations are required to meet the facially plausible pleadings standard under Rule 8 and *Twombly* and *Iqbal*, not the heightened pleading requirements for fraud claims under Rule 9(b).

Here, Plaintiffs' vicarious infringement allegations are facially plausible to allow the Court to reasonably infer that the Foundation is liable for vicarious infringement, or at the very least, raise a reasonable expectation that discovery will reveal the necessary evidence. Regarding the first element, it is well-established that the "right and ability" to exercise control over the infringing party is the pertinent inquiry for vicarious infringement, not the actual exercise of such control. *See Playboy Enters., Inc. v. Webbworld, Inc.*, 991 F. Supp. 543, 554 (N.D. Tex. 1997), *aff'd*, 168 F.3d 486 (5th Cir. 1999). Plaintiffs, in their Amended Complaint, have asserted allegations sufficiently showing such "right and ability to control." Among other things, Plaintiffs allege the personnel overlap amongst the A&M Athletic Department and the Foundation, as well as the Foundation's *directive* to the A&M Athletic Department to research the Gill story in order to promote the "12th Man" brand and its connection to Texas A&M and its Athletic Department. (*See* Am. Compl. ¶¶ 22, 39.)

The Plaintiffs have, in addition, included a number of allegations regarding the Foundation's role as the major provider of the A&M Athletic Department's funding. Financial control can be a relevant factor in the "ability to control" analysis. *See, e.g.*, *UMG Recordings, Inc. v. Bertlesmann AG*, 222 F.R.D. 408 (N.D. Cal. 2004). Because the Foundation is an entity that provides significant funds to the A&M Athletic Department, and the success of both entities is intertwined, it is reasonable to infer that the Foundation exerts great financial leverage and control over the A&M Athletic Department.

As alleged in the Amended Complaint, the A&M Athletic Department's financial health depends on the Foundation. (Am. Compl. ¶ 8.) And to be sure, both benefit from Texas A&M's status as the "12th Man." The Foundation gets to use it—and in fact does—as part of its fundraising campaigns (*id.* ¶¶ 22, 36–39), and the proceeds of the campaigns are then used by the Foundation to financially support and advance the A&M Athletic Department (*id.* ¶ 9). *See ZeniMax Media, Inc. v. Oculus VR, LLC*, 166 F. Supp. 3d 697, 705 (N.D. Tex. 2015) (finding allegations of financial support sufficient to survive a motion to dismiss). Further discovery will no doubt reveal the extent of this financial relationship and support. As a result, at the very least, Plaintiffs' factual allegations "raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements." *See Flagg*, 647 F. App'x at 316.

Regarding the second element for vicarious infringement, courts have found that to constitute a "direct financial benefit," the infringing activity does not need to be a primary benefit, rather it need only be a "draw," and not necessarily a "primary" or "significant" draw. *Arista Records LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124, 157 (S.D.N.Y. 2009). Moreover, showing a direct financial benefit does not necessarily require showing earned revenue. *Capitol Records, Inc. v. MP3tunes, LLC*, No. 07 CIV. 9931 WHP, 2013 WL 1987225, at *10 (S.D.N.Y. May 14,

2013). This Court, in a case involving liability of corporate officers for copyright infringement, held that a plaintiff need not show that a defendant "actually made money by infringing on the copyright," rather a plaintiff may simply show "that [the defendant's] financial interests were implicated." *Universal Music-MGB Songs v. Clayton's Beach Bar & Grill L.L.C.*, No. B: 17-CV-16, 2017 WL 1753497, at *3 (S.D. Tex. Apr. 17, 2017), *report and recommendation adopted,* No. CV B-17-016, 2017 WL 1710628 (S.D. Tex. May 3, 2017).

Here, Plaintiffs have alleged, among other things:

- The Foundation's mission is to fund the A&M Athletic Department (Am. Compl. ¶ 9);

- The Foundation directed the A&M Athletic Department to research the background and history of Gill in order to solidify A&M's claim as the home of the original "12th Man" (*id.* ¶¶ 38–39);

- The Foundation used the "12th Man" legend and branding in its fundraising efforts (*id.* ¶¶ 36–37);

- The exclusivity of the "12th Man" story to the University was integral to the Foundation's fundraising and was wildly successful in its collection efforts (*id.* ¶¶9, 47); and

- Between July 1, 2010 and June 30, 2014, the Foundation provided financial support in excess of $65 million to the Athletic Department (*id*. ¶9).

This Court can thus infer that the "12th Man" story is a "draw" for the Foundation, and that its fundraising returns—whether great, small, or non-existent—can be tied to the infringement. Even if the Foundation earned a nominal return because of its relationship to the infringing activity, the Foundation certainly had an economic incentive to allow the direct infringer's actions. *See A&M Records, Inc. v. Napster, Inc.*, 114 F. Supp. 2d 896, 921 (N.D. Cal. 2000), *rev'd on other*

*grounds*, 239 F. 3d 1004 (9th Cir. 2001) ("[D]irect financial benefit does not require earned revenue, so long as the defendant has economic incentives for tolerating unlawful behavior.").

In sum, Plaintiffs' factual allegations are plausible on their face and allow this Court to infer that the Foundation is vicariously liable as alleged. The Court can further make a reasonable inference that additional discovery will bear out the control the Foundation exerted over the infringing actions of the A&M Athletic Department and its employees, and the extent of the profits related to the infringement. Accordingly, the Foundation's Motion to Dismiss Plaintiffs' vicarious infringement claim should be denied.

**VII.** **Conclusion**

For all the above reasons, the allegations pleaded by Plaintiffs in their Amended Complaint are sufficient to state plausible claims for relief against the Foundation. Accordingly, the Foundation's Motion to Dismiss should be denied. In the event the Court is inclined to dismiss, in whole or in part, Plaintiffs' Amended Complaint, Plaintiffs request that such dismissal be made without prejudice, and on the condition that in the event pertinent information relating to the Foundation's infringement is found in discovery, so to avoid the running of the statute of limitations on Plaintiffs' claims, Plaintiffs may relate back to the initial date of the filing of the Complaint. *See Brennan v. Kulick*, 407 F.3d 603, 607 (3d Cir. 2005) ("[W]hen a complaint is filed within the statute of limitations but is subsequently dismissed without prejudice in an order containing conditions for reinstatement within a specified time period, the statute of limitations is tolled provided that the plaintiff meets those conditions.").

Respectfully submitted,

*/s/ Jason Cross*
Jason Cross, Attorney-in-Charge
Texas State Bar No. 24045727
S.D. Tex. Bar No. 617020
Alison M. Rowe
Texas State Bar No. 24032717
S.D. Tex. Bar No. 35955
FROST BROWN TODD LLC
100 Crescent Court, Suite 350
Dallas, Texas 75201
Phone: (214) 545-3472
Fax: (214) 545-3473
Email: jcross@fbtlaw.com
Email: arowe@fbtlaw.com

Douglas M. Hall (Admitted Pro Hac Vice)
Pennsylvania State Bar No. 307876
FROST BROWN TODD LLC
Union Trust Building
501 Grant Street, Suite 800
Pittsburgh, Pennsylvania 15219
Phone: (412) 513-4300
Fax: (412) 513-4299
Email: dmhall@fbtlaw.com

Joe W. Redden, Jr.
State Bar No. 16660600
S.D. Tex. Bar No. 2139
Owen McGovern
State Bar No. 24092804
BECK REDDEN LLP
1221 McKinney St., Suite 4500
Houston, Texas 77010-2010
Phone: (713) 951-3700
Fax: (713) 951-3720
Email: jredden@beckredden.com
Email: omcgovern@beckredden.com

Tim Johnson
State Bar No. 10797650
Southern District No. 89
Nicholas P. Dickerson
State Bar No. 24068560
Southern District No. 1122160
LOCKE LORD LLP
600 Travis St., Suite 2800
Houston, Texas   77002
(713) 226-1114 (Telephone)
(713) 229-2606 (Facsimile)

*Attorneys for Plaintiffs Michael J. Bynum and*
*Canada Hockey LLC d/b/a Epic Sports*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on June 16, 2017, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system. Any other counsel of record will be served in accordance with the Federal Rules of Civil Procedure.

*/s/ Jason Cross* _____

0135841.0646109   4844-4713-0186v3