United States District Court
Southern District of Texas
**ENTERED**
September 04, 2020
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CANADA HOCKEY LLC; dba EPIC SPORTS, *et al*, | § § § | |
| Plaintiffs, | § | |
| VS. | § § | CIVIL ACTION NO. 4:17-CV-181 |
| TEXAS A&M UNIVERSITY ATHLETIC DEPARTMENT, *et al*, | § § § | |
| Defendants. | § § | |

## **ORDER**

Plaintiffs Michael J. Bynum and Canada Hockey LLC (collectively, "Plaintiffs") filed this case in January of 2017. (Doc. No. 1). They sought monetary damages against the Texas A&M University Athletic Department (the "Athletic Department"), the Texas A&M University 12th Man Foundation (the "Foundation"), Brad Marquardt ("Marquardt"), Alan Cannon ("Cannon"), and Lane Stephenson ("Stephenson") (collectively, "Defendants"). (Doc. No. 15). Plaintiffs' amended complaint pleaded claims for: (1) copyright infringement against all Defendants except the Foundation; (2) contributory copyright infringement against all Defendants; (3) vicarious copyright infringement against the Foundation and the Athletic Department; (4) violations of the Digital Millennium Copyright Act, 17 U.S.C. § 1202 ("DMCA") against Marquardt and the Athletic Department; (5) takings claims under the Constitution of the State of Texas against the Athletic Department; and (6) takings claims under the Constitution of the United States against the Athletic Department. (*Id.* at 24–32).

In March of 2019, the Court granted Defendants' motions to dismiss on all claims, except for Plaintiffs' claims against Marquardt. (Doc. No. 96). Nearly four months later, Plaintiffs filed a motion for reconsideration. (Doc. No. 102, the "First Motion to Reconsider"). In that motion,

Plaintiffs asked the Court to reinstate the claims for copyright and takings under the Constitution of the United States against Texas A&M University ("A&M" or the "University") (the "correct party" substitute for the Athletic Department). (*See* Doc. No. 96 at 14).

The Court stayed the case until the Supreme Court of the United States decided *Allen v. Cooper*, 140 S. Ct. 994 (2020), which addressed the issue of whether the Copyright Remedy Clarification Act of 1990 ("CRCA") validly abrogated the Eleventh Amendment for copyright infringement claims. (Doc. No. 111). In a unanimous decision, the Supreme Court held that the CRCA's purported abrogation of sovereign immunity was constitutionally invalid. *See Allen*, 140 S. Ct. at 1007. That is the same conclusion this Court reached in the earlier dismissal order (Doc. No. 96 at 17–18). Thus, the Court lifted the stay and denied Plaintiffs' First Motion to Reconsider as to their copyright claims against A&M (through the Athletic Department). (Doc. No. 121). The Court, however, ordered the parties to file briefs concerning whether the Eleventh Amendment also barred Plaintiffs' federal takings claims. (*See id.*). The parties complied. (Doc. Nos. 125 and 126).

Plaintiffs then filed a motion for the Court to reconsider its partial denial of the First Motion to Reconsider. (Doc. No. 128, the "Second Motion to Reconsider"). The University filed a response in opposition (Doc. No. 138) and Plaintiffs filed a reply (Doc. No. 142). Plaintiffs also filed a motion for reconsideration and/or motion for leave to file a second amended complaint. (Doc. No. 131, the "Motion for Leave to Amend"). Defendants filed responses in opposition (Doc. Nos. 141 and 144), Plaintiffs filed replies (Doc. No. 145 and 146), and the Foundation filed a sur-reply (Doc. No. 147).

Finally, in the Foundation's response in opposition to Plaintiffs' Motion for Leave to Amend, it filed a cross motion for the entry of final judgment under Rule 54(b). (Doc. No. 141,

the "Cross Motion"). In response, Plaintiffs filed a brief in opposition (Doc. No. 149), the Foundation filed a reply (Doc. No. 156), and Plaintiffs filed a sur-reply (Doc. No. 159).

Having carefully considered all of the arguments in the various briefs filed concerning the motions identified above, the applicable law, and the record in this case, the Court hereby denies the First Motion to Reconsider, the Second Motion to Reconsider, the Motion for Leave to Amend. The Court also grants the Cross Motion. Lastly, the Court severs Athletic Department, the Foundation, Cannon, and Stephenson from this case, and enters final judgment under Rule 54(b) against Plaintiffs' claims against these defendants.[1]

## I.    Summary of the Amended Complaint (Doc. No. 15)

This Court's prior order covering the motions to dismiss stated, in detail, the factual allegations that Plaintiffs pleaded in the amended complaint against the Defendants. (*See* Doc. No. 96). Accordingly, it only provides a selective summary here.

Bynum allegedly spent more than a decade researching E. King Gill and the history of the A&M "12th Man" story. (Doc. No. 15 at 9). Eventually, Bynum hired Whit Canning to produce a biography about Gill (the "Gill Biography") that Bynum planned to use as the opening chapter to his forthcoming 12th Man book. (*Id.*). Bynum allegedly owns the copyright to the Gill Biography.

In mid-2010, Bynum allegedly emailed Marquardt asking for assistance locating additional photographs to include in the 12th Man book. (*Id.*). Bynum's email included a PDF draft of the book that also contained copyright management information, including Bynum's name, the copyright date, and a warning against using or reproducing the work. (*See id.* at 10–12).

---

[1] The Court acknowledges that Marquardt and Plaintiffs have filed cross motions for summary judgment. (Doc. Nos. 143 and 169). Likewise, the Court recognizes that Marquardt filed a motion to strike the declaration of Whit Canning. (Doc. No. 165). These motions, however, will be addressed by a separate order.

Beginning in January of 2014, A&M allegedly initiated a "campaign to promote its ongoing claim that it is the true owner of the [concept of the] '12th Man.'" (*Id.* at 14). Plaintiffs allege that, to further this campaign, the "Athletic Department and the Foundation directed staff at the . . . Athletic Department, including at least Marquardt and Cannon, to find background information on Gill that could be used to promote the 12th Man story and solicit more donations." (*Id.* at 15). Around this time, Bynum learned that a "near verbatim copy" of the Gill Biography appeared as the feature story of the University's e-Newsletter, which included a hyperlink to a page on the Athletic Department's website displaying the infringing copy of Bynum's Gill Biography. (*Id.* at 16).

Moreover, Plaintiffs contend that, during this time period, Stephenson was in charge of the University's website and was responsible for the content in the e-Newsletter and the University's official Twitter account "@TAMU." (*Id.* at 5). Stephenson supposedly assisted Marquardt in distributing the allegedly infringing work by publishing it online and dispersing the hyperlink via email and Twitter. (*See id.* at 20–21).

## II.    Summary of the Court's Prior Dismissal Order (Doc. No. 96)

The Defendants filed motions to dismiss the amended complaint. (Doc. Nos. 33 and 34). The Court granted in-part and denied in-part the motions and dismissed all claims, except those asserted against Marquardt. (Doc. No. 96). First, the Court held that the Athletic Department "has no capacity to be sued," and that the "correct party" substitute for the Athletic Department is A&M. (*Id.* at 12–14). Since the University is an arm of the State of Texas, the Court proceeded to analyze issues of sovereign immunity. (*Id.* at 14). *See also Eustice v. Tex. A&M Univ.*, No. 4:15-cv-03180, 2016 WL 8710444, at *3 (S.D. Tex. Sept. 30, 2016) ("[A&M] is an arm of the state and, therefore, immune from suit."); *see also* TEX. EDUC. CODE § 86.02. The Court concluded that Congress had

not abrogated state sovereign immunity for copyright causes of action. (Doc. No. 96 at 14–18). *See also, e.g.*, *Chavez v. Arte Publico Press*, 204 F.3d 601 (5th Cir. 2000). Consequently, the Court held that substitution of the University would be improper (or pointless) for the copyright claims. (Doc. No. 96 at 18).

The Court then turned to the state and federal takings claims pleaded against A&M—who, again, should have been the proper party as opposed to the Athletic Department. First, the Court found that the claims based upon the Texas Constitution are barred by the Eleventh Amendment. (*Id.* at 18 (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 120 (1984)). The Court held that Plaintiffs' claims brought under the Constitution of the United States for monetary damages are also barred by the Eleventh Amendment.[2] (*Id.* at 19 (first citing *John G. & Marie Stella Kenedy Mem'l Found. v. Mauro*, 21 F.3d 667, 674 (5th Cir. 1994); and then citing *McMurtray v. Holloday*, 11 F.3d 499, 504 (5th Cir. 1993)). Alternatively, the Court found that Plaintiffs failed to exhaust their state law remedies under *Williamson County Regional Planning Communication v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985), and that failure precluded the Court's entertaining those claims. (*Id.* at 19–21).

Next, the Court found that Plaintiffs did not plausibly plead claims against the Foundation for contributory infringement and vicarious infringement. (*Id.* at 21–23). It also granted Cannon's and Stephenson's motion to dismiss under qualified immunity; alternatively, the Court held that Plaintiffs had insufficiently pleaded those claims under Rule 12(b)(6). (*Id.* at 27–31). The Court, however, denied the motion to dismiss as to Plaintiffs' claims against Marquardt (*Id.* at 23–26).

---

[2] The Court noted in the prior dismissal order that the Fifth Circuit has held that sovereign immunity does not bar federal takings claims for plaintiffs seeking prospective injunctive relief under the *Ex Parte Young* exception to the Eleventh Amendment. (Doc. No. 96 at 19 n.13 (citing *Severance v. Patterson*, 566 F.3d 490, 495 (5th Cir. 2009)). Plaintiffs did not, however, seek prospective injunctive relief. (*See generally* Doc. No. 15). Therefore, the *Ex Parte Young* exception was not applicable.

The case was therefore dismissed as to the Athletic Department (or, more accurately, A&M), the Foundation, Cannon, and Stephenson. The case was to proceed as to Plaintiffs' claims against Marquardt.

### III.    Plaintiffs' First and Second Motion to Reconsider (Doc. Nos. 102 and 129)

On July 26, 2019, Plaintiffs filed the First Motion to Reconsider, in which they asked the Court to allow Plaintiffs to pursue their copyright and federal takings claims against A&M. (Doc. No. 102). Plaintiffs highlighted the Supreme Court of the United States' opinion in *Knick v. Township of Scott*, which overruled *Williams County*'s exhaustion prerequisite. *See Knick*, 139 S. Ct. 2162, 2179 (2019). The First Motion to Reconsider also argued that the Court's sovereign immunity analysis for the copyright claims should be reexamined due to the Supreme Court granting certiorari in *Allen*.

As stated above, the Court stayed the case until the Supreme Court announced its decision in *Allen*, which was on March 23, 2020. (Doc. No. 111). *See generally Allen*, 139 S. Ct. 2664. On April 8th, having determined that the Supreme Court's opinion in *Allen* confirmed this Court's ruling that the copyright claims against A&M are barred by the Eleventh Amendment, the Court lifted the stay and denied Plaintiffs' First Motion to Reconsider as to the copyright infringement claims. (Doc. No. 121). Supplemental briefs were submitted by the parties concerning sovereign immunity and the federal takings claims. (Doc. Nos. 125 and 126).

Approximately one month after the order denying the First Motion to Reconsider as to the copyright claims, Plaintiffs filed the Second Motion to Reconsider. (*See* Doc. No. 129).[3] Simply put, the remaining issues in the First Motion to Reconsider concern Plaintiffs' takings claims and

---

[3] Plaintiffs initially filed Document Number 128 as the motion to reconsider. Document Number 129, however, is entitled "Corrected Motion for Reconsideration" and appears to be substantially similar to Document Number 128. Accordingly, the Court treats the latter document (Doc. No. 128) as being superseded by the former (Doc. No. 129). Therefore, Document Number 128 is denied as moot.

the Second Motion to Reconsider relates to their copyright claims. The Court addresses each separately, beginning with the copyright claims.

## A.   Plaintiffs' Copyright Claims Against A&M

Plaintiffs argue that—despite the holding in *Allen*—the CRCA *does* abrogate sovereign immunity in this case because Plaintiffs pleaded actual violations of their constitutional rights. (*See id.* at 3). Specifically, relying on *United States v. Georgia*, 546 U.S. 151 (2006), Plaintiffs assert that they "have alleged that the same conduct that violated the Copyright Act also amounted to *both* an uncompensated taking and a deprivation of property without offering *any* remedial process—both of which are actual violations of the Fourteenth Amendment." (*Id.* at 5 (emphasis in original)). Accordingly, Plaintiffs claim that the allegations in the amended complaint are "sufficient to allow Plaintiffs to rely on the CRCA's abrogation of immunity, notwithstanding *Allen v. Cooper*'s rejection of that statute's *prophylactic* application to conduct that did *not* necessarily rise to an actual constitutional violation." (*Id.* (emphases in original) (citing *Georgia*, 546 U.S. at 158–59)).[4]

*Georgia* involved a prison inmate who filed a pro se complaint asserting, among other things, claims under Title II of the ADA and Eighth Amendment claims under § 1983 against the State of Georgia and other state defendants. *See*, 546 U.S. at 154–55. The district court and the Eleventh Circuit determined that the prisoner's ADA claims for money damages were barred by sovereign immunity. *Id.* at 156. The Supreme Court reversed because the prisoner's claims were

---

[4] To help distinguish the Supreme Court's holding in *Allen*, the Second Motion to Reconsider cites to the oral argument transcript in *Allen* where the attorney for the petitioner—who was arguing that sovereign immunity was abrogated by the CRCA—answered two questions by saying his client was not making a *Georgia* argument, which Plaintiffs believe means that "the Justices clearly believed that no claim under *United States v. Georgia* was before the Court." (Doc. No. 129 at 5 & n.4, 9; *see also* Doc. No. 129, Ex. 1).

based on alleged conduct "that independently violated the provisions of § 1 of the Fourteenth Amendment." *Id.* at 157. As the Court explained:

> Section 5 [of the Fourteenth Amendment] authorizes Congress to create a cause of action through which the citizen may vindicate his Fourteenth Amendment rights. This enforcement power includes the power to abrogate state sovereign immunity by authorizing private suits for damages against the States. Thus, insofar as Title II [of the ADA] creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity.

*Id.* at 158–59 (emphasis in original) (citations omitted).

Plaintiffs argue that *Georgia* changes the legal landscape dramatically and that this Court should not rely on past legal precedent concerning sovereign immunity.[5] Plaintiffs interpret *Georgia* to say that any plaintiff who sufficiently pleads facts that a defendant violates statutory scheme (e.g., the Copyright Act or the ADA) and a violation of the Fourteenth Amendment (e.g., a taking under the Fifth Amendment or, if cruel and unusual punishment was involved, the Eighth Amendment), then sovereign immunity is automatically abrogated for the statutory violation. The Court finds that Plaintiffs' understanding of and reliance on *Georgia* is misplaced.

First, the concept that Section Five of the Fourteenth Amendment permits Congress to enact legislation to abrogate state sovereign immunity for actual violations of the Fourteenth Amendment was not new or disputed when the Supreme Court decided *Georgia. See id.* at 158 ("*[N]o one doubts* that § 5 [of the Fourteenth Amendment] grants Congress the power to 'enforce . . . the provisions' of the Amendment by creating private remedies against the States for *actual* violations of those provisions.") (first emphasis added; second emphasis in original);

---

[5] For example, George Washington University Law School Professor Ralph Oman's *amicus curiae* brief in support of the Second Motion to Reconsider states that "*United States v. Georgia* is a 'game-changer'" (Doc. No. 140 at 5). Professor Oman also asserts that, under *Allen v. Cooper,* "a district court judge, using his or her full measure of discretion, can tailor a remedy that [is] . . . 'congruent' and 'proportional' to the harm done and the nature of the infringement [, which] will pass constitutional muster." (*Id.* at 14).

*see also, e.g., Tennessee v. Lane*, 541 U.S. 509, 518 (2004); *id.* at 559–60 (Scalia, J. dissenting). Indeed, the Supreme Court often attributes the first recognition of that concept to its decision in *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456 (1976). *See, e.g., Allen*, 140 S. Ct. at 1004 ("Congress can permit suits against States for actual violations of the rights guaranteed in Section 1 [of the Fourteenth Amendment.]") (citing *Fitzpatrick*, 427 U.S. at 456); *Georgia*, 546 U.S. at 158–59 (similar); *Lane*, 541 U.S. at 518 (similar); *Fla. Prepaid Postsecondary Educ. Expense Bd. v. Coll. Sav. Bank*, 527 U.S. 627, 636–37 (1999) (similar); *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 59 (1996) (similar). It, therefore, appears to this Court that *Fitzpatrick* is probably the seminal case concerning the abrogation of sovereign immunity for actual violations of the Fourteenth Amendment, not *Georgia*. Thus, the Court rejects the argument that it must reconsider its reliance on cases that were decided before *Georgia* (i.e., *Chavez*). (*See* Doc. No. 129 at 7 n.8; *see also* Doc. No. 102 at 15).

The argument that *Georgia* materially altered sovereign immunity jurisprudence is also weakened when one scrutinizes the extent courts have cited that case, and in what context the case has been used by courts. In the 14 years since the Supreme Court decided *Georgia*, it has only cited the case, in any capacity, *three* times. *See Shelby Cty., Ala. v. Holder*, 570 U.S. 529, 585 (2013) (Ginsburg, J., dissenting); *Haas v. Quest Recovery Servs., Inc.*, 549 U.S. 1163, 1122 (2007) (Ginsburg, J., concurring); *United States v. Neb. Dep't of Health & Human Servs. Fins. & Support*, 547 U.S. 1067 (2006) (summary reversal). Similarly, the Fifth Circuit has only cited *Georgia* 17 times; and it has *never* discussed the case outside of the context of Title II of the ADA. *See, e.g., Block v. Tex. Bd. of Law Exam'rs*, 952 F.3d 613, 617 (5th Cir. 2020) (stating that *Georgia* established a three-part test for determining whether Title II of the ADA validly abrogates states' sovereign immunity); *Smith v. Hood*, 900 F.3d 180, 184 (5th Cir. 2018) (same); *Hale*

*v. King*, 642 F.3d 492, 497–98 (5th Cir. 2011) (same). Further, a cursory review of the other circuit courts suggests that only two cases have actually analyzed *Georgia* concerning an alleged statutory violation that does not involve the ADA; and only *one* of those resulted in abrogation of sovereign immunity. *See Nat'l Ass'n of Bds. of Pharmacy v. Bd. of Regents of the Univ. Sys. of Ga.*, 633 F.3d 1297, 1315–19 (11th Cir. 2011) (discussing *Georgia* in connection with copyright infringement, but holding that the amended complaint failed to allege a due process violation); *Alaska v. EEOC*, 564 F.3d 1062, 1067–71 (9th Cir. 2009) (applying *Georgia* and abrogating sovereign immunity as to sexual harassment and retaliation claims under the Government Employee Rights Act of 1991). Accordingly, the Court is not persuaded that *Georgia* dramatically changed sovereign immunity jurisprudence such that this Court can depart from binding authority that the Eleventh Amendment bars suing a state for claims of copyright infringement. *See Allen*, 140 S. Ct. at 1007; *Chavez*, 204 F.3d at 607–08.

Moreover, in *Georgia* itself, the Supreme Court made clear that the power to abrogate sovereign immunity lies with Congress, not with litigants.[6] *See*, 546 U.S. at 158 ("Section 5 authorizes *Congress* to create a cause of action through which the citizen may vindicate his Fourteenth Amendment rights.") (emphasis added); *see also Allen*, 140 S. Ct. at 1003 ("Section Five of the Fourteenth Amendment, unlike almost all of Article I, can authorize *Congress* to strip the States of immunity.") (emphasis added).[7] Put differently, sovereign immunity did not bar the prisoner in *Georgia* from suing the State of Georgia under Title II of the ADA *only* "insofar as Congress created a private cause of action for damages against the States for conduct that actually

---

[6] Likewise, there is nothing in the Fourteenth Amendment or Supreme Court case law that gives *federal courts* the authority to abrogate sovereign immunity. *Cf. supra*, note 5 (citing Doc. No. 140 at 14).

[7] As *Allen* illustrates, the congressional record of the CRCA cannot support a finding that Congress intended to abrogate sovereign immunity under Section Five of the Fourteenth Amendment. *See*, 140 S. Ct. at 1006–07.

violates the Fourteenth Amendment." *Georgia*, 546 U.S. at 159 (emphasis omitted). If, hypothetically, the Supreme Court had concluded that Congress, by virtue of the ADA, did not create a claim for actual violations of the Fourteenth Amendment, then the prisoner's claims against the State of Georgia might have been barred by the Eleventh Amendment. *See id.* Plaintiffs' interpretation of *Georgia*, on the other hand, allows any creative litigant to plead away sovereign immunity under Section 5 of the Fourteenth Amendment. The Court finds no basis in *Georgia* or any other case to support the ability to plead around the Eleventh Amendment.

Lastly, and most importantly, in *Allen* the Supreme Court discussed Congress's ability to abrogate sovereign immunity for actual violations of the Fourteenth Amendment. *See Allen*, 140 S. Ct. at 1004 (citing *Fitzpatrick*, 427 U.S. at 456).[8] Additionally, the Supreme Court explained that, although permissible, Congress did not create a cause of action against states for actual violations of the Fourteenth Amendment.

> When does the Fourteenth Amendment care about copyright infringement?
> Sometimes, no doubt. Copyrights are a form of property. And the Fourteenth
> Amendment bars the States from "depriv[ing]" a person of property "without due
> process of law." But even if sometimes, by no means always. Under our precedent,
> a merely negligent act does not "deprive" a person of property. So an infringement
> must be intentional, or at least reckless, to come within the reach of the Due Process
> Clause. And more: A State cannot violate that Clause unless it fails to offer an
> adequate remedy for an infringement, because such a remedy itself satisfies the
> demand of "due process." That means within the broader world of state copyright
> infringement is a smaller one where the Due Process Clause comes into play.

---

[8] *Allen* could be reasonably interpreted to state that the congruent and proportionality test applies to any abrogation under Section 5 of the Fourteenth Amendment (i.e., for both "actual violations" and "prophylactic" measures). *See Allen*, 140 S. Ct. at 1004 ("Congress cannot use its 'power to enforce' the Fourteenth Amendment to alter what that Amendment bars. . . . That means a congressional abrogation is valid under Section 5 *only if* it sufficiently connects to conduct courts have held Section 1 to proscribe.") (emphasis added); *see also id.* ("*Always*, what Congress has done must be in keeping with the Fourteenth Amendment rules it has the power to 'enforce.'") (emphasis added). If that interpretation is correct, then the Ninth Circuit's ruling in *Alaska v. EEOC*—which is the only circuit court opinion that held a statute outside of the ADA abrogated sovereign immunity under *Georgia*—incorrectly skipped the congruence and proportionality analysis. *See EEOC*, 564 F.3d at 1068.

*Id.* at 1004–05 (citations omitted); *see also id.* at 1007 ("In this case, as in [*Florida Prepaid*], the statute aims to 'provide a uniform remedy' for statutory infringement, *rather than to redress or prevent unconstitutional conduct.* And so in this case, as in that one, the law is invalid under Section 5.") (emphasis added) (quoting *Florida Prepaid*, 527 U.S. at 647).

Thus, the Supreme Court concluded that the CRCA did *not* "create[] a private cause of action for damages against the States for conduct that actually violates the Fourteenth Amendment." *See Georgia*, 546 U.S. at 159; *see also Allen*, 140 S. Ct. at 1007. Accordingly, the CRCA did not "validly abrogate[] sovereign immunity." *See Georgia*, 546 U.S. at 159; *see also Allen*, 140 S. Ct. at 1007.

Twenty years ago, the Fifth Circuit held that Congress had not abrogated the Eleventh Amendment for copyright infringement claims asserted against States. *See Chavez*, 204 F.3d at 603. A few months ago, the Supreme Court of the United States reached the same conclusion. *See Allen*, 140 S. Ct. at 1007. Despite these unambiguous decisions, Plaintiffs argue that—relying on a case that has never been applied outside of the context of the ADA by the Supreme Court or the Fifth Circuit—their copyright infringement claims against A&M are not barred by sovereign immunity because their amended complaint alleges that A&M's conduct also violates the Fourteenth Amendment of the United States Constitution. A district court must follow the controlling precedent of the Supreme Court and of the Circuit Court for its circuit. *Randell v. Johnson*, 227 F.3d 300, 301 (5th Cir. 2000) ("The Supreme Court . . . has admonished the lower federal courts to follow its directly applicable precedent . . . and to leave to th[at] Court the prerogative of overruling its own decisions.") (internal citation and quotation omitted); *Peregoy v. Amoco Prod. Co., a Div. of Standard Oil of Ind.*, 742 F. Supp. 372, 375 (E.D. Tex. 1990) ("[A Texas district] court is bound by decisions of the Court of Appeals for the Fifth Circuit."), *aff'd*

*sub nom. Peregoy v. Amoco Prod. Co.*, 929 F.2d 196 (5th Cir. 1991). While this Court finds Plaintiffs' argument to be creative, it is bound to follow existing precedent.

For the reasons stated above, the Court rejects Plaintiffs' argument for reinstating their copyright claims against A&M. Accordingly, the Court denies Plaintiffs' Second Motion for Reconsideration (Doc. No. 129) and reiterates that their copyright infringement claims against A&M are barred by the Eleventh Amendment. (*See* Doc. No. 96).

**B.     Plaintiffs' Takings Claims Against A&M**

As explained above, Plaintiffs' First Motion to Reconsider urged the Court to reinstate their federal takings claims against A&M because of the Supreme Court's decision in *Knick*. (Doc. No. 102). *Knick* overturned *Williamson County*'s rule that a federal takings claim is not ripe "until a state court had denied [the plaintiff's] claim for just compensation under state law." *See Knick*, 139 S. Ct. at 2167, 2179; *see also Williamson Cty.*, 473 U.S. at 194. Plaintiffs accurately note that most of the Court's analysis in the prior dismissal order concerning the federal takings claims focused on their failure to comply with *Williamson County*. (*See* Doc. No. 96 at 19–21). The Court did, however, state in that order that "[t]he Fifth Circuit has held that takings claims against a state for monetary damages under the Fifth Amendment of the United States Constitution are barred by the Eleventh Amendment." (*Id.* at 19 (first citing *Mauro*, 21 F.3d at 674; and then citing *McMurtray*, 11 F.3d at 504)). Thus, when the Court lifted the stay following the Supreme Court's decision in *Allen*, it also gave the parties an opportunity to file briefs concerning Plaintiffs' federal takings claims. (*Id.* at 2).

Plaintiffs argue that sovereign immunity has been abrogated for their federal takings claims. (Doc. No. 102; Doc. No. 126 at 2–4). Alternatively, Plaintiffs assert that the State of Texas has waived sovereign immunity for federal takings claims. (Doc. No. 126 at 4–6). Lastly,

Plaintiffs' supplemental brief states that the Court has jurisdiction because "sovereign immunity does not bar [their] state law takings claims or prevent the exercise of diversity jurisdiction over such claims."[9] (*Id.* at 6 (citing *Valcan Materials Co. v. City of Tehuacana*, 238 F.3d 382, 385–86 (5th Cir. 2001)).

The University, on the other hand, argues that the Fifth Circuit in *Bay Point Properties, Inc. v. Mississippi Transportation Communication*, 937 F.3d 454, 456 (5th Cir. 2019), *cert. denied*, 140 S. Ct. 2566 (2020)—a case that was decided after *Knick* was announced—confirms that federal takings claims are barred in federal court due to sovereign immunity. (Doc. No. 127 at 2–4). The Court, reluctantly, agrees with A&M.

Prior to Plaintiffs filing this lawsuit, the Fifth Circuit held that Fifth Amendment takings claims against a State for monetary damages are barred by the Eleventh Amendment on at least three separate occasions. *Mauro*, 21 F.3d at 674; *Holladay*, 11 F.3d at 504; *Ysleta Del Sur Pueblo v. Texas*, 207 F.3d 658, No. 99–50656, 2000 WL 122431, at *2 (5th Cir. 2000) (table opinion). In *Bay Point Properties*, the Fifth Circuit ruled that the Supreme Court's decision in *Knick* had no impact on its sovereign immunity jurisprudence in this area. *See*, 937 F.3d at 456–57.

> In its supplemental briefing, the property owner contends, in effect, that *Knick* overturns prior sovereign immunity law in cases arising under the Takings Clause. But we find nothing in *Knick* to support that claim.
>
> ***
>
> Nothing in *Knick* alters the[] bedrock principles of sovereign immunity law. To begin with, the [Supreme] Court did not even have occasion to reconsider sovereign immunity law in *Knick*, because that case involved a suit against a locality, and it is well established that local governments are not entitled to the sovereign immunity enjoyed by states.

---

[9] This argument could be read as Plaintiffs discussing their takings claims under the Constitution of the State of Texas. Although arguably outside the scope of their initial motion to reconsider (*see* Doc. No. 102) and the Court's order for additional briefing (*see* Doc. No. 121), for expediency purposes the Court will nevertheless address these claims.

Nor does anything in *Knick* even suggest, let alone require, reconsideration of longstanding sovereign immunity principles protecting states from suit in federal court. . . .

In other words, to the extent that *Knick* has any effect on suits against state governments, the Court simply put takings claims against state governments on equal footing with claims against the federal government. And nobody disputes that takings claims against the federal government require the waiver of sovereign immunity contained in the Tucker Act.

*Id.* (citation and footnotes omitted).[10] Based on this unambiguous binding authority, the Court must reaffirm its conclusion that sovereign immunity deprives the Court of jurisdiction to hear Plaintiffs' takings claim under the Fifth Amendment's Takings Clause. (*See* Doc. No. 96 at 19).

Plaintiffs' contention that *United States v. Georgia* abrogates sovereign immunity for their takings claims is not persuasive. (*See, e.g.*, Doc. No. 126 at 3–4). As explained above, the Court finds no basis in Plaintiffs' interpretation of *Georgia*. Additionally, Plaintiffs' argument that Congress abrogated sovereign immunity for takings claims under the CRCA is directly contrary to what the Supreme Court said in *Allen*. *See*, 140 S. Ct. at 1007 ("In this case, as in [*Florida Prepaid*], the [CRCA] aims to 'provide a uniform remedy' for statutory infringement, *rather than to redress or prevent unconstitutional conduct*. And so in this case, as in that one, the law is invalid under Section 5.") (emphasis added).

Plaintiffs also argue that sovereign immunity is abrogated for its federal takings claims against A&M because "Texas has closed its courts to Plaintiffs' federal takings claim." (Doc. No. 126 at 3). Specifically, they believe that a decision by the First District Court of Appeals "clearly establishes that copyright holders have no recourse against the State of Texas for copyright infringement, whether under the Takings Clause or state tort law." (Doc. No. 102 at 15). *See also*

---

[10] Two other circuit courts have also held, post-*Knick*, that sovereign immunity bars federal takings claims. *Ladd v. Marchbanks*, No. 19-4136, ___ F.3d ___, 2020 WL 4882885, at *4 (6th Cir. Aug. 20, 2020); *Williams v. Utah Dep't of Corr.*, 928 F.3d 1209, 1214 (10th Cir. 2019).

*Univ. of Hous. Sys. v. Jim Olive Photography*, 580 S.W.3d 360, 377 (Tex. App.—Houston [1st Dist.] 2019, pet. filed) (holding that a copyright is not "property" for purposes of the Takings Clause in the Texas Constitution or the United States Constitution). Thus, according to Plaintiffs, when the State of Texas commits copyright infringement, the owner of the copyright has no forum available to him or her to seek compensation. (*See* Doc. No. 102 at 15; Doc. No. 126 at 3 & n.1).

The Court is skeptical that a single decision of first impression by one intermediate court of appeals that copyrights are not property subject to the Takings Clause amounts to the entire state "clos[ing] its courts to Plaintiffs' federal takings claims." (Doc. No. 126 at 3). *See also Jim Olive*, 580 S.W.3d at 377. That proposition is especially doubtworthy considering that the petition for review of the *Jim Olive* decision is currently pending before the Supreme Court of Texas (and briefs on the merits have been requested). *See Jim Olive Photography v. Univ. of Hous. Sys.*, No. 19-0605, http://www.search.txcourts.gov/Case.aspx?cn=19-0605&coa=cossup (last visited Sept. 4, 2020). Perhaps most significantly, *Jim Olive* was decided on June 11, 2019, some nine months before the Supreme Court of the United States ruled that "[c]opyrights are a form of property." *Allen*, 140 S. Ct. at 1004 (citation omitted). Obviously, in ruling that copyrights are not property under the Takings Clause of the Fifth Amendment, the *Jim Olive* Court did not have the benefit of this Supreme Court statement. Had it been available, *Allen*'s discussion of copyrights might have saved the First District Court of Appeals panel its very lengthy and detailed analysis in *Jim Olive*.

Even assuming that Plaintiffs are correct and *Jim Olive* entirely precludes them from pursuing their takings claims in Texas state court, Plaintiffs provide no authority that the Eleventh

Amendment is automatically abrogated.[11] Accordingly, the Court finds that sovereign immunity has not been abrogated for federal takings claims.

Plaintiffs' remaining arguments for reinstating their takings claims fare no better than their abrogation one. They assert that the State of Texas waived sovereign immunity for federal takings claims in Article I, § 17 of the Texas Constitution. That is a correct statement of law for matters pending in Texas state courts. *See City of Dall. v. VSC, LLC*, 347 S.W.3d 231, 236 (Tex. 2011); *see also State v. BP Am. Prod. Co.*, 290 S.W.3d 345, 363 (Tex. App.—Austin 2009, no pet.). It is well-established, however, that waivers of sovereign immunity include both *whether* the State may be sued and *where* it may be sued. *Pennhurst*, 465 U.S. at 99. In other words, "a State's waiver of sovereign immunity in its own courts is not a waiver of the Eleventh Amendment immunity in the federal courts." *Id.* at n.9 (collecting cases); *accord Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 332 (5th Cir. 2002); *Martinez v. Tex. Dep't of Criminal Justice*, 300 F.3d 567, 575 (5th Cir. 2002); *Pequeno v. Univ. of Tex. at Brownsville*, 718 F. App'x 237, 241 (5th Cir. 2018); *Guajardo v. State Bar of Tex.*, 803 F. App'x 750, 755 (5th Cir. 2020).

The Court therefore must evaluate whether the State of Texas "unequivocally expressed" its consent to be sued for federal takings claims in federal court. *See Martinez*, 300 F.3d at 575 (citing *Pennhurst*, 465 U.S. at 99). No such expression can be found in Article I, § 17 of the

---

[11] There is certainly nothing in *Georgia* to suggest such a self-executing abrogation of the Eleventh Amendment. *See*, 546 U.S. at 154–59. Plaintiffs' supplemental brief cites several cases that suggest that sovereign immunity applies in federal court as long as state courts are available to hear the claims. (*See* Doc. No. 126 at 3 & n.1) (collecting cases). None of these cases, however, actually address what happens if the state court is not available. *See Hutto v. S.C. Ret. Sys.*, 773 F.3d 536, 552 (4th Cir. 2014) ("South Carolina courts have long recognized a right of persons to sue the State for unconstitutional takings."); *Williams*, 928 F.3d at 1213 ("The parties agree, and our independent research confirms, that Mr. Williams' takings claim may be brought in Utah state court."); *Seven Up Pete Venture v. Schweitzer*, 523 F.3d 948, 956 n.8 (9th Cir. 2008) ("The Venture does not contend that the Montana state courts have failed to provide adequate procedures to adjudicate its just compensation claim."). In fact, the Sixth Circuit's opinion in *DLX, Inc. v. Kentucky* suggests that the solution for a "closed" state court system is to "open" the state courts, not abrogate sovereign immunity in federal court. *See*, 381 F.3d 511, 528 (6th Cir. 2004) ("[W]here the Constitution requires a particular remedy . . . *the state is required to provide that remedy in its own courts*, notwithstanding sovereign immunity.") (emphasis added).

Texas Constitution. Further, the University—as an arm of the State of Texas—has consistently opposed to being a party to this lawsuit since the beginning of this case. (*See* Doc. No. 34). Accordingly, the Court must reject that the State of Texas waived sovereign immunity to be sued for Plaintiffs' takings claims *in this forum*.

Lastly, Plaintiffs state that "it is clear that sovereign immunity does not bar Plaintiffs' state law takings claims or prevent the exercise of diversity jurisdiction over such claims." (Doc. No. 126 at 6 (citing *Vulcan Materials*, 238 F.3d at 385–86)). It is true that the Fifth Circuit held that "a plaintiff may bring a state law takings claim in federal district court if the traditional requirements for diversity jurisdiction are fulfilled." *See Vulcan Materials*, 238 F.3d at 386.[12] That opinion, however, never discusses sovereign immunity or the Eleventh Amendment. *See generally id.* at 384–91. As noted above, this Court relied on the Supreme Court's opinion in *Pennhurst* to find that Plaintiffs' claims under the Texas Constitution were barred by the Eleventh Amendment. (*See* Doc. No. 96 at 18 (citing *Pennhurst*, 465 U.S. at 120)). The Court is aware of no reason why it should not continue to rely on *Pennhurst*.

To the extent the Fifth Circuit's holding is inconsistent with Supreme Court authority, this Court is bound to follow the latter.[13] Accordingly, the Court finds that the Eleventh Amendment also bars Plaintiffs' state law takings claims brought here, even though the traditional requirements for diversity jurisdiction are satisfied.

---

[12] Even if this Court were to accept this proposition as controlling in this situation, the *Jim Olive* case, as discussed above, has held that copyrights cannot be "taken" as a matter of Texas law. *See*, 580 S.W.3d at 377. This Court, sitting in diversity, would have to follow the only Texas holding on this subject. Thus, Plaintiffs' state law takings claims would nevertheless have to be dismissed.

[13] Similarly, statutes (such as the diversity of citizenship statute, 28 U.S.C. § 1332) cannot confer jurisdiction beyond what is allowed by the Constitution (such as the Eleventh Amendment). *Pennhurst*, 465 U.S. at 98 ("[T]he principle of sovereign immunity is a constitutional limitation on the federal judicial power established in Art. III . . . .").

In summary, Plaintiffs' arguments in support for reconsidering the dismissal of its state and federal takings claims against A&M are inapposite. The Court therefore denies the First Motion for Reconsideration (Doc. No. 102) as to the takings claims and reaffirms that those claims are dismissed without prejudice. (*See* Doc. No. 96 at 18–21).

## IV.    Plaintiffs' Motion for Leave to Amend (Doc. No. 131)

As stated above, Plaintiffs initially filed this lawsuit in January of 2017. (Doc. No. 1). They filed an amended complaint three months later. (*See* Doc. No. 15). In 2018, while Defendants' motions to dismiss as to the amended complaint were pending, Plaintiffs filed a motion for leave to file a second amended complaint. (Doc. No. 61). That motion was referred to a United States Magistrate Judge (Doc. No. 63), who denied the motion "without prejudice to [it] being re-filed or re-asserted following the Court's ruling on the pending dispositive motions." (Doc. No. 74).

As previously stated, this Court entered its prior order on the motions to dismiss on March 29, 2019. (Doc. No. 96). On July 26th, Plaintiffs filed the First Motion to Reconsider (Doc. No. 102), which resulted in the Court staying the case from September 18, 2019 through April 8, 2020. (*See* Doc. Nos. 111 and 121). Plaintiffs filed their Motion for Leave to Amend on May 11, 2020.[14] (Doc. No. 131).

Under Rule 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Generally, the language of the rule is liberal and "evinces a bias in favor of granting leave to

---

[14] The motion is entitled "Motion for Reconsideration and/or Motion for Leave to File a Second Amended Complaint." (*See* Doc. No. 131). The reconsideration aspect of the motion asks the Court to reconsider either the Magistrate Judge's denial of the earlier motion for leave to amend (*see* Doc. No. 74) or its order on the motions to dismiss (*see* Doc. No. 96). Except for repeating their belief that *United States v. Georgia* abrogates sovereign immunity for copyright infringement and takings claims, the motion is devoid of any reasons to reconsider the two prior orders. (*See* Doc. No. 131). The Court also finds no error in either the Magistrate Judge's ruling (*see* Doc. No. 74) or its order on the motions to dismiss concerning Plaintiffs' amended complaint (*see* Doc. No. 96). The Court therefore treats this motion as only one for leave to file an amended complaint under Rule 15(a)(2).

amend." *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004) (citing *Lyn-Lea Travel Corp. v. Am. Airlines*, 283 F.3d 282, 286 (5th Cir. 2002)). Whether to grant the motion is entrusted to the district court's "sound discretion," but it must have a "substantial reason" to deny a request for leave to amend. *Id.* In determining whether to grant a party leave to amend its complaint, courts look to five considerations: undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and whether the amendment is futile.[15] *Smith*, 393 at 595 (citing *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 864 (5th Cir. 2003)); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962).

Plaintiffs contend that they moved to amend "at the first practicable opportunity following this Court's adjudication of Defendants' complex motions to dismiss." (Doc. No. 131 at 12). The Court disagrees. Plaintiffs could have filed their motion for leave to amend at any time before (or filed it concurrently with) the First Motion to Reconsider, which was filed approximately 118 days after the Court's dismissal order. (*See* Doc. No. 102). They also had the opportunity to seek leave to amend at any time during the 54 days between filing the First Motion to Reconsider and this Court's order staying the case. (*See* Doc. No. 111). Finally, Plaintiffs waited 33 days after the stay was lifted before filing the motion now before the Court. In total, Plaintiffs waited over half-a-year (approximately 205 days)—excluding the time the case was stayed—after the Court entered its dismissal order to file its request to file a second amended complaint.

Accordingly, the Court finds that Plaintiffs' motion for leave to amend was untimely. Delay alone, however, is an insufficient basis for denial of leave to amend. *Mayeaux v. La. Health Serv. & Indem. Co.*, 376 F.3d 420, 427 (5th Cir. 2004). Instead, "[t]he delay must be *undue*, i.e., it must

---

[15] The Defendants do not argue that Plaintiffs acted in bad faith or with a dilatory motive; nor do Defendants claim that Plaintiffs have repeatedly failed to cure deficiencies in prior amended complaints. The Court agrees that those two factors are not applicable in this case.

prejudice the nonmoving party or impose unwarranted burdens on the court." *Id.* (emphasis in original). Plaintiffs argue that their delay does not prejudice the Defendants, and for the most part this Court agrees. (*See, e.g.*, Doc. No. 131 at 11–12). Nevertheless, they do not address whether their amended complaint, which would change this case from a one defendant, three cause of action case to a six defendant, eight cause of action case, would impose unjustified burdens on the Court.

Regardless of whether the second amended complaint would work a prejudice to any of the Defendants, it is clear that the proposed second amended complaint would "work a massive change in the nature and direction of the case" because it would allow Plaintiffs to litigate claims that have been dismissed for over a year and against defendants who have been dismissed from this case for over a year. *See Mayeaux*, 376 F.3d at 427. The Court also agrees with Defendants that an amended complaint at this time risks causing harm to Marquardt because he would have to delay in having this case fully adjudicated, which amounts to undue prejudice. (*See* Doc. No. 144 at 9 (citing *In re Am. Intern. Refinery, Inc.*, 676 F.3d 455, 467 (5th Cir. 2012)).

Lastly, and most importantly, the Court considers whether Plaintiffs' proposed second amended complaint is "futile." An amended complaint is considered futile if it "would fail to state a claim upon which relief could be granted." *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872–73 (5th Cir. 2000); *accord N. Cypress Med. Ctr. Operating Co., Ltd. v. Aetna Life Ins. Co.*, 898 F.3d 461, 478 (5th Cir. 2018). Thus, "to determine futility, [courts] will apply the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Stripling*, 234 F.3d at 873 (internal citations and quotations omitted). For the reasons explained below, the Court concludes that the proposed amendment would not withstand a Rule 12(b)(6) motion to dismiss and is therefore futile.

A.    **Summary of the Proposed Second Amended Complaint (Doc. No. 131, Ex. 1)**

Plaintiffs' proposed second amended complaint is substantially similar to their amended complaint. (*Compare* Doc. No. 15, *with* Doc. No. 131, Ex. 1). Indeed, the proposed second amended complaint only includes six substantive changes to the alleged facts. First, Plaintiffs claim that A&M, the Athletic Department, and the Foundation promoted an "historically inaccurate" myth that Gill was the only man left standing on the sidelines at the 1922 "Dixie Classic" football game and that A&M began using the phrase "the 12th Man" in the 1920s to bolster its claim as the true owner of the 12th Man. (*See* Doc. No. 131, Ex. 1 at 10–12, ¶¶ 24–25; *see also id.* at 19, ¶ 42). The second non-formalistic change to the pleaded facts in the proposed second amended complaint is that the Foundation allegedly generated at least $8.98 million in donations to support the Athletic Department since 2006. (*Id.* at 12, ¶ 27). Similarly, Plaintiffs pleaded that the Foundation "was a source of funding for two of the ten advertisements promoting the pirated story" on the Athletic Department's website. (*Id.* at 19, ¶ 46).

The last three changes to the factual allegations relate to Plaintiffs' claims against Stephenson, Cannon, and the Foundation. As to Stephenson, Plaintiffs assert:

> On information and belief, Stephenson had actual knowledge or constructive knowledge that [the] copy [of the Gill Biography given to him by Marquardt] was plagiarized based on the fact that the plagiarized copy contained the altered author byline, "by Whit Canning, special to Texas A&M Athletics," such that Stephenson actually or constructively knew that a third-party had written the article and failed to follow [A&M] policy. That policy required Stephenson to, given the "by Whit Canning" notice that the material was written by a third-party and not a Texas A&M employee, to [sic] inquire as to whether [A&M] had written permission, or approval by the copyright owner to publish the content. As alleged in paragraph 56 below, it was the policy of [A&M] to require its employees to respect copyright laws and obtain consent for materials used on the website, on social media, or otherwise. An objectively reasonable person in Stephenson's supervisorial position would have, or alternatively should have, known the use of the plagiarized copy of the Gill Biography was unlawful. On information and belief, Stephenson provided hands-on decision making with respect to the activities of . . . [the] Athletic Department Social Media, the [A&M] Times e-magazine and website, and other [A&M] official

> websites. In addition, Stephenson, with actual or constructive knowledge of the infringing activity, materially contributed to such infringement because he was in a position to stop the activity but failed to do so.

(*Id.* at 22–23, ¶ 53). An identical paragraph is also pleaded as to Cannon (with the obvious difference that "Cannon" replaces "Stephenson" in the paragraph quoted above). (*See id.* at 23–24, ¶ 54). Lastly, as to the Foundation, Plaintiffs' proposed second amended complaint includes the following allegations:

> According to publicly available documents filed in another litigation, on information and belief, the [A&M] President did, and/or does, serve in an ex officio capacity on the Executive Committee of the Foundation pursuant to the Foundation's Affiliation Agreement(s). In addition, on information and belief, the Head of the Athletic Department . . . , the Athletic Director, and a member of the . . . A&M Board of Regents, serves in an ex officio capacity on the Board of the Foundation pursuant to the Foundation's bylaws. Moreover, on information and belief, [A&M] employees, including Athletic Department employees, may have and/or may, if agreed upon between the two entities, perform(ed) services for the Foundation pursuant to the Affiliation Agreement(s). Given these entanglements between the two entities, and the Foundation's position of influence as a result of its funding of [A&M] athletics . . . [A&M] and the Athletic Department were in a position to know that the Foundation, in exchange for funding [A&M] athletic programs, wanted [A&M] and employees of the Athletic Department to promote the 12th Man mythology and story in order to encourage donations. Indeed, on information and belief, the Foundation was in a position to exercise control and supervision over [A&M's] efforts to promote the 12th Man mythology, including the infringement at issue in this case, and the Foundation failed to exercise its right and ability to control or prevent the infringing conduct.

(*Id.* at 30–31, ¶ 69; *see also id.* at 34, ¶ 92 ("The Foundation, as financer and advertiser for the . . . Athletic Department, provided the site and facilities for the infringing conduct.") (emphasis omitted.)).

In addition to all of the claims Plaintiffs sought before, they now request to add DMCA claims against Cannon, Stephenson, and the Foundation. (*See id.* at 36–38). Plaintiffs also desire to include A&M in every cause of action the amended complaint brought against the Athletic

Department.[16] (*See, e.g., id.* at 2, 5, 29, and 35). Lastly, the proposed second amended complaint contains a claim against A&M and the Athletic Department for unconstitutional deprivation of property without due process of law in violation of the Fourteenth Amendment to the Constitution of the United States.[17] (*Id.* at 40–41).

## B.   Futility Analysis

### 1.   A&M and the Athletic Department

Plaintiffs' claims against both A&M and the Athletic Department fail as a matter of law. The Athletic Department is part of the University; it is not a separate legal entity with capacity to be sued. (*See* Doc. No. 96 at 13–14). Further, A&M is an arm of the State of Texas and is entitled to sovereign immunity under the Eleventh Amendment for claims of copyright infringement and unconstitutional takings in this Court.[18] (*See id.* at 14–21). Accordingly, the Court would lack jurisdiction to adjudicate Plaintiffs' claims against A&M.

Plaintiffs' new cause of action—"unconstitutional deprivation of property without due process of law"—also fails for the reasons stated above. *See, e.g., supra* note 11. Moreover, the Court finds no basis in Plaintiffs' argument that claims for denial of due process can be brought against States for money damages by virtue of the Due Process Clause of the Fourteenth Amendment or the CRCA. (*See* Doc. No. 131, Ex. 1 at 41, ¶ 134.). *See also Ysleta Del Sur Pueblo*,

---

[16] The Court recognizes that the proposed second amended complaint explains that the Athletic Department is included to retain their rights to appeal the Court's ruling that the Athletic Department lacks capacity to be sued. (Doc. No. 131, Ex. 1 at 5, ¶ 9). The Court also notes that Plaintiffs' motion states that they "seek leave to amend their Complaint to substitute [A&M] as a defendant in lieu of the Athletic Department." (Doc. No. 131 at 10).

[17] This claim is purportedly asserted directly "by virtue of the Due Process Clause of the Fourteenth Amendment and the [CRCA]." (Doc. No. 131, Ex. 1 at 41, ¶ 134).

[18] The Court also notes that the proposed second amended complaint, like the amended complaint, does not seek prospective injunctive relief for their federal takings claims. (*See generally* Doc. No. 131, Ex. 1). As such, the *Ex Parte Young* exception to the Eleventh Amendment still does not apply. *See, supra* note 2.

207 F.3d 658, 2000 WL 122431, at *2 ("Remedies against states under the 14th Amendment are created by legislation, not by other constitutional amendments.").

Accordingly, the proposed second amended complaint would be dismissed under Rule 12(b)(6) as to the claims against A&M and the Athletic Department. As such, the Court finds that they are futile.

## 2. The Foundation

Plaintiffs' proposed second amended complaint seeks recovery against the Foundation for three claims: (1) contributory infringement; (2) vicarious copyright infringement; and (3) violations of the DMCA. (Doc. No. 131, Ex. 1 at 33–38). The Court starts with the contributory infringement cause of action. That claim requires a plaintiff to plead facts that show that the defendant, with knowledge of the infringing activity, induced, caused, or materially contributed to the infringing conduct of another. *DynaStudy, Inc. v. Hous. Ind. Sch. Dist.*, 325 F. Supp. 3d. 767, 775 (S.D. Tex. 2017) (citing *Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 790 (5th Cir. 1999)).

Plaintiffs previously argued that the amended complaint's allegations that the Foundation's financial contributions to the Athletic Department and close connection were enough to reasonably infer that the Foundation had actual knowledge of the alleged copyright infringement by Marquardt on the Athletic Department website. (*See* Doc. No. 40 at 7–8 (citing Doc. No. 15)). The Court rejected that argument and found that the amended complaint failed to plead facts indicating that the Foundation or any employee thereof had knowledge of the alleged infringement. (Doc. No. 96 at 22). More specifically, the Court concluded that "Plaintiffs do not allege plausible facts indicating that the Foundation had any knowledge that Marquardt had his secretary 'key in' the Gill Biography and remove the copyright management information, or that he offered the allegedly

infringing work for publication on the University's website." (*Id.* (citing *DynaStudy*, 325 F. Supp. 3d at 777)).

The new contributory copyright allegations against the Foundation suffer the same fate as the prior ones. The only additions in the proposed second amended complaint are more allegations that the Foundation has a close relationship with the Athletic Department and that the Foundation provides the Athletic Department a significant amount of money. (*See, e.g.*, Doc. No. 131, Ex. 1 at 30–31, ¶ 69). These allegations still do not plausibly state that the Foundation had knowledge of the infringement. (*See* Doc. No. 96 at 22).

Plaintiffs also pleaded in the proposed second amended complaint that "the Foundation was in a position to exercise control and supervision over [A&M's] efforts to promote the 12th Man mythology." (Doc. No. 131, Ex. 1 at 31, ¶ 69). The Court finds this statement conclusory and not entitled to be assumed true under a Rule 12(b)(6) analysis. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). It is simply too much of a factual leap to say that the Foundation's supposed close relationship with the Athletic Department and the Foundation's status as the Athletic Department's primary benefactor means that the Foundation had dominion over the Athletic Department, such that it had the ability to supervise and control the Athletic Department. Essentially, Plaintiffs would impose an alter ego theory against the Foundation whereby the Foundation is liable for the Athletic Department's actions. The Court finds no proposed factual allegations (as opposed to conclusions) that would support such a claim.

Accordingly, the Court concludes that the proposed second amended complaint, like the amended complaint, insufficiently pleads facts concerning the Foundation's knowledge of the alleged copyright infringement. (*See* Doc. No. 96 at 22). Plaintiffs' amended claim for contributory copyright therefore is futile.

Likewise, Plaintiffs' claim against the Foundation for vicarious copyright infringement does not state a claim for which relief can be granted. That cause of action requires a degree of supervisory authority over the direct infringer, as well as a direct financial interest in the infringing activity. *See DynaStudy*, 325 F. Supp. 3d at 777. Plaintiffs previously claimed that the Foundation had supervisory authority over the Athletic Department and Marquardt because: (1) there is personnel overlap between the Foundation and the Athletic Department; (2) the Foundation directed the Athletic Department to research the Gill story; and (3) the Foundation gave a large amount of money to the Athletic Department. (*See* Doc. No. 40 at 9–10 (citing Doc. No. 15)). The Court disagreed and held that those failed to plead that the Foundation had supervisory authority over any of the allegedly direct infringers. (Doc. No. 96 at 23).

Plaintiffs did not include any new factual allegations in the proposed second amended complaint to change the Court's earlier conclusion. As explained above, the facts alleged concerning the Foundation's relationship with the Athletic Department do not support Plaintiffs' conclusory allegation that the Foundation had the ability to control and supervise the Athletic Departments website. (*See* Doc. No. 131, Ex. 1 at 30–31, ¶ 69). Additionally, the fact that the Foundation provides substantial funding to the Athletic Department—perhaps nearly all of it— cannot support Plaintiffs' conclusory statement that the Foundation *provided* the Athletic Department's website and facilities. (*See id.* at 34, ¶ 92). Unlike the cases Plaintiffs cite in their reply brief, there is no allegation that the Foundation owned or operated the website where the alleged infringement occurred. (*See* Doc. No. 145 at 8 & n.3). *See, e.g., Playboy Enters., Inc. v. Webbworld, Inc.*, 968 F. Supp. 1171, 1177 (N.D. Tex. 1997) (finding the owner and operator of a website could be liable for vicarious copyright infringement for alleged copyright infringement occurring on the website). Taking Plaintiffs' allegations as true, the Foundation gave the Athletic

Department money, which it then used to obtain facilities and maintain a website. To say that the Foundation provided the ability for the Athletic Department to purchase items and is therefore liable for how the Athletic Department used those items ignores fundamental principles of tort, agency, and property law.

Plaintiffs' new allegations do not cure the defect in pleading that the Foundation had supervisory authority over Marquardt or any of the other allegedly direct infringers. (*See* Doc. No. 96 at 23). The Court therefore also finds that the vicarious copyright claims against the Foundation are futile.

Lastly, the proposed second amended complaint adds a claim that the Foundation violated the DMCA. (*See* Doc. No. 131, Ex. 1 at 36–38). The DMCA prohibits a defendant from knowingly falsifying, removing, or altering "copyright management information" with the intent to induce, enable, facilitate, or conceal copyright infringement. 17 U.S.C. § 1202(a)–(b). In attempt to plead a DMCA claim against the Foundation, Plaintiffs reassert that the Foundation "knew or should have known of the illegal acts while materially contributing to and/or inducing them, and/or also financially benefitted from them while also possessing the right and ability to control them." (Doc. No. 131, Ex. 1 at 37, ¶ 111). Once again, the Court finds that the proposed second amended complaint fails to adequately plead facts that support the conclusion that the Foundation knew or should have known of Marquardt's alleged infringement. Thus, this claim also fails to state a claim.

Accordingly, the Court finds that the contributory copyright infringement, vicarious copyright infringement, and DMCA claims Plaintiffs seek to assert against the Foundation would be dismissed under Rule 12(b)(6). Thus, the proposed second amended complaint is futile as to the Foundation.

### 3. Cannon and Stephenson

Like the allegations in the amended complaint, Plaintiffs' proposed second amended complaint brings claims against Cannon and Stephenson for: (1) direct copyright infringement; and (2) contributory copyright infringement. (*Compare* Doc. No. 15 at 24–27, *with* Doc. No. 131, Ex. 1 at 31–36). The proposed second amended complaint also asserts DMCA claims against the two individuals. (Doc. No. 131, Ex. 1 at 36–38).

The Court dismissed the amended complaint against both Cannon and Stephenson due to qualified immunity. (Doc. No. 96 at 27–31). Specifically, the Court found that it was not objectively unreasonable for those individuals to approve the distribution and display of allegedly infringing work, or circulate a hyperlink to an allegedly infringing article, when neither individual had any knowledge that the work violated any law or copyright. (*Id.* at 27–30). Alternatively, assuming *arguendo* that qualified immunity did not apply, the Court held that Plaintiffs did not plausibly plead direct copyright infringement or contributory copyright infringement claims because there were no allegations the Cannon or Stephenson knew or should have known about the infringing activity. (*Id.* at 27–28, 29–31).

As quoted above, the Plaintiffs attempt to cure their pleading defects by adding allegations that the allegedly infringing work contained the altered byline "by Whit Canning, special to Texas A&M Athletics." (Doc. No. 131, Ex. 1 at 23, ¶¶ 53–54). Additionally, according to the proposed second amended complaint, the A&M employee policy mandated that the byline triggered Cannon's and Stephenson's duty to "inquire as to whether [A&M] had written permission, or approval by the copyright owner, to publish the content." (*Id.*). Based on these allegations, Plaintiffs conclude that Stephenson and Cannon: (1) had actual knowledge or constructive knowledge that the allegedly infringing work was plagiarized; and (2) acted objectively

unreasonable because a reasonable person in their position would know that "use of the plagiarized copy of the Gill Biography was unlawful." (*Id.*).

The Court finds that the proposed second amended complaint does not cure the defects the Court identified in the amended complaint.[19] (Doc. No. 96 at 27–31). First, both individuals are still entitled to qualified immunity. Plaintiffs attempt to plead that Cannon and Stephenson acted objectively unreasonable by adding a sentence in the proposed second amended complaint that a reasonable person in their position knew or should have known that use of plagiarized work was unlawful fails for several reasons. That sentence is a legal conclusion, rather than allegations of actual facts. Moreover, Plaintiffs misapply the reasonableness inquiry; it must first be asked if it was objectively unreasonable for someone in Cannon's and/or Stephenson's position to not "inquire[] as to whether [A&M] had written permission" to display an article that was flagged for distribution by a coworker simply because the article said "by Whit Canning, special to Texas A&M Athletics." (*See* Doc. No. 131, Ex. 1 at 22–24). *See also Foley v. Univ. of Hous. Sys.*, 355 F.3d 333, 337 (5th Cir. 2003). The Court does not find that the inclusion of the by-line "by Whit Canning, special to Texas A&M Athletics" made it objectively unreasonable for Cannon and Stephenson to decide to publish and circulate an article that was given to them by a coworker (and another individual required to follow the University's online and social media policy).

The Court therefore finds that Cannon and Stephenson are entitled to qualified immunity as to Plaintiffs' claims for direct infringement and contributory infringement. Because the same

---

[19] The Court notes that the allegations that the article included the "by Whit Canning" language and that Cannon and Stephenson were required by A&M policy to not plagiarize work are not new. (Doc. No. 15 at 17 ¶ 45, 19 ¶ 51). Indeed, Plaintiffs argued these exact points in opposing the earlier motion to dismiss. (*See, e.g.*, Doc. No. 62 at 66 ("Any competent University media relations officer (such as Marquardt and Cannon) or news information director (such as Stephenson), when viewing Plaintiffs' copyrighted 12th Man story and noticing a byline of 'by Whit [Canning],' would have asked: 'do we have permission from the author or the copyright owner of the 12th Man work to reprint this story?'")). Accordingly, the only truly new additions in the proposed amended complaint are Plaintiffs' conclusions that Cannon and Stephenson: (1) had actual knowledge or constructive knowledge that the article was plagiarized; and (2) acted objectively unreasonable. (*See* Doc. No. 131, Ex. 1 at 22–24).

allegations and conclusions apply to whether Plaintiffs stated a claim under those causes of action and whether Plaintiffs stated a DMCA cause of action, the Court also finds that Cannon and Stephenson are entitled to qualified immunity as to the latter claim. Therefore, Plaintiffs' proposed second amended complaint is futile as to Cannon and Stephenson because all the claims pleaded against those individuals would be dismissed under qualified immunity.[20]

In sum, the Court finds that Plaintiffs' proposed second amended complaint would be dismissed under Rule 12(b)(6) to the same extent that the Court dismissed the amended complaint (i.e., only the claims against Marquardt would survive). For that reason, the proposed second amended complaint is futile. Accordingly, the Motion for Leave to Amend (Doc. No. 131) was filed with undue delay, prejudices at least one of the Defendants (Marquart), and is futile. That motion is therefore denied.

## V.   The Foundation's Cross Motion (Doc. No. 141)

When the Foundation filed its response in opposition to Plaintiffs' motion for leave to amend, it also filed the Cross Motion, which asks the Court to enter a final judgment on all of Plaintiffs' claims against the Foundation. (Doc. No. 141 at 7–8). For the following reasons, the Court grants the motion.

In this case, Plaintiffs alleged that the State of Texas—through A&M's Athletic Department—copied their property (a copyright interest in the Gill Biography) without permission and without paying them any compensation, essentially depriving them of its value. The Court is of the opinion that those allegations plausibly state a claim for damages under the Takings Clause

---

[20] As explained in footnote 19, the allegation that the "by Whit Canning" by-line in the article and A&M's employee policy is enough to infer actual or constructive knowledge onto Cannon and Stephenson was included in the amended complaint. Accordingly, the Court's conclusion that the amended complaint failed to plausibly plead the requisite knowledge element applies with equal force as to the proposed second amended complaint. In other words, even if qualified immunity did not apply, the Court would still hold that Plaintiffs' failed to plausibly plead Cannon's and Stephenson's liability under direct copyright infringement, contributory copyright infringement, and the DMCA.

of the Fifth Amendment through the Fourteenth Amendment.[21] By virtue of the Eleventh Amendment, however, this Court lacks jurisdiction to hear such a case.[22] *See Bay Point Props.*, 937 F.3d at 456–57. There is no sovereign immunity bar to this case being adjudicated in Texas state court, but if the rule in *Jim Olive* is applied as to all copyright infringements by government actors, these Plaintiffs (as well as other copyright holders) may not have the ability to bring their federal takings claims anywhere.[23] *See*, 580 S.W.3d at 377.

As Plaintiffs note in their supplemental brief, several circuit courts have implied (in dicta) that sovereign immunity is inapplicable when the state courts do not provide litigants an available forum. (*See* Doc. No. 126 at 3 & n.1). *See also, e.g.*, *Hutto*, 773 F.3d at 552 ("[T]he Eleventh Amendment bars Fifth Amendment taking claims against States *in federal court* when the *State's courts* remain open to adjudicate such claims.") (emphasis in original); *Williams*, 928 F.3d at 1213 ("Some of the circuits that have considered whether a claim under the Fifth Amendment

---

[21] "The Takings Clause of the Fifth Amendment states that 'private property [shall not] be taken for public use, without just compensation.'" *Knick*, 139 S. Ct. at 2167 (quoting U.S. CONST. amend. V). That Clause is applicable to the States through the Fourteenth Amendment. *Chi., B.& Q.R. Co. v. Chicago,* 166 U.S. 226, 239 (1897). "Copyrights are a form of property." *Allen*, 140 S. Ct. at 1004 (citing *Fox Film Corp. v. Doyal*, 286 U.S. 123, 128 (1932)). Additionally, the Supreme Court has stated that "property interests . . . are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from independent sources . . . ." *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1001 (1984) (internal citations and quotations omitted). The fact that something is personal property (as opposed to real property) is immaterial for purposes of the Fifth Amendment. *See Horne v. Dep't of Agric.*, 576 U.S. 350, 358 (2015). Additionally, the Takings Clause does not discriminate between tangible and intangible property. *See, e.g., Ruckelshaus*, 467 U.S. at 1003 (property interest in a trade secret); *Armstrong v. United States*, 364 U.S. 40, 46 (1960) (property interest in a materialman's lien); *Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 571, 579 (1934) (property interests in contracts). Moreover, in *Ruckelshaus*, the Supreme Court made clear that if something is "property" under the law, then it is "property" under the Takings Clause. *See*, 467 U.S. at 1003–04.

[22] This Court's lack of subject matter jurisdiction to hear Plaintiffs' federal takings claim is not because copyrights are not "property" under the Takings Clause or because an infringement can never be a "taking." *Cf. Zoltek v. United States*, 442 F.3d 1345, 1350–51 (Fed. Cir. 2006) (holding that the plaintiff could not proceed under the Tucker Act by alleging that patent infringement was a taking because 28 U.S.C. § 1498 provides the only avenue for a patent owner to bring an action against the government for patent infringement, not because a patent is not covered by the Takings Clause).

[23] Additionally, the holding of *Jim Olive* is such that there is no taking under Texas law, either. *See*, 580 S.W.3d at 363–64, 377.

32

Takings Clause is barred by Eleventh Amendment immunity have held that it is barred, *as long as a remedy is available in state court*.") (emphasis added) (collecting cases).

As explained above, the Court disagrees with Plaintiffs that sovereign immunity is automatically abrogated for federal takings claims if the state courts are "closed." *See*, *supra* note 11. Instead, the Court agrees with the Sixth Circuit that the remedy for not having an adequate forum to litigate constitutional claims is to require the state to "open" its courts or to seek a legislative solution. *See DLX*, 381 F.3d at 528. Moreover, a federal district court is unable to create its own subject matter jurisdiction or control the subject matter jurisdiction of state courts; that authority lies with the legislative bodies and the Supreme Courts of the respective jurisdictions. It seems contrary to centuries of jurisdictional rulings to suggest that, while a federal court's jurisdiction is fixed and cannot be expanded by the parties or by itself, *see Kokkonen v. Guardian Life Insurance Company of America*, 511 U.S. 375, 377 (1994), *Turner v. Bank of North America*, 4 U.S. 8, 10 (1799), it can be expanded by the actions of a state intermediate appellate court.

The Court therefore holds that it lacks jurisdiction to hear Plaintiffs' federal takings claims, even if *Jim Olive* precludes them from pursuing those claims in Texas state court. If this Court's interpretation of the Eleventh Amendment is incorrect, however, then it believes that the exception to sovereign immunity implied by the circuit courts cited above, if it truly exists, applies in this case. Specifically, Plaintiffs have a plausible claim under the Takings Clause of the Fifth Amendment, but, under the *Jim Olive* rule currently in place, Texas state courts have deprived them of the ability to pursue that claim.

The Court acknowledges that the sovereign immunity issue is dispositive of Plaintiffs' takings claims against the Athletic Department (and by inference a claim against A&M—the would-be proper party). Moreover, it is not aware of the Fifth Circuit expressly addressing this

topic. Further, Plaintiffs currently may not have an adequate forum to litigate their federal takings claims. For these reasons, the Court believes that an immediate appeal would alleviate the risk of injustice or undue hardship to Plaintiffs. Accordingly, the Court severs the Athletic Department from this case and enters final judgment under Rule 54(b) as to all of Plaintiffs' claims against it. *See PYCA Indus., Inc. v. Harrison Cty. Waste Water Mgmt. Dist.*, 81 F.3d 1412, 1421 (5th Cir. 1996) ("A district court should grant [Rule 54(b)] certification only when there exists some danger of hardship or injustice through delay which would be alleviated by immediate appeal . . . .") (citation omitted).

Having determined that final judgment shall be entered against the Athletic Department, the Court now turns to the Foundation's Cross Motion. The Foundation argues that "[w]ithout a final judgment, [it]—a dismissed party—will continue to incur unnecessary expenses and disruptions defending itself from Plaintiffs' persistent attempts to revive their invalids claims." (Doc. No. 141 at 8). The Court is sympathetic to the Foundation's frustration in having to incur expenses and defend its reinstatement in a case that it was dismissed from well over a year ago.

Additionally, the claims against the Foundation are closely intertwined with the claims against the Athletic Department. Therefore, allowing Plaintiffs to appeal the Court's dismissal of the Foundation while they appeal the Court's ruling as to the Athletic Department would avoid extra expenses for the parties and work for the Fifth Circuit. *See PYCA Indus.*, 81 F.3d at 1421 ("One of the primary policies behind requiring a justification for Rule 54(b) certification is to avoid piecemeal appeals.") (citation omitted). Accordingly, the Court grants the Foundation's Cross Motion (Doc. No. 131), severs it from this case, and enters a final judgment under Rule 54(b) as to all of Plaintiffs' claims against it.

Finally, the Court severs Cannon and Stephenson and enters a final judgment against Plaintiffs' claims against them as well. The Court has now twice held that these two individuals are entitled to qualified immunity against Plaintiffs' claims. "Qualified immunity is 'an immunity from suit rather than a mere defense to liability.'" *Pearson v. Callahan*, 555 U.S. 223, 237 (2009) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 512 (1985)). Thus, Cannon and Stephenson are entitled to judgment on the claims brought against them by Plaintiffs. Moreover, it would cause piecemeal appeals and unnecessary expenses for Plaintiffs to appeal the Court's rulings concerning some of the dismissed defendants now but wait to appeal those substantially similar rulings concerning Cannon and Stephenson. Lastly, it would be more efficient and equitable for the Fifth Circuit to consider all of the dismissed defendants together.

Accordingly, the Court grants the Foundation's Cross Motion (Doc. No. 141), severs the Athletic Department, the Foundation, Cannon, and Stephenson from this case, and enters a final judgment in their favor on Plaintiffs' claims against them under Rule 54(b). The Court believes that this approach allows Plaintiffs to seek a more immediate resolution to their concerns that they have no forum to recover from an alleged unconstitutional taking and also allows the dismissed defendants to avoid unnecessary expenses and delays in waiting from the adjudication of Plaintiffs' claims against Marquardt.

## VI.    Conclusion

This Court dismissed Plaintiffs Michael J. Bynum's and Canada Hockey LLC's amended complaint as to all claims against Texas A&M University (as the proposed substitute party for Defendant the Texas A&M University Athletic Department), Defendant the Texas A&M University 12th Man Foundation, Defendant Alan Cannon, and Defendant Lane Stephenson. (Doc. No. 96). The only remaining claims are those asserted against Defendant Brad Marquardt. (*Id.*).

35

The Court now reaffirms that dismissal order. The claims against the Athletic Department (and therefore A&M) remain dismissed without prejudice because the Eleventh Amendment deprives the Court from jurisdiction to hear such claims. *See Warnock v. Pecos Cty., Tex.*, 88 F.3d 341, 343 (5th Cir. 1996). Accordingly, Plaintiffs' motions to reconsider (Doc. Nos. 102, 128, and 129) are hereby denied.

The Court further denies Plaintiffs' motion for leave to file a second amended complaint (Doc. No. 131) because Plaintiffs unduly delayed in filing the motion, the proposed second amended complaint would cause undue prejudice to Marquardt, and the proposed second amended complaint is futile. Lastly, the Court grants the Foundation's cross motion for entry of final judgment (Doc. No. 141), severs from this case the Athletic Department (and consequently A&M), the Foundation, Cannon, and Stephenson, and enters final judgment under Rule 54(b) against Plaintiffs' claims against these defendants. The effect of this order is that the only remaining defendant in this case is Marquardt; and the only active claims against him are Plaintiffs' direct copyright infringement, contributory copyright infringement, and vicarious copyright infringement claims.

SIGNED at Houston, Texas this 4 day of September, 2020.

Andrew S. Hanen
United States District Judge