United States District Court
Southern District of Texas
**ENTERED**
September 04, 2020
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MICHAEL J. BYNUM and CANADA HOCKEY, LLC, dba EPIC SPORTS, | § § § | |
| *Plaintiffs*, | § § | |
| v. | § § | CIVIL ACTION NO. 4:17-CV-00181 |
| BRAD MARQUARDT, in his individual capacity, | § § § § | |
| *Defendant*. | § § | |

## ORDER

Before the Court are Defendant's Motion to Strike the Declaration of Whit Canning (Doc. No. 165), Defendant's Motion for Summary Judgment (Doc. No. 143), and Plaintiffs' Cross-Motion for Partial Summary Judgment (Doc. No. 153).

**I.    The Motion to Strike**

Whit Canning ("Canning") was the purported author of the 12th Man story that is the basis for this lawsuit. (The Court will not lay out the alleged facts as it has already detailed these in several other opinions.) As such, it is not a surprise that both sides find Canning's evidence to be important. Canning was deposed by both sides (and was even questioned briefly by his own lawyer) on February 13, 2020. Additionally, he has provided Plaintiffs a declaration in support of his Motion for Partial Summary Judgment. (*See* Doc. No. 153-3). This affidavit/declaration was signed on June 26, 2020—some four months after the deposition was taken.

The Court has reviewed not only the declaration and the passages of the Canning deposition selected by the parties, but it has also reviewed the entirety of the deposition in question.

1

First, the Court agrees with the Defendant's presentation of the law concerning "sham affidavits." It is well-settled that the courts in this Circuit will not allow a party to defeat a summary judgment using an affidavit that impeaches, without explanation, sworn testimony. *S.W.S. Erectors Inc. v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996). This Court has utilized that doctrine in multiple cases where a party attempted to use a sham affidavit to counter his or her prior testimony. Indeed, Defendant has cited one of this Court's opinions in its brief where this Court actually struck sham affidavits. (Doc. No. 165 at 3).

There are several motivating factors behind this doctrine. First, it undermines the summary judgment process by allowing a party to use contradictory testimony. Second, it weakens the discovery process as well. One of the main reasons a party conducts a deposition is to discover the true facts. Another reason is to tie down a witness or another party to a certain position or set of facts. If a person could then freely contradict their own testimony, it destroys both goals. Finally, the procurement of a "sham affidavit," in effect, promotes perjury as it certainly leads one to a logical conclusion that either the initial deposition testimony or the contradictory affidavit must have been false.

The application of that doctrine in this case, however, is far from clear cut. Throughout Canning's deposition, he exhibited a consistent inability to remember basic details. While this Court did not find the questioning by any of the lawyers to be "tricky" or "confusing," it is clear throughout the proceeding that Canning did not seem to follow the questioning or, alternatively, gave either a non-responsive answer, an answer that contradicted his prior testimony (in addition to contradicting the declaration that Plaintiffs have submitted in support of their motion), or answered that he could not remember. The declaration that Defendant wants stricken relays to the Court, among other things, that Canning's physicians have told him that he does not have dementia

or Alzheimer's Disease, and that is no doubt good news for him and his family. Nevertheless, their diagnosis does not change the fact that his deposition testimony concerning the events in this case was hazy at best and for the most part less than convincing.

Despite these shortcomings, the Court denies the Motion to Strike the declaration for two reasons. First, it is not clear, based upon the record before it, that a deposition response that Canning could not remember something at the time of his deposition is by necessity contradictory of a statement in the actual affidavit. Although it certainly raises questions, it is possible that his recollection could have been refreshed by outside forces. Second, and perhaps more importantly, the Court does not find the affidavit to make a difference. To the extent there are contradictions, the deposition testimony (which is the only one of the two that is admissible at trial) still exists to create a fact issue with regard to the two pending summary judgment motions.

The Motion to Strike (Doc. No. 165) is denied.

## II.   The Motions for Summary Judgment

With regard to Defendant's pending Motion for Summary Judgment (Doc. No. 143) and Plaintiffs' Cross-Motion for Partial Summary Judgment (Doc. No. 153), the Court need not go into great detail because the Court is prevented from granting either motion due to the fact issues that require a decision by a fact-finder.

Defendant's motion, which is based on his contention that Plaintiffs did not acquire the rights to the Canning article (the subject matter of this suit) until February 5, 2014—a month after the alleged infringement—is controverted by Bynum's own declaration that he had obtained those rights years earlier. Bynum avers that Canning was hired to write the article about E. King Gill in the late 1990s and that he or his company have always owned the rights to it since as early as 1997 or 1998. This raises a fact issue. The fact that Bynum cannot locate the actual written contract may

3

prove fatal in front of the jury, but it does not diminish the fact that his own declaration raises a fact issue. Additionally, a copy of the actual Canning article that Defendant possessed is attached to his declaration and it demonstrates on the first page that one of the Plaintiffs has a 1998 copyright. While the Canning affidavit would provide additional support for this claim, an issue of material fact exists with it or without it.

The Court also finds that there is, at this juncture, no reason to reconsider its ruling on qualified immunity. As stated above, Marquardt's own declaration attaches as an exhibit the copy of the article that he claims led to the infringement claims and it clearly shows (or at least raises a fact issue) that Epic Sports had a copyright as early as 1998. There is no explanation how that copyright information got deleted or how the actual article got placed on the internet; nor does he provide any explanation as to how he originally obtained the article. While there may be factual disputes as to the Canning-Bynum relationship and when certain matters occurred, it is clear that there is evidence that Epic Sports was claiming a copyright on the copy of the very article that the Defendant had years before the alleged infringement.

To the extent Defendant objects to the Bynum declaration, those objections, with one exception, are overruled. The first objection is based upon speculation. Bynum would be speculating if he testified about Canning's intentions, but he is not speculating because he is actually testifying about his own beliefs (although his own beliefs about Canning's intentions have little or no probative value). The second and fourth objections based on the Best Evidence Rule are also overruled. The Best Evidence Rule prevents testimony about the *contents of a writing*. FED. R. EVID. 1002. The portions of the declaration objected to do not purport to describe the contents of the alleged 1997 contract—only its existence. The Court sustains the objection to the

4

declaration as far as it purports to state that Canning cannot find his copy of the contract as that is clearly speculation.

The Defendant's Motion for Summary Judgment (Doc. No. 143) is denied.

Plaintiffs' motion for partial summary judgment is predicated on the fact that Bynum owned the copyright during the relevant time period. It is somewhat more difficult to pinpoint the exact argument because they combined it with their memorandum of law in opposition to Defendant's motion for summary judgment, a procedure this Court does not recommend. In that document they include multiple arguments that this Court will not address in detail as they are so clearly contrary not only to the Plaintiffs' own pleadings, but also to all the adduced facts in this case to date. This includes the argument that Bynum is the sole author or dominant author of the infringed material. While this might be arguably true of the planned book—Plaintiffs' own evidence demonstrates (or at least raises a fact issue) that the actual infringed material was written by Canning. This has been Plaintiffs' position from the start and there are judicial admissions contrary to their motion throughout this case that are enough in themselves to preclude a summary judgment.

This Court assumes also that Plaintiffs are requesting a judgment to the effect that Bynum owns the copyright. This request is also easily denied as multiple fact issues exist. First, Plaintiffs claim that Canning wrote the article on a "work for hire" basis and that they had ownership by virtue of a 1997 contract that no one can find and that only Bynum remembers (at least at the time of Canning's deposition). In Canning's deposition (as opposed to his declaration), Canning was not sure he even wrote the article in question, much less that he wrote it pursuant to a contract with Bynum.

Q: Well I would like for you to look at it and tell me if you wrote it.

A: I don't recall writing that - - that one, no...

Q: Yes, sir. Did you write this article, the one that has your name on it?

A: Well, this one right here, I don't recall doing that. I don't recall ever writing a book like - - a thing like that.

. . .

Q: And you're saying you - - right now, you don't have any memory of giving anyone permission to put this article, if you wrote it, into this book?

A: No, I don't - - I don't...

. . .

Q: Have you ever had a work for hire arrangement with anybody that you worked for?

A: Not that I know of.

. . .

Q: I'm sorry. I just - - I didn't know if - - is - - so you were saying that Michael Bynum did pay you $5000 for the rights to the article. And I was just asking: Is this connect - - is that connected to this Exhibit 6, in your mind, or is it not?

A: Exhibit 6?

Q: (By Ms. Mather) Right. That's - - it has the sticker at the bottom. I was just - -

A: No, no, no. This thing between me and Bynum was just between me and Bynum. He just - - he just, you know - - he agreed to pay me $5000 for the rights to the - - to the - - to the King Gill - - or to the - - yeah. And I said, Yeah, fine. What was I going to do with it? I made five bucks - - I mean $5000, yeah.

Q: And this was after your stroke, right?

A: Yeah.

(Doc. No. 143-2 at 96–97, 102, 115, 137).

6

Canning testified at times his stroke was in 2013 and at times it was in 2014, but regardless of which year it was more than ten years after the alleged 1997 contract.

Q: Right.

A: You know, my five grand went to him and his five grand went to me, and he bought the rights to the - - to the Gill thing, and I went home with $5000. That's about as near as I know how to say it.

Q: Okay. And if you received $2500 back in 1997, you don't remember that, fair?

A: I really don't, but, you know, I don't think that I would let $2500 pass in front of me without me knowing it. But I maybe have a little bit of a reputation for somebody that just doesn't really, you know, think about it that much, you know. You know, I spent - -

Q: All right, sir.

A: I spent most of my life looking for my next beer, but I got - - we got to a point - - because, you know, people here and there, you know, have criticized Bynum, you know, and said that he didn't pay this and he didn't pay that. What I was trying to say is that as far as I'm concerned, we're even. He doesn't owe me a dime, and the property belongs to him.

(*Id.* at 173).

The Court notes in several places in his deposition Canning actually testified like he did in some of the portions quoted-above that he paid Bynum $5,000. ("My five grand went to him.")

As stated above, the Court is certain that Canning—regardless of the latest diagnosis—has problems with his memory, at least with regard to this case. He admitted as much in his deposition. Plaintiffs, however, cannot ask this Court to ignore his testimony (which actually is admissible at trial) and instead just rely on a later obtained declaration that contradicts it. Issues of material fact exist.

The Plaintiffs' Cross-Motion for Partial Summary Judgment (Doc. No. 153) is hereby denied.

7

## III. Conclusion

The Court hereby denies the Defendant's Motion for Summary Judgment (Doc. No. 143), the Plaintiffs' Cross-Motion for Partial Summary Judgment (Doc. No. 153), and the Defendant's Motion to Strike the Canning Declaration (Doc. No. 165).

SIGNED at Houston, Texas this 4th day of September, 2020.

Andrew S. Hanen
United States District Judge