**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **MICHAEL J. BYNUM AND CANADA** | § | |
| **HOCKEY LLC d/b/a EPIC SPORTS** | § | |
| *Plaintiff* | § | |
| **v.** | § | **CIVIL NO.  4:17-cv-00181** |
| | § | |
| **BRAD MARQUARDT,** | § | |
| **in his individual capacity** | § | |
| *Defendant* | § | |

<u>**DEFENDANT BRAD MARQUARDT'S MOTION FOR SUMMARY JUDGMENT**</u>

Julie A. Ford
SBN:07240500
Jford@gbkh.com
GEORGE BROTHERS KINCAID & HORTON, LLP
114 W. 7th Street, Suite 1100
Austin, Texas 78701
Tel: 512-495-1448
Fax: 512-499-0094

***Attorneys for Defendant Brad Marquardt***

# TABLE OF CONTENTS

TABLE OF CONTENTS...............................................................................................................ii

INDEX OF AUTHORITIES........................................................................................................iii

STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS.............................iv

INTRODUCTION .......................................................................................................................1

STATEMENT OF ISSUES TO BE RULED UPON BY THE COURT.......................................1

SUMMARY JUDGMENT STANDARD......................................................................................2

SUMMARY JUDGMENT EVIDENCE ......................................................................................2

STATEMENT OF FACTS............................................................................................................3

      A.    How a 1998 article about the 12th Man got posted on an A&M website.................3
      B.    How the Canning Article ended up in the *TAMU Times*.........................................5
      C.    How Brad Marquardt got sued for something he didn't do.....................................6

SUMMARY OF ARGUMENT......................................................................................................9

ARGUMENT ..............................................................................................................................10

I.     The uncontested evidence show Marquardt did not violate the DMCA............................10

      A.    Marquardt did not remove or alter copyright management information...............10
      B.    Marquardt did not distribute copies of the Canning Article knowing
            the CMI had been removed or altered....................................................................11
      C.    Marquardt did not alter the Canning Article's title...............................................12

II.    The doctrine of "fair use" protects Marquardt from claims of copyright infringement....12

      A.    Fair use is a flexible protection determined on a case-by-case basis....................14
      B.    An analysis of the four statutory factors in this case show Marquardt's
            specific use of the Canning Article was protected by "fair use."...........................15

III.   Marquardt is not liable for contributory copyright infringement.......................................17

IV.    Qualified immunity.................................................................................................18

CONCLUSION ............................................................................................................20

CERTIFICATE OF SERVICE ......................................................................................21

## INDEX OF AUTHORITIES

<u>Cases</u>

*Anderson v. Creighton,*
    483 U.S. 635 (1987).............................................................................................19

*Andy Warhol Found. For the Visual Arts, Inc. v. Goldsmith,*
    143 S.Ct. 1258 (2023).....................................................................................15, 16

*Ashcroft v. al-Kidd,*
    563 U.S. 731 (2011).............................................................................................18

*Ass'n for Info. Media & Equip. v. Regents of the Univ. Of California,*
    2012 WL 7683452 (C.D. Cal. 2012)....................................................................19

*Bell v. Eagle Mountain Saginaw Indep. Sch. Dist.,*
    27 F.4th 313 (5th Cir. 2022)............................................................................14-16

*Energy Intelligence Grp., Inc. v. Kayne Anderson Capital Advisors, L.P.,*
    948 F.3d 261 (5th Cir. 2020)................................................................................10

*Gershwin Publ'g Corp. v. Columbia Artists Management, Inc.,*
    443 F.2d 1159 (2d Cir. 1971)...............................................................................18

*Google LLC v. Oracle America, Inc.,*
    593 U.S. __, 141 S.Ct. 1183 (2021)......................................................................15

*Harper & Row Publishers, Inc. v. Nation Enters.,*
    471 U.S. 539 (1985).............................................................................................15

*Issaenko v. Univ. of Minn.,*
    57 F. Supp. 3d 985 (D. Minn. 2014)....................................................................19

*Lakedreams v. Taylor,*
    932 F.2d 1103 (5th Cir. 1991)..............................................................................12

*Lynch Props., Inc. v. Potomac Ins. Co.,*
    140 F.3d 622 (5th Cir. 1998)............................................................................2

*MGM Studios Inc. v Grokster, Ltd.,*
    545 U.S. 913 (2005)..........................................................................................17

*Mango v. Buzzfeed, Inc.,*
    970 F.3d 167 (2d Cir. 2020).............................................................................11

*Mullenix v. Luna,*
    577 U.S. 7 (2015)..............................................................................................18

*Pearson v. Callahan,*
    555 U.S. 223 (2009)..........................................................................................18

*Perfect 10, Inc. v. Amazon.com, Inc.,*
    508 F.3d 1146 (9th Cir. 2007)..........................................................................17

*Reichle v. Howards,*
    566 U.S. 658 (2012)..........................................................................................18

*Reiner v. Canale,*
    301 F. Supp. 3d 727 (E.D. Mich. 2018)...........................................................19

*Victor Elias Photography, LLC v. Ice Portal, Inc.,*
    43 F.4th 1313 (11th Cir. 2022).........................................................................11

## <u>Statutes</u>

17 U.S.C. § 107 ...........................................................................................14-15

17 U.S.C § 1202 .......................................................................................1, 10-11

17 U.S.C. § 1203(b)(5)..................................................................................20

## <u>Rules</u>

FED. R. CIV. P. 56(a) ......................................................................................2

**STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS**

This is a copyright infringement case filed in 2017.  Doc. No. 15 (First Amended Complaint).  The lawsuit is based on the unauthorized publication of a feature article on the website of Texas A&M's Athletics Department on January 19, 2014, for a period of three days.

Plaintiffs are Michael Bynum and his business entity, Canada Hockey LLC.  All defendants except Brad Marquardt were dismissed on the pleadings in 2019.  Doc. No. 96.

Currently, there is no scheduling order in place.

Defendant Brad Marquardt now moves for summary judgment, requesting dismissal of all claims against him.

## INTRODUCTION

Whatever complaints Plaintiffs may have against Texas A&M University, Brad Marquardt did nothing wrong.  He found an old paper article about A&M's 12th Man tradition in his office. Believing the factual information in the article could be useful, he had a word searchable copy made for his own research file.  He then shared his copy with a co-worker in A&M's Athletics Department.  For that, he is being sued individually for millions of dollars.

This suit was filed because Marquardt's colleagues, and his boss, independently decided to post the entire feature article on a university website as part of a social media campaign.  Then other A&M employees decided to link to the Article in an electronic newsletter, the *TAMU Times*. Marquardt had no involvement with these decisions.

It did not occur to Marquardt that his colleagues might end up violating copyright law. And because any government employee in Marquardt's position could have reasonably assumed that his own actions violated no law, the doctrine of qualified immunity requires dismissal of this lawsuit.

## STATEMENT OF ISSUES TO BE RULED UPON BY THE COURT

Defendant Brad Marquardt moves for summary judgment on the following issues.  The standard of review for each issue is the summary judgment standard in FED. R. CIV. P. 56(a).

1.    *No violation of the DMCA*.  The uncontested evidence shows that Brad Marquardt did not violate the Digital Millennium Copyright Act (DMCA), 17 U.S.C. § 1202.  Marquardt did not remove copyright information from the article at issue; he did not distribute the article knowing that copyright management information had been removed and he did not alter any copyright management information.  17 U.S.C. § 1202(b).

2.    *No copyright infringement based on Marquardt's individual actions*.  Marquardt's individual actions in making a copy of the article for his own use and then sharing his copy with two colleagues were protected under the doctrine of fair use. 17 U.S.C. § 107.

3.    *No contributory copyright infringement.* The uncontested evidence shows that Marquardt did not intentionally induce or encourage direct infringement. *MGM Studios Inc. v. Grokster, Ltd,* 545 U.S. 913, 930 (2005).

4.    *Qualified immunity requires dismissal.* A reasonable official in Marquardt's position would not have understood that making a copy of an old feature article to use as a resource, and then sharing his copy with two colleagues, was a clear violation of anyone's statutory right.  If there is any question as to whether Marquardt's own conduct violated copyright law, that question is not "beyond debate" and Marquardt is therefore protected by qualified immunity.  *Mullenix v. Luna,* 577 U.S. 7 (2015).

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Where a moving party seeks summary judgment as to his opponent's claims, he bears the burden of demonstrating the absence of a genuine issue of material fact, "but is not required to negate the elements of the nonmoving party's case." *Lynch Props., Inc. v. Potomac Ins. Co.,* 140 F.3d 622, 625 (5th Cir. 1998).  "Once the moving party meets this burden, the nonmoving party must set forth" - and submit evidence of - "specific facts showing a genuine issue for trial and not rest upon the allegations or denials contained in its pleadings." *Id.*  "Factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing an actual controversy exists."  *Id.*

## SUMMARY JUDGMENT EVIDENCE

Exhibit A:    Declaration of Brad Marquardt
      Exhibit A-1:   Copy of the Canning Article found in Marquardt's desk
      Exhibit A-2:   Email with Word copy of the Canning Article attached
      Exhibit A-3:   Email correspondence between Plaintiff and Marquardt in 2014
      Exhibit A-4:   Copy of Exhibit C to Plaintiffs' First Amended Complaint
      Exhibit A-5:   Copy of Exhibit D to Plaintiffs' First Amended Complaint
Exhibit B:    Declaration of Alan Cannon
Exhibit C:    Declaration of Shane Hinckley

Exhibit D:      Declaration of Krista Berend
Exhibit E:      Declaration of Matt Simon
Exhibit E-1:    Email correspondence between Matt Callaway and Matt Simon, January 19, 2014

**STATEMENT OF FACTS**

On a Sunday afternoon in January 2014, a feature article by sportswriter Whit Canning was posted on Texas A&M's Athletic Department website.  Two A&M employees, Matt Callaway and Matt Simon, posted the article while working under the direction of their boss Jason Cook.  Ex. C; Ex. E.

Whit Canning's article (the "Canning Article"), written in 1998, was about the origin story of A&M's 12th Man tradition.  The tradition began in 1922 when an Aggie named E. King Gill was called down from the bleachers and asked to suit up and be ready to play in the "Dixie Classic" football game.

**A.      How a 1998 article about the 12th Man got posted on an A&M website.**

The "12th Man" concept is a well-known Aggie tradition.  In January 2014, the term "12th Man" was also being used by the Seattle Seahawks as that team was headed for the Superbowl. During the runup to the Superbowl, A&M wanted to remind the general public that the 12th Man tradition had started at A&M.  Ex. C., ¶ 3.

To achieve that goal, Shane Hinckley, then interim VP of Marketing and Communications at A&M, together with Jason Cook, Senior Associate Athletics Director, created a 12th Man  public relations campaign. Ex. C, ¶3.  One of the first tasks in their plan was to use social media to get the word out during the Seahawks' game set for January 19, 2014.   Hinckley tapped employee Krista Smith to handle the project for A&M's Marketing and Communications Division. Ex. C,

¶4; Ex. D, ¶3.  Jason Cook instructed Athletics Department employee Matt Callaway to work with Krista Smith on that social media project.  Ex. C, ¶4, Ex. D, ¶3.

On January 16, three days before the game, Krista Smith sent Matt Callaway a tentative social media plan with her suggested tweets.  Ex. D, ¶ 4.  Callaway proposed adding a tweet that would link to a 12th Man story to be posted on the Athletics Department website.  Ex. D, ¶ 4.  That Friday afternoon, Smith sent Sunday's social media plan to Shane Hinckley and Jason Cook.  Both Hinckley and Cook approved the plan. Ex. C, ¶5.

The person tasked with actually posting the 12th Man story over the weekend was Matt Simon, the Athletics Department's website manager.  Ex. E, ¶ 3. On Sunday, Callaway sent Matt Simon the story to be posted, with a note saying "Written by Whit Canning in 1998." Ex. E, ¶3 & Ex. E-1.

The title of the story was "*E. King Gill: The Life and Legend of Texas A&M's 12th Man*." On his own initiative, Matt Simon changed the title to "*The Original 12th Man.*" Simon believes he changed the title so it would fit the display on the website.  Ex. E, ¶5. Simon also added the following introduction to the story:

> In this retrospective, originally written in 1998, we bring you the story of E. King Gill - the life and legend of Texas A&M's 12th Man
>
> by Whit Canning
>   Special to Texas A&M Athletics

Ex. E, ¶ 5.  Simon added the words, "special to Texas A&M Athletics," because he often used that phrase to indicate that a particular article came from outside the Athletics Department.  No one told Simon to make any of these changes.  Ex. E, ¶5.

The Canning Article was posted to the website and, per the plan, a tweet linking to the Article was sent out during the Seahawks game.

**B.    How the Canning Article ended up in the _TAMU Times_.**

Within A&M's Marketing and Communications Division, there were more plans for the Canning Article.  On Tuesday January 21, Krista Smith included the Canning Article in a list of proposed feature stories to be published in the University's electronic newsletter, the _TAMU Times_. Her boss Shane Hinckley said "This needs to be the lead story."  Ex. C, ¶ 6-7; Ex. D, ¶6.

So Smith drafted a headline and introduction to the story for the _TAMU Times_ that said:

The Original 12th Man

E. King Gill never led Texas A&M to a national championship, but because of one simple act in Dallas in 1922, he became the most revered Aggie of them all: the 12th Man.

That headline linked readers to the Athletics Department website where the Canning Article had been posted two days before.  Ex. D, ¶ 7.

The _TAMU Times_ newsletter with this link was published on Tuesday, January 21, 2014. The next day, Michael Bynum contacted the Athletics Department saying that Whit Canning "wrote this story for me in 1997" and demanded that the story be taken down.  Shortly after receiving Bynum's complaint, the Canning Article was removed from both the Athletics Department website and the _TAMU Times_. Ex. D; Ex. A, ¶ 14.

Three years later, Bynum sued A&M and a number of other defendants for copyright infringement.

**C.      How Brad Marquardt got sued for something he didn't do.**

As described above, there were five individuals who were involved in A&M's publication of the Canning Article: Shane Hinckley, Krista Smith, Jason Cook, Matt Callaway and Matt Simon.  None of those individuals were named as Defendants in this lawsuit.

The only remaining defendant, Brad Marquardt, was not involved in the decision to post the Canning Article on the Athletics Department website.  He did not post the Article on the website, he did not post any tweets linking to the Article, nor did he post a link to the Article in the *TAMU Times*.  And Marquardt did not remove or alter copyright information from the Article. Ex. A.

***The uncontested evidence about Marquardt's individual actions establishes the following:***

Marquardt worked in the media relations office of the Athletics Department.  His job was to facilitate communications between the media and the A&M Athletics Department.  As part of his job, he gathered and shared information about topics of interest regarding A&M athletics.  Ex. A, ¶ 5.

While cleaning his office in January 2014, Marquardt discovered an old paper copy of the Canning Article.  He did not recall seeing the Article before, nor did he know how it had landed in his office.  But he thought the historical facts contained in that Article would be useful.  So he asked the department's secretary to type the Article into a Word document so he would have that resource handy in a word searchable format when answering questions about the 12th Man.  He had no intention of publishing the Canning Article.  Ex. A, ¶ 3-6.

The department secretary emailed the Word document she created to Marquardt on January 14, 2014.  Ex. A, ¶7.   The email sat in Marquardt's inbox until he got word that his colleague Matt Callaway was looking for information about the 12th Man.[1]  Ex. A, ¶ 7.  Marquardt forwarded to Callaway the secretary's email with the Word document attached. Ex. A, ¶7, Ex. A-2.  Marquardt did not review the document before forwarding it to Callaway.[2] Ex. A.

As it turned out, in creating the Word document, the department secretary did not include the information on the Article's cover sheet.  The cover sheet had said:

E. King Gill:
The Life & Legend of Texas A&M's 12th Man
By Whit Canning

Copyright © 1998 Epic Sports
All rights reserved

Marquardt did not realize that the cover sheet information had been omitted from the Word document.  Ex. A, ¶ 12.

Marquardt was not part of the team working on the 12th Man public relations campaign.  No one asked Marquardt whether the Article could or should be posted on the Athletics Department website.   No one asked Marquardt whether they needed permission to do so.  Marquardt never encouraged anyone to post, publish or link to the Canning Article.  Ex. A, ¶ 10,

---

[1] Marquardt and Callaway both worked in the Athletics Department's media relations office.  Their immediate supervisor was associate athletics director Alan Cannon.  Cannon reported to senior associate athletics director Jason Cook.

[2] The email indicates that Marquardt also sent the Article to an intern working in the Athletics Department named Benjamin Dierker.  There is no indication that Mr. Dierker did anything in connection with posting the Article on the Athletics website.

Ex. C, ¶ 5, Ex. D, ¶ 5. When Marquardt forwarded the Article to Matt Callaway, it did not occur to him that his colleagues and his boss might use the Article in a way that violated copyright law. Ex. A, ¶10.

***Plaintiff ignored Marquardt's explanation and concocted a fictional account of how the copying had occurred.***

After Michael Bynum complained to the Athletics Department about the posting, Marquardt, who knew Bynum, apologized and explained to Bynum how he had found the old paper article in his office and gave a copy to a colleague who was looking for information about the 12th Man.  Ex. A, ¶ 14, Ex. A-3.

Bynum apparently ignored Marquardt's explanation.  He later alleged that Marquardt copied the E. King Gill story from a coffee table book about A&M football that Bynum had been compiling off and on since 1998.  Doc. No. 15, p. 25 & Ex. C. Bynum had emailed a pdf of his draft book to Marquardt in June 2010, asking for Marquardt's help in finding photos for specific sections of the book, none of which concerned the story about E. King Gill.  Ex. A, ¶ 17.

Bynum's theory that Marquardt had copied the E. King Gill story from his draft book was completely wrong.  A comparison of the old Canning Article to the story that Bynum had included in his A&M football book clearly demonstrates that the copy posted on the Athletics Department website was of the old paper article dated 1998, and not the version in Bynum's draft book. Compare Ex. A-1 to Plaintiffs' First Amended Complaint, Doc. 15-1, at p. 15-27.   When Marquardt found the paper copy of the Canning Article in January 2014, he did not realize there was a connection between Michael Bynum and the Canning Article. Ex. A, ¶ 4.  Although Bynum had emailed Marquardt a pdf of his book in 2010, Marquardt had no reason to read the book at the

time, and he did not see the Epic Sports copyright notice contained in that pdf, nor did he see Whit Canning's 12th Man story in that book.  Ex. A, ¶ 16-17.

In the end, Marquardt was sued because he did two favors.  In 2010, Marquardt was asked to help Bynum find specific photos for a book about Texas A&M football.  Four years later Marquardt helped a colleague by sharing his copy of an old article about E. King Gill.  Nine years later, Marquardt now has a keen appreciation for the saying, "no good deed goes unpunished."

## SUMMARY OF ARGUMENT

Plaintiffs allege that Marquardt violated the Digital Millennium Copyright Act (DMCA) because copyright information had been omitted from the Canning Article when it was posted on the Athletics Department website.  The DMCA only prohibits intentional conduct, and the uncontested evidence shows the omission was completely unintentional.

The claim of copyright infringement against Marquardt individually also fails.  Marquardt's own act of "copying" was protected under the doctrine of "fair use."  Marquardt played no role in the decision to post the entire Canning Article, which resulted in the infringement alleged in this case.  Further, the uncontested evidence shows Marquardt did not intentionally induce or encourage direct infringement by others.

Overarching these issues is the doctrine of qualified immunity.  A reasonable government official in Marquardt's position, under the specific circumstances in this case, would not have understood that his own use of the Canning Article violated any statutory right.  Qualified immunity therefore requires that the claims against Marquardt should be dismissed.

## ARGUMENT

### I.  The uncontested evidence shows Marquardt did not violate the DMCA.

Bynum claims that Marquardt violated the Digital Millennium Copyright Act, 17 U.S.C. § 1202 (DMCA).  Doc. 15, p. 29 - 30.  The Digital Millennium Copyright Act was enacted in 1988 primarily to address concerns about technological circumvention of copyright protection.  *Energy Intelligence Grp., Inc. v. Kayne Anderson Capital Advisors, L.P.,* 948 F.3d 261, 276 (5th Cir. 2020). Section 1202 protects the 'integrity of copyright management information' by prohibiting any person from intentionally removing or altering CMI if he or she knows or has reasonable grounds to know it would 'induce, enable, facilitate, or conceal' copyright infringement.  17 U.S.C § 1202 (b)." *Id.*   Because Bynum can make no showing as to the essential elements of the DMCA claims made against Marquardt, those claims should be dismissed by summary judgment.

### A.  Marquardt did not remove or alter copyright management information.

The DMCA provides:

> No person shall intentionally remove or alter any copyright management information (CMI) knowing or having reasonable grounds to know, that it [the alteration or removal] will induce, enable, facilitate, or conceal an infringement of a copyright.

17 U.S.C § 1202 (b)(1).  Copyright management information (CMI) includes in part, the title, the author and the copyright owner of a work.  17 U.S.C. § 1202 (c)(1)-(3).

The Canning Article had a cover sheet with the following CMI: the author's name, copyright notice and date.  It is uncontested that Marquardt gave the department secretary a paper copy of the Canning Article, together with the cover sheet containing that CMI.  It is also uncontested that the secretary made a copy of the Canning Article by typing it into a word-searchable Word document.  And it is uncontested that she failed to type into the Word document

the information on the cover sheet.  So CMI was essentially "removed" from the copy she made of the Canning Article.

But Section 1202 prohibits only the ***intentional*** removal of CMI.  The uncontested evidence shows that Marquardt did not intend for the secretary to remove any CMI from the Canning Article.  Without reviewing that document, Marquardt simply forwarded it to Callaway.  Ex. A, ¶ 5, 6, 7, 12.    Intent is an essential element of a section 1202(b)(1) claim.  In fact, section 1202(b)(1) has a double-scienter requirement: Even if Marquardt had intended to omit CMI from the Word document (which he did not), a plaintiff must also show Marquardt knew, or had reasonable grounds to know, that the removal would induce, enable, facilitate, or conceal an infringement of a copyright.  No such evidence exists.

**B.    Marquardt did not distribute copies of the Canning Article knowing the CMI had been removed or altered.**

The DMCA also provides:

No person shall distribute copies of works knowing that copyright management information has been removed or altered knowing or having reasonable grounds for knowing that [the distribution] will induce, enable, facilitate, or conceal an infringement.

17 U.S.C. § 1202(b)(3).

Section 1202(b)(3) also contains a "double-scienter" requirement.  "[T]he defendant who distributed improperly attributed copyrighted material must have actual knowledge that CMI 'has been removed or altered without authority of the copyright owner or the law,' as well as actual or constructive knowledge that such distribution 'will induce, enable, facilitate, or conceal an infringement.'"  *Mango v. Buzzfeed, Inc.*, 970 F.3d 167, 171 (2d Cir. 2020); *Victor Elias Photography, LLC v. Ice Portal, Inc.*, 43 F.4th 1313, 1319 - 1321 (11th Cir. 2022).

It is uncontested that Marquardt did not know that copyright management information had been removed or altered when he emailed the document to Callaway.  Further, he had no reasonable grounds to know his email to Callaway would "induce, enable, facilitate or conceal an infringement."  It was reasonable for him to assume that whatever his colleagues (and his boss Jason Cook) did with the Canning Article would not violate copyright law.  Ex. B.

**C.      Marquardt did not alter the Canning Article's title.**

Bynum also alleges that the DMCA was violated when the title to the Canning Article was changed, and when the phrase, "Special to Texas A&M Athletics" was added.  But it is uncontested that web manager Matt Simon, acting alone, changed the title to the Canning Article and added that phrase.  Ex. E. ¶ 5-6.

In sum, CMI was unintentionally omitted when the Athletics Department secretary typed the Canning Article into a Word format.  Then another employee, Matt Simon, wrote a new title and subhead.  Marquardt did not intend to remove any CMI, and he had no actual knowledge that anything had been omitted from the Canning Article when he sent his email copy to his colleagues. Further, he had no reason to believe his actions would "induce, enable, facilitate or conceal an infringement."  Ex. A, ¶ 12.   Because Bynum cannot prove the essential elements of the DMCA claims against Marquardt, those claims should be dismissed.

**II.     The doctrine of "fair use" protects Marquardt from claims of copyright infringement.**

Generally, a copyright infringement action requires that the plaintiff show "ownership" of the material and "copying" by the defendant.  *Lakedreams v. Taylor,* 932 F.2d 1103, 1107-08 (5th

Cir. 1991).    The issue of "ownership" is contested in this case, but is not the grounds for this motion for summary judgment.[3]

In this case, there is no dispute that the Canning Article was posted on the Athletics Department website without permission.  However, Bynum's copyright infringement claim against Marquardt individually must fail.  First, the claim is based on fabricated factual allegations.  Bynum falsely alleged that Marquardt copied the article from Bynum's 2010 draft book, stripped it of copyright management information and posted it on the Athletic Department website, and then was responsible for the tweet that linked to the article on the Department website. Plaintiffs' First Amended Complaint, Doc. 15, p.18.

None of those allegations are true.  Ex. A, Ex. C, Ex. D, Ex. E.   Instead, the summary judgment evidence shows that Marquardt's own actions were protected by the doctrine of fair use.

When Marquardt asked the department secretary to copy the Canning Article for his research file, his goal was to use only the factual information contained in the Article as a resource to educate the media about A&M's 12th Man tradition. Ex. A, ¶ 5 - 6. Marquardt then shared his copy with co-worker Matt Callaway, who was looking for information about the 12th Man.  Ex. A, ¶7.  Making a copy for this limited purpose was purely noncommercial and Marquardt's individual

---

[3] To establish "ownership," Bynum must show he complied with statutory formalities.  He will be unable to do so if this case goes to trial. Marquardt has pleaded that Bynum did not acquire the copyright from author Whit Canning until February 2014, *after* Bynum discovered that it had been posted on the A&M website.  Doc. 251, p. 28 - 32.  Canning died in 2022, and the only admissible evidence from him is his deposition testimony, which does not support Bynum's claim that he owned the copyright before February 2014.  Marquardt also alleges that Bynum intentionally misled the U.S. Copyright Office when he applied for a copyright registration in January 2017.  Doc. 251, p. 36 -38.

actions had no effect on the market value of that 1998 article.  Under these uncontested facts, Marquardt's individual act of copying should be protected under the doctrine of fair use.

**A.      Fair use is a flexible protection determined on a case-by-case basis.**

"[C]ourts have long recognized a 'limited privilege in those other than the owner of a copyright to use the copyrighted material in a reasonable manner without the owner's consent.'" *Bell v. Eagle Mountain Saginaw Indep. Sch. Dist.,* 27 F.4th 313, 321 (5th Cir. 2022).  The fair-use doctrine was initially developed by courts as an equitable defense to copyright infringement. *Fisher v. Dees,* 794 F.2d 432, 435 (9th Cir. 1986).  Congress codified this judge-made doctrine in section 107 of the Copyright Act of 1976, but "that enactment did not freeze the fair-use doctrine in stone.  Rather, Congress expressly sought to preserve the doctrine's common law character, leaving courts 'free to adapt the doctrine to particular situations on a case-by-case basis.'" *Id.* (citing 17 U.S.C. § 107 historical and revision notes (1982)).

Section 107 provides:

In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include—

(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;

(2) the nature of the copyrighted work;

(3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

(4) the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107.

As the Supreme Court recently stated, the Copyright Act's fair use provision,

'[S]et[s] forth general principles, the application of which requires judicial balancing, depending upon relevant circumstances.' *Google LLC v. Oracle America, Inc.,* 593 U.S. __, __, 141 S.Ct. 1183, 1197, 209 L.Ed.2d 311(2021).  Because those principles apply across a wide range of copyrightable material, from books to photographs to software, fair use is a 'flexible' concept, and 'its application may well vary depending on context.'

*Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith,* 143 S. Ct. 1258, 1274 (2023).

The fair use provision, and the first factor in particular, requires an analysis of the specific "use" of a copyrighted work that is alleged to be "an infringement." § 107.  The same copying may be fair when used for one purpose but not another.

*Id.* at 1277.

A fair use analysis is not to be simplified with bright-line rules.  Instead, the statute, like the doctrine it recognizes, calls for case-by-case analysis. *Harper & Row Publishers, Inc. v. Nation Enters.,* 471 U.S. 539, 560 (1985). "Courts typically give particular attention to factors one and four (the purpose and market effect of the use)."  *Bell,* 27 F.4th at 321.  "But ultimately, courts have 'almost complete discretion in determining whether any given factor is present in any particular case' and whether the totality favors fair use."  *Id.* (citing Melville B. Nimmer & David Nimmer, 4 NIMMER ON COPYRIGHT § 13.05 (A)(4) (Matthew Bender rev. ed. 2021)).

**B.**     **An analysis of the four statutory factors in this case show Marquardt's specific use of the Canning Article was protected by "fair use."**

The Fifth Circuit's analysis of fair use in *Bell v. Eagle Mountain Saginaw I.S.D.* may be a useful guide for this Court in deciding whether Marquardt's use of the Canning Article was protected under the fair use doctrine.  *See Bell,* 27 F.4th at 321 - 326.

In *Bell*, a high school was sued when its softball team used social media to post a passage from a book that provided strategies for success in athletics.  *Id.* at 318 -19.  In addressing the first

fair use factor, the court found in favor of the defendant where the user acted in good faith and did not stand to profit from the copying. The same is true in this case.

The second statutory factor is the nature of the copyrighted work. Fair use is more likely to be found in factual works than fictional works. "To determine the nature of the work, we consider whether the work has been appropriated for its 'expressive elements,' rather than to disseminate 'the underlying facts.'" *Id.* at 323. In *Bell*, the court found this factor weighed in favor of the plaintiff because the passage was not purely factual because it articulated facts in a "motivational and expressive way." *Id.* at 323. However, the court said this was a meager victory "because the nature of the work is widely considered to be the least significant fair-use factor." *Id.*

In the present case, this second factor is intertwined with the first, the purpose of the use. Marquardt had a copy made of the Canning Article so he could have easy access to the facts contained in that Article. Marquardt's use of the work was not to "appropriate it for its expressive elements," but instead his purpose was to ultimately use its content to "disseminate the underlying facts" about the 12th Man's origins. Marquardt's colleagues and boss, however, independently decided to post the entire Article, which included creative elements. Marquardt's use, therefore, was a different use than the use of others at A&M. *See Warhol*, 143 S.Ct. at 1277 ("The same copying may be fair when used for one purpose but not another.").

The third fair use factor examines "the amount and substantiality of the portion used in relation to the copyrighted work as a whole." *Id.* at 323-24. Here, that factor would weigh in plaintiff's favor because the Canning Article was copied in its entirety.

The fourth factor examines "the effect of the use on the market for and value of the copyrighted work." *Id.* at 324. That factor clearly weighs in favor of Marquardt's use of the

Canning Article.  Having a copy made for his research file, and then sharing that copy with two colleagues, had absolutely no adverse effect on the value of the Canning Article.[4]

In short, the first and fourth statutory factors, considered to be the most important factors, are clearly in Marquardt's favor.  Marquardt's particular use of the copyrighted work was noncommercial and for the purpose of research and education, and had absolutely no effect on the market value of the work.  Marquardt's own conduct should be protected under the fair use doctrine.

### III.    Marquardt is not liable for contributory copyright infringement.

Bynum alleges that Marquardt's conduct (along with others) constitutes contributory copyright infringement.  Doc. 15, p. 27.    Liability for contributory infringement requires "intentionally inducing or encouraging direct infringement."  *MGM Studios Inc. v. Grokster, Ltd,* 545 U.S. 913, 930 (2005).  The general rule is "one who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another, may be held liable as a 'contributory' infringer." *Perfect 10, Inc. v. Amazon.com, Inc,* 508 F.3d 1146, 1170-71 (9th Cir. 2007) (citing *Gershwin Publ'g Corp. v. Columbia Artists Management, Inc.,* 443 F.2d 1159, 1162 (2d Cir. 1971)).

---

[4] Even if the court were to consider the effect of the actions of other A&M employees, there is no evidence that such use had a negative effect on the market or value of the Canning Article.  An electronic copy of the Canning Article, nine pages of plain text, was available online for a period of three days.  Bynum can offer no evidence that this online activity had any effect on his ability to market the glossy 143-page coffee table book he was planning to publish.  *See, e.g., id.* ("We do not see a plausible economic rationale to support Bell's assertion that widespread tweeting of the WIN passage would undermine the value of his copyright.")

Marquardt did not cause or encourage Callaway, or anyone else, to publish the entire Article or to violate anyone's copyright. When others, including his boss Jason Cook, decided to post the Canning Article on the Athletics Department website, Marquardt was not involved with that decision, nor was he consulted as to whether permission was needed. Ex. A, Ex. C, Ex. D, Ex. E.

Marquardt's individual actions were not substantially certain to result in direct infringement. Marquardt reasonably expected that his colleagues and his boss would use the Canning Article in a way that would not violate copyright law. Ex. A, ¶ 10, Ex. B, ¶ 5-7. The uncontested facts show that Marquardt did not intentionally encourage the infringing conduct of his colleagues.

## IV. Qualified immunity.

The doctrine of qualified immunity shields officials from civil liability so long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mullenix v. Luna,* 577 U.S. 7, 11(2015) (quoting *Pearson v. Callahan,* 555 U.S. 223, 231 (2009). A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Id.* (quoting *Reichle v. Howards,* 566 U.S. 658 (2012). "The dispositive question is 'whether the violative nature of *particular* conduct is clearly established.'" 577 U.S. at 12 (quoting *Ashcroft v. al-Kidd,* 563 U.S. 731, 741 (2011) (emphasis in original).

Although qualified immunity is typically applied in the context of suits under 42 U.S.C. § 1983, courts also apply the protection to suits alleging copyright violations by state officials. *See Issaenko v. Univ. of Minn.,* 57 F. Supp. 3d 985, 1013 (D. Minn. 2014) (citing cases finding the

qualified immunity applied to copyright infringement cases); *Reiner v. Canale,* 301 F. Supp.3d 727, 740 (E.D. Mich. 2018) (same).

To defeat qualified immunity, a plaintiff must show the "'contours of [a] right [are] sufficiently clear' that every 'reasonable official would [have understood] that what he is doing violates that right.'" *Ashcroft.* 563 U.S. at 741 (2011) (quoting *Anderson v. Creighton,* 483 U.S. 635, 640 (1987)). "Existing precedent must have placed the statutory or constitutional question beyond debate." *Id.*

Whoever owned the copyright to the Canning Article did have certain statutory rights under copyright law. But those rights were subject to "fair use," a limited privilege that allows others to use the copyrighted material in a reasonable manner without the owner's consent. *Bell* at 321.

The question here is whether the contours of the law of "fair use" are sufficiently clear that every reasonable official would have understood that making one copy of an old feature article and then sharing that copy with two colleagues was not protected by fair use.

As briefed above, the court should find that Marquardt's own actions were protected by the fair use doctrine. But even if the Court disagrees with that analysis, the question certainly is not "beyond debate." *See Reiner,* 301 F. Supp.3d at 740 (district court examined this question and found that a university professor was protected by qualified immunity because the fair use doctrine is unsettled); *Ass'n for Info. Media & Equip. v. Regents of the Univ. of California,* 2012 WL 7683452, at *6 (C.D. Cal. 2012) (ambiguity on issue of fair use meant defendants were protected by qualified immunity).

In this case, Marquardt was just doing his job. He collected information of interest about A&M's athletics programs, including its traditions. It was a common practice in that department

to copy material like the Canning Article and share it with colleagues in that office.  Ex. B, ¶ 5-6.  As Marquardt's immediate supervisor Alan Cannon has testified, a person in Marquardt's position could have reasonably assumed that whatever use was made of the Canning Article by his boss and colleague, such use would not violate any statute. *Id.*

Qualified immunity also protects Marquardt from the other claims in this case.  No law says Marquardt's individual acts could have been a clear violation of the DMCA.  Additionally, Plaintiff cannot point to clearly established law that would show Marquardt's actions were grounds for a claim of contributory copyright infringement.

## CONCLUSION

An employee of A&M's Athletics Department made a copy of an old feature article for his research file.  He then shared his copy with two colleagues without realizing it was missing information from the article's cover sheet.  These facts do not come close to establishing liability for violating the DMCA or copyright law.  Even if there were some questions about this outcome, the question clearly is not "beyond debate," which means Marquardt is protected by qualified immunity.  Marquardt respectfully requests that this Court enter summary judgment in this case and dismiss Plaintiffs' claims, and award of attorneys' fees pursuant to 17 U.S.C. § 1203(b)(5).

Dated:  September 19, 2023.

Respectfully submitted,

By: */s/ Julie A. Ford*
Julie A. Ford
SBN:07240500
Jford@gbkh.com

GEORGE BROTHERS KINCAID & HORTON, LLP
114 W. 7th Street, Suite 1100
Austin, Texas 78701
Tel: 512-495-1448
Fax: 512-499-0094
***Attorneys for Defendant Brad Marquardt***

## CERTIFICATE OF SERVICE

I certify that on September 19, 2023, the foregoing document was electronically submitted with the Clerk of Court for the United District Court, Southern District of Texas, using the electronic case filing system of the Court, and served on the attorneys of record via same.

Charles W. Prueter (*pro hac vice*)
Fortif Law Partners, LLC
2021 Morris Avenue, Suite 300
Birmingham, Alabama 35203
charles@fortif.com

Warren V. Norred
Norred Law, PLLC
515 E. Border Street
Arlington, Texas 76010
wnorred@norredlaw.com

*Attorneys for Plaintiffs Michael J. Bynum and Canada Hockey, LLC d/b/a Epic Sports*

*/s/ Julie A. Ford*
*Julie A. Ford*