# EXHIBIT C

## Declaration of Shane Hinckley

Shane Hinckley makes the following declaration pursuant to 28 U.S.C. § 1746:

1.   My name is Shane Hinckley and I am fully competent to make this declaration. Unless otherwise indicated, the facts are within my personal knowledge.

2.   I am Vice President of Brand Development at Texas A&M University. In 2014, my title was interim VP of Marketing and Communications.

3.   In January 2014, the Seattle Seahawks, who were headed to the Superbowl, were using the term "12th Man" pursuant to a license agreement with Texas A&M University. During the buildup to the Superbowl, A&M wanted to remind the public that the 12th Man tradition started at A&M and that A&M owned the trademark to that term. Jason Cook, then Senior Associate Athletics Director, and I were responsible for the creation and implementation of a marketing plan to achieve that goal.

4.   Part of the plan was a social media campaign launched during the NFC Championship from both the University's Communications Division and from the Athletics Department. I asked Krista Smith, the communications coordinator in my division, to create a plan for communications on Facebook, Instagram and Twitter that would come from the University's Communication Division. Jason Cook was to head up the social media communications that would come from the Athletics Department. Mr. Cook brought in two members of the Athletics Department to handle those communications, an information representative from the Athletic Department's media relation office named Matt Callaway, and the Athletics Department's website manager, Matt Simon.

5.   The social media campaign was to take place on January 19, 2014, the Sunday afternoon that the Seahawks were playing for the NFC Championship. Krista Smith sent the social media plan that she and Mr. Callaway had created to Jason Cook and myself on Friday afternoon, January 17th. Their plan included roughly 10 tweets, alternating from Twitter accounts held by the University and by the Athletics Department, to be sent out over the course of the game. One of the tweets from the Athletics Department was to include a link to a story about E. King Gill posted on the Athletics Department website. Jason Cook and I both approved this plan. I was not aware of any discussion about the need to obtain permission to post that story. To my knowledge, Brad Marquardt was not involved in the social media campaign or the decision to post the story on the Athletics Department website.

6.   On Tuesday, January 21, 2014, Krista Smith sent her supervisors a list of proposed feature stories to be published in the *TAMU Times*. *TAMU Times* was a newsletter of stories about research and academic innovations involving current and former A&M students. The newsletter also featured stories about A&M traditions and campus life. *TAMU Times* was published by the Division of Marketing and Communications. Ms. Smith's list included the story about the 12th Man that had been posted on the Athletic Department website.

7.    I asked that the 12th Man story that had been posted on the Athletics Department website be the lead story for that day's issue of *TAMU Times*. Krista Smith drafted a headline and introduction to the story for the *TAMU Times* that said:

> The Original 12th Man
> E. King Gill never led Texas A&M to a national championship, but because of one simple act in Dallas in 1922, he became the most revered Aggie of them all: the 12th Man.

8.    The decision as to which stories to run in *TAMU Times* was made by the Division of Marketing and Communications, not by the Athletics Department.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed August ____31____, 2023.

*Shane Hinckley*
_____
Shane Hinckley