## IN THE UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| MICHAEL J. BYNUM AND CANADA | § | |
| HOCKEY LLC d/b/a EPIC SPORTS, | § | |
| | § | |
| PLAINTIFFS, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:17-CV-00181 |
| | § | |
| BRAD MARQUARDT, in his individual | § | |
| capacity, | § | |
| | § | |
| DEFENDANT. | § | |
| | § | |

### DEFENDANT BRAD MARQUARDT'S
### REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT [Doc. 282]

Defendant submits the following Reply in Support of his Motion for Summary Judgment

[Doc. 282], and in support would show as follows:

I.     **STATEMENT OF THE ISSUES TO BE RULED ON BY THE COURT**

1.     Marquardt moves for summary judgment on the following issues:

   a.   **No copyright infringement based on Marquardt's individual actions**.
        Marquardt's individual actions in making a copy of the article for his own research
        use and then sharing his copy with two colleagues are protected under the doctrine
        of fair use. *See* 17 U.S.C. § 107.

   b.   **No contributory copyright infringement**. The undisputed evidence shows that
        Marquardt did not intentionally induce or encourage direct infringement. *See, e.g.,*
        *MGM Studios, Inc. v. Grokster,* 545 U.S. 913, 930 (2005).

   c.   **No violation of the DMCA**. The uncontested evidence shows that Marquardt did
        not violate the Digital Millenium Copyright Act (DMCA), 17 U.S.C. § 1202.
        Marquardt did not remove copyright management information (CMI) from the
        article; he did not distribute the article knowing that CMI had been removed; and
        he did not alter any CMI with the required scienter.

   d.   **Qualified immunity requires dismissal**. A reasonable government official in
        Marquardt's shoes would not have understood that (i) making a copy of an old
        article to use as a resource, and then sharing his copy with two colleagues without

any knowledge of or control over those colleagues' eventual use of it, was a violation of anyone's clearly established statutory rights. If there is any question as to whether Marquardt's own conduct violated copyright law, that question is not "beyond debate" and Marquardt is therefore entitled to qualified immunity. *Morrow v. Meachem,* 917 F.3d 870, 874 (5th Cir. 2019).

## II.    SUMMARY OF THE ARGUMENT

2.     Plaintiffs have twisted the facts in order to avoid summary judgment.

3.     Marquardt's Declaration is not a "sham affidavit."

4.     Plaintiffs have inaccurately suggested that a governmental employee such as Defendant Marquardt should never be entitled to qualified immunity in a copyright infringement case. That is simply not the law in the Fifth Circuit or anywhere else.

5.     Plaintiffs take a self-serving and simplistic view of the second prong of qualified immunity—essentially suggesting that if Defendant Marquardt was generally aware of copyright laws, he is not entitled to qualified immunity. In fact, in order to defeat qualified immunity, the Supreme Court requires factually anomalous precedent that places the legal question "beyond debate." Plaintiffs have not shown that the lawfulness of Marquardt's conduct is beyond debate.

## III.    ARGUMENT AND AUTHORITY

### A.    Plaintiffs Mischaracterize and/or Omit Critical Facts in Their Response

6.     Plaintiffs demonstrate the weakness of their position by beginning their Opposition to Defendant's Second Motion for Summary Judgment ("Plaintiffs' Opposition") [Doc. 283] with an out-of-context remark made in jest during Defendant Marquardt's deposition. At the beginning of his deposition, Marquardt was being asked about his background and qualifications, and Plaintiffs' counsel made reference to his online biography and a particular statement therein, *i.e.*, that Marquardt was "one of the most versatile members of the Texas A&M Athletics Department." Marquardt stated that he "stole" that line from one of his co-worker's bios because he liked it so

much. *See* Doc. 283-1, at 24-25. Everyone including Marquardt can agree that "stole" was a poor choice of words in a copyright infringement case, but clearly the statement in the context of his online bio has no relevance to the facts of this copyright dispute. Plaintiffs' "gotcha moment" is completely overblown and insults the reader's intelligence—especially by leading off their Opposition with it.

7.    Ten years after the events in question, Plaintiffs finally got around to taking depositions in the case.[1] Unsurprisingly, the witnesses uniformly had trouble remembering exactly what happened during the three days at issue in January 2014. In their Opposition, Plaintiffs select bits and pieces of memory-challenged testimony and try to weave them into a self-serving and misleading narrative to camouflage the fact that Defendant Marquardt had nothing to do with the publication of the 12th Man article, and Plaintiffs sued the wrong person.

8.    One of the most glaring examples is in the Introduction to Plaintiffs' Opposition in which they state that Matt Callaway testified that he spoke to Marquardt at some point about the 12th Man campaign, and Marquardt "likely" said something akin to "I've got this article." This is accurate so far, but then Plaintiffs veer away from the actual evidence and state:

> ***After that conversation***, Marquardt had his assistant re-type a paper copy of Plaintiffs' article and ***remove the Copyright Management information*** ('CMI'). He then forwarded the article to Callaway and ***assisted with the posting of the article to TAMU's website.***[2]

9.    There are three material misstatements in Plaintiffs' quoted statement above. First, the re-typing of the article requested by Marquardt was not done after or in response to his conversation with Callaway; it was done independently so that Marquardt could have a word-

---

[1] Plaintiffs did not file this case until 2017, shortly before limitations ran, and then have completely failed to prosecute the case with diligence, engaging at least eight different law firms in the process.
[2] Doc. 283, at p. 1. (emphasis added).

searchable version for future reference. *See* Marquardt Depo., at 95:11-14[3]; Doc. 282-1 (Marquardt Dec.), at p. 3, ¶ 8; Doc. 282-1, at pp. 28-30 (Marquardt's story has been consistent on this point since his first email to Plaintiff Bynum on January 22, 2014, shortly after the events in question). Second, both Marquardt and his assistant testified they could not remember anything about the conversation, but Marquardt's unrebutted testimony was that he would not have instructed his secretary to remove the CMI, as claimed by Plaintiffs. *See* Marquardt Depo., at 94:1-6; Doc. 282-1 (Marquardt Dec.), at pp. 3-4, ¶ 13. Finally, except for a poorly worded interrogatory answer, the overwhelming summary judgment evidence is that Marquardt played no role in the 12th Man campaign, the decision to post the article on TAMU's website, or in any other publication. That was done by others without his involvement. *See* Marquardt Depo., at 32:3-6 ("Q: So you had colleagues within your department working on the 12th Man campaign, but you're saying that you did not work on it? A: Correct."); Doc. 282-4 (Berend Dec.), ¶ 5; Doc. 282-5 (Simon Dec.), ¶ 6.

**B.     Marquardt's Declaration Is Not a "Sham Affidavit"**

10.     Both Plaintiffs and the Court are very familiar with the "sham affidavit" doctrine. Plaintiffs previously submitted a highly suspicious declaration from Whit Canning, now deceased, in which his averments were coherent, consistent, and 100% supportive of Plaintiffs' position despite the fact that he demonstrated severe memory problems and virtual incoherence in his deposition a few months prior. *See Bynum v. Marquardt*, No. 4:17-CV-181, 2020 U.S. Dist. LEXIS 162521, at *2-4 (S.D. Tex. Sept. 4, 2020). In a petty attempt at "tit-for-tat," Plaintiffs now claim that Marquardt's Declaration in support of his Motion for Summary Judgment is a sham affidavit which should be completely disregarded.[4] This contention should be rejected. Plaintiffs only point

---

[3] The complete deposition of Marquardt is attached as Ex. A. Plaintiffs deceptively only attached portions of the various depositions and omitted testimony that did not fit their one-sided narrative.

[4] Doc. 283, at p. 7.

to one partial inconsistency (at best) between Marquardt's Declaration and his deposition testimony.[5] Clearly, this falls well short of the standard for rejection of a sham affidavit.[6]

## C.     Qualified Immunity Applies to Plaintiffs' Claims

11.     Although Plaintiffs acknowledge binding Fifth Circuit authority[7] applying the doctrine of qualified immunity to copyright law, they ask this Court to ignore it. Indeed, courts across the nation—including this one—have applied qualified immunity to copyright claims against governmental officials.[8] Notably, Plaintiffs do not identify a single case in which a court declined to apply qualified immunity.[9] Therefore, the Court should soundly reject Plaintiffs' invitation to cast aside the doctrine of qualified immunity here.

## D.     Plaintiffs Cannot Overcome Step 2 of Qualified Immunity

12.     Plaintiffs spend much of their Opposition arguing that there is a fact issue precluding summary judgment, which relates to the first step of qualified immunity analysis. However, the "Supreme Court has held that [courts] have discretion to address either prong of the

---

[5] *Id.*

[6] *Seigler v. Wal-Mart Stores Tex.*, 30 F.4th 472, 477 (5th Cir. 2022) ("the bar for applying the [sham affidavit] doctrine is a high one" that requires affidavit testimony to be "inherently inconsistent" with prior testimony).; *see also S.W.S. Erectors v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996) (the sham affidavit doctrine is typically only applied to a non-movant attempting to create a fact issue)..

[7] *See Chavez v. Arte Publico Press,* 59 F.3d 539, 547 (5th Cir. 1995) (university employee who allegedly authorized printing of a book in violation of copyright was entitled to qualified immunity), *vacated sub nom. Univ. of Houston v. Chavez*, 517 U.S. 1184 (1996), *overturned on other grounds after remand*, 204 F.3d 601 (5th Cir. 2000); *see also Tresona Multimedia, LLC v. Burbank High Sch. Vocal Music Ass'n*, No. CV 16-4781-SVW-FFM, 2016 U.S. Dist. LEXIS 186059, at *14 (C.D. Cal. 2016) (noting that *Chavez*'s "application of qualified immunity to copyright infringement remains undisturbed").

[8] *See, e.g., Campinha-Bacote v. Bleidt,* No. H-10-3481, 2011 U.S. Dist. LEXIS 113430, at *7-9 (S.D. Tex. 2011); *Ass'n. for Info. Media & Equip. v. Regents of the Univ. of California*, 2012 U.S. Dist. LEXIS 187811, at *14 (C.D. Cal. 2012); *Issaenko v. Univ. of Minn.,* 57 F. Supp. 3d 985, 1013 (D. Minn. 2014) (citing decisions that applied qualified immunity to copyright infringement disputes); *Reiner v. Canale,* 301 F. Supp. 3d 727, 740 (E.D. Mich. 2018) (same); *Lane v. First National Bank of Boston*, 687 F. Supp. 11 (D. Mass. 1988); *Tresona Multimedia, LLC v. Burbank High Sch. Vocal Music Ass'n*, No. CV 16-4781-SVW-FFM, 2016 U.S. Dist. LEXIS 186059, at *15 (C.D. Cal. 2016).

[9] In fact, the Supreme Court in *Anderson* firmly rejected engaging in an activity-based analysis to determine whether qualified immunity should apply. *See Anderson v. Creighton*, 483 U.S. 635, 644-45 (1987) ("[W]e have been unwilling to complicate qualified immunity analysis by making the scope or extent of immunity turn on the precise nature of various officials' duties or the precise character of the particular rights alleged to have been violated"); *see also id.* at 642 (finding that the purposes underling qualified immunity, namely "to provide government officials with the ability [to] reasonably [] anticipate when their conduct may give rise to liability for damages," would be defeated if the Court began "carving exceptions.").

qualified immunity analysis first."[10] Therefore, the Court need not address step 1 to resolve Defendant Marquardt's Motion for Summary Judgment.

13.    For three reasons, Plaintiffs' Opposition confirms that they cannot overcome step 2 of qualified immunity. First, Plaintiffs fail to frame the right at issue with the required degree of specificity and, in the process, deceptively mischaracterize Supreme Court precedent. Second, Plaintiffs' argument—that *Harper & Row* constitutes clearly established law that puts the inapplicability of fair use "beyond debate"—ignores critical differences with the facts of this case. And finally, despite the fact that Marquardt asserted qualified immunity on all three claims against him, Plaintiffs do not even attempt to identify clearly established law on the DMCA and contributory infringement claims.

### *i.    Plaintiffs fail to frame the right at issue with the required degree of specificity*

14.    Plaintiff's Opposition suggests that the broad proposition of "copyright protection" is the standard that should guide the Court's analysis.[11] This approach has been forcefully rejected by the Supreme Court and Fifth Circuit. Courts must "frame the [legal] question with specificity and granularity,"[12] rather than "at a high level of generality[.]"[13] In other words, controlling precedent must have placed the question "beyond debate," with "the right's contours . . . sufficiently definite that any reasonable official in the [employee's] shoes would have understood that he was violating it."[14] In the copyright context, this means that the Court "must determine not whether copyright law is clearly established in a broad sense [as Plaintiffs suggest], but whether a

---

[10] *Linicomn v. Hill*, 902 F.3d 529, 535 (5th Cir. 2019) (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).
[11] Doc. 283, at p. 19.
[12] *Morrow v. Meachum*, 917 F.3d 870, 874-75 (5th Cir. 2019).
[13] *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011); *see also Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam) (internal quotation marks and citations omitted) (emphasis added) (government employee can be stripped of qualified immunity ***only when*** "the violative nature of the ***particular conduct*** is clearly established . . . in light of the specific context of the case, not as a broad general proposition.").
[14] *Plumhoff v. Rickard*, 572 U.S. 765, 778-79 (2014) (quoting *al-Kidd*, 563 U.S. at 741).

*specific right* is clearly established under copyright law."[15] Therefore, the Court should reject Plaintiffs' use of broad and general propositions that misapply the doctrine of qualified immunity.

15.    Additionally, relying on *Kisela v. Hughes,* Plaintiffs argue that: "The qualified immunity doctrine 'does not require a case directly on point for a right to be clearly established.'"[16] But Plaintiffs deceptively omit the remainder of that sentence in *Kisela,* which states:

> Although "this Court's caselaw does not require a case directly on point for a right to be clearly established, *existing precedent must have placed the statutory or constitutional question beyond debate*."[17]

16.    This means existing precedent must "squarely govern the *specific facts* at issue, such that only someone who is plainly incompetent or who knowingly violates the law would have behaved as the official did."[18] Thus, while Plaintiffs are correct that they are not required to identify a factually *identical* case, they must nonetheless show the inapplicability of fair use is beyond debate. They must also show that Marquardt's liability under DMCA and contributory infringement is beyond debate. As explained below, Plaintiffs have failed to do so.

### ii.    *Applied here,* Harper & Row *does not place the applicability of fair use "beyond debate"*

17.    When addressing the second prong of qualified immunity, Plaintiffs refer the Court to just a single precedential case: *Harper & Row, Publrs. v. Nation Enters.,* 471 U.S. 539 (1985).[19] But, *Harper & Row* does not clearly establish that Marquardt's conduct was unlawful.

---

[15] *Ass'n. for Info. Media & Equip. v. Regents of the Univ. of California*, 2012 U.S. Dist. LEXIS 187811, at *13 (C.D. Cal. 2012)

[16] Doc. 283, at p. 18 (quoting *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (quoting *White v. Pauly*, 580 U.S. 73, 73 (2017)).

[17] *Kisela*, 584 U.S. at 104 (quoting *White*, 580 U.S. at 73) (emphasis added). It is ironic that Plaintiffs rely on *Kisela* here. The core holding in *Kisela* castigated the Ninth Circuit for framing the right at issue too broadly, contrary to decades of Supreme Court precedence.

[18] *Joseph ex rel. Est. of Joseph v. Bartlett*, 981 F.3d 319, 332 (5th Cir. 2020) (cleaned up) (emphasis added).

[19] Doc. 283, at p. 19. The two other cases cited by Plaintiffs do not constitute precedent for purposes of qualified immunity, but in any event, do not place the question beyond debate.

18.     As an initial matter, *Harper & Row* recognized that there **could be** cases in which fair use applies to an unpublished work. *See id.* at 554 (concluding that the unpublished nature of a work is "not necessarily [a] determinative factor tending to negate a defense of fair use."); *see also id.* at 552 ("the right of first publication, like the other rights enumerated in § 106 [of the Copyright Act], **is expressly made subject to the fair use provision of § 107**.") (emphasis added). That alone shows that *Harper & Row* did not put Marquardt on notice that his conduct violated clearly established law.

19.     Critically, the facts of *Harper & Row* are dissimilar to the facts of this case. There, Time Magazine purchased the exclusive right to print prepublication excerpts of Gerald Ford's memoir.[20] The agreement between Time Magazine and the copyright holder had numerous layers of confidentiality; it required any person receiving the manuscript to execute a nondisclosure agreement.[21] The defendant surreptitiously received the manuscript and intentionally scooped the article by publishing excerpts shortly before Time Magazine.[22] Because the defendant had scooped the article, Time Magazine cancelled its agreement with the copyright holder, making damages self-evident (unlike here).[23]

20.     Before embarking on a fair use analysis, the high Court noted that because "the doctrine is an equitable rule of reason, no generally applicable definition is possible, and each case raising the question must be decided on its own facts."[24] This further confirms that, in the context of qualified immunity, defining the contours of fair use necessarily involves a fact-specific inquiry

---

[20] *See* 471 U.S. at 541-542.
[21] *See id.* at 564 ("In the case of Mr. Ford's manuscript, the copyright holders' interest in confidentiality is irrefutable; the copyright holders had entered into a contractual undertaking to 'keep the manuscript confidential' and required that all those to whom the manuscript was shown also 'sign an agreement to keep the manuscript confidential.'").
[22] *See id.* at 542.
[23] *See id.*
[24] *Id.* at 560.

confined to the circumstances of each case.[25] This makes it difficult, if not impossible, to establish

that the inapplicability of fair use by a governmental employee is "beyond debate."

21.     Several facts were critical to the Supreme Court's eventual finding that fair use did

not apply:

> a.   The defendant's "stated purpose" was to "scoop[] the forthcoming hardcover and
>      Time abstracts."[26]
>
> b.   The defendant's "use had not merely the incidental effect but the *intended purpose*
>      of supplanting the copyright holder's commercially valuable right of first
>      publication."[27]
>
> c.   As to the market effect factor, it was undisputed that Time Magazine cancelled its
>      agreement with the copyright holder precisely because the defendant had scooped
>      the prepublication excerpts.[28] The Court noted: "Rarely will a case of copyright
>      infringement present such clear-cut evidence of actual damage."[29]
>
> d.   The defendant used the copyrighted excerpts for the same purpose as Time
>      Magazine, *i.e.* to publish a feature print story about the Nixon pardon.[30]

22.     The Supreme Court summarized by saying that "[f]air use 'distinguishes between

'a true scholar and a chiseler who infringes a work for personal profit."[31]

23.     Here, Marquardt's purpose was not to distribute the Canning Article to the public.

He found a 17-year-old article in his office and was just doing his job by providing his copy of it

to colleagues seeking information on the 12th Man. *See* Doc. 282-2 (Cannon Dec.), ¶ 5

(Marquardt's direct supervisor testifying that he would have expected Marquardt to share his copy

---

[25] For this exact reason, the inherent ambiguity of fair use law has resulted in dismissal of copyright claims under qualified immunity. *See, e.g., Reiner v. Canale,* 301 F.Supp.3d 727 (E.D. Mich. 2018) (university professor protected by qualified immunity because fair use doctrine is unsettled); *Ass'n for Info. Media & Equip. v. Regents of the Univ. of Calif.,* 2012 U.S. Dist. LEXIS 187811, at *14 (C.D. Cal. 2012) (ambiguity on issue of fair use meant defendants protected by qualified immunity).
[26] *Harper & Row,* 471 U.S. at 562.
[27] *Id.* (emphasis in original).
[28] *See id.* at 567.
[29] *Id.*
[30] *See id.* at 568.
[31] *Id.* at 562.

with a colleague seeking information about the 12th Man). Marquardt is hardly a "chiseler who infringed a work for personal profit."[32]

24.    Additionally, there is no evidence to establish that—at the time Marquardt forwarded the Canning Article to Callaway—he was aware it had never been published. That is a far cry from *Harper & Row,* where the defendant's **stated purpose** was to scoop Time Magazine's article and its **intended effect** was to supplant the right of first publication.[33] And finally, unlike in *Harper & Row,* Plaintiffs here have offered no evidence of actual damages resulting from Marquardt's conduct. This is not a "rare[]"case of copyright infringement "with clear-cut evidence of actual damage."[34]

25.    At most, Plaintiffs argue that *Harper & Row* **suggests** a clearly established rule precluding the application of fair use in this case. But, as the Supreme Court has made clear, that "is not enough." *See District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) ("It is not enough that the rule is **suggested** by then-existing precedent.") (emphasis added). "The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Id.* As a matter of law, *Harper & Row* is not clear enough that Marquardt would interpret it to establish the inapplicability of fair use under these facts.

26.    Plaintiffs accuse Marquardt of failing to identify a case in which fair use was applied to an unpublished work.[35] This argument fails for two reasons. First, it flips qualified immunity analysis on its head. It is Plaintiffs—not Marquardt—who have the burden to show that the applicability of fair use here is "beyond debate."[36] Second, and more importantly, the absence

---

[32] *Harper & Row,* 471 U.S. at 562.
[33] *See id.* at 562.
[34] *Id.*
[35] Doc. 283, at p. 29.
[36]    *Valderas v. City of Lubbock*, 937 F.3d 384, 389, 774 F. App'x 173, 177 (5th Cir. 2019) (citing *Trent v. Wade*, 776 F.3d 368, 376 (5th Cir. 2015)) ("A good-faith qualified immunity defense alters the usual summary judgment burden of proof. Although we view the evidence in the light most favorable to the nonmoving party, the plaintiff bears the

of such caselaw **actually confirms** that the law is not clearly established. In fact, the Supreme Court and Congress have consistently rejected presumptions and per se rules in the context of fair use. *See* 138 Cong. Rec. E2610-02, 1992 WL 221274 (1992) (statement of Rep. Moorhead) ("The purpose of [the 1992 amendment to 17 U.S.C. § 107] is to clarify the intent of Congress that **there be no per se rule barring claims of fair use of unpublished works**.") (emphasis added); *Campbell v. Acuff-Rose Music, Inc*., 510 U.S. 569, 594 (1994) ("It was error for the Court of Appeals to conclude that the commercial nature of [the defendant's use] rendered it presumptively unfair.").[37] Plaintiffs' attempt to create per se rules for the application of fair use goes against Congress's intent and controlling Supreme Court precedent.  Therefore, Plaintiffs cannot satisfy their burden under the second prong of qualified immunity.

### iii. *Plaintiffs do not even attempt to show clearly established law for their DMCA and contributory infringement claims*

27.  Marquardt asserted qualified immunity as to all claims against him. Conspicuously, however, Plaintiffs' Opposition does not even attempt to identify clearly established law on two of the claims (DMCA and contributory negligence). Therefore, Plaintiffs have utterly failed to carry their burden to satisfy step 2 of qualified immunity on the DMCA and contributory infringement claims. Summary judgment should therefore be granted.

## IV.   <u>CONCLUSION AND PRAYER</u>

For these reasons and those in Defendant's Motion for Summary Judgment [Doc. 282], Defendant respectfully requests that the Court grant his motion for summary judgment, dismiss

---

burden of demonstrating that a defendant is not entitled to qualified immunity."); *Joseph v. Bartlett*, 981 F.3d 319, 330 (5th Cir. 2020) (step 2 of qualified immunity "requires the plaintiff to 'identify a case'—usually, a 'body of relevant case law'—in which 'an officer acting under similar circumstances  . . . was held to have violated the [law].'").

[37] *See also* 138 Cong. Rec. S17358-01, 1992 WL 275324 (1992) (statement of Sens. Simon, Leahy, Kennedy, Grassley, Metzenbaum, and Kohl) (discussing the 1992 amendment to 17 U.S.C. § 107 and clarifying that it is designed to reject a "per se approach" to fair use, at least with respect to evaluating unpublished works).

Plaintiffs' claims, and enter an order awarding Defendant attorneys' fees pursuant to 17 U.S.C. § 1203(b)(5), with the amount to be determined at a later date.

Respectfully submitted,

/s/ *Ray Chester*
Ray Chester (attorney-in-charge)
State Bar No. 04189065
S.D. Tex. Bar No. 36495
Ian Davis
State Bar No. 24120793
S.D. Tex. Bar No. 3644072
MCGINNIS LOCHRIDGE LLP
1111 W. 6th Street
Bldg. B, Suite 400
Austin, TX 78703
512-495-6000
512-495-6093 (Fax)
rchester@mcginnislaw.com
idavis@mcginnislaw.com

**Attorneys for Defendant**
**Brad Marquardt, in his individual capacity**

## CERTIFICATE OF SERVICE

I hereby certify that on the 24th day of February, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system.

/s/ *Ray Chester*
Ray Chester