## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **MICHAEL J. BYNUM AND CANADA** | § | |
| **HOCKEY LLC d/b/a EPIC SPORTS** | § | |
| | § | |
| *Plaintiffs* | § | |
| | § | |
| **v.** | § | **C.A. NO. 4:17-cv-00181** |
| | § | |
| **BRAD MARQUARDT,** | § | |
| **in his individual capacity** | § | |
| | § | |
| *Defendant.* | § | |

## PLAINTIFFS' OPPOSITION TO DEFENDANT BRAD MARQUARDT'S MOTION FOR JUDGMENT ON THE PLEADINGS

Plaintiffs Michael Bynum and Canada Hockey LLC d/b/a Epic Sports (collectively "Canada Hockey") oppose Defendant Brad Marquardt's Motion for Judgment on the Pleadings stating as follows:

On April 2, 2025, Marquardt filed his fifth dispositive motion. Marquardt argues he is entitled to immunity from the copyright claims against him pursuant to the Texas Tort Claims Act. This is the same argument that Marquardt made in his May 17, 2017 Motion to Dismiss. *See* Dckt. Entry 34 at 7-11. On March 29, 2019, this Court issued an Order finding Marquardt was not entitled to relief pursuant to the Texas Torts Claim Act. Dckt. Entry 96 at 23-26.

In summary, Marquardt argues that the Texas Torts Claim Act applies to Canada Hockey's copyright infringement and Digital Millennium Copyright Act ("DMCA") claims. According to Marquardt, any tort claim, including claims under the Copyright Act, must be brought pursuant to the Texas Torts Claim Act and the Act does not waive immunity for copyright.

Such an argument fails for three reasons: (1) courts in this District have explicitly found the Texas Torts Claim Act does not apply to violations of federal law, like violations of the Copyright Act; (2) the Copyright Act broadly preempts state laws that touch on its subject matter; and (3) as the Supreme Court has held, the Supremacy Clause prohibits states from adopting laws to give their employees immunity from federal laws.

## SUMMARY OF THE ARGUMENT

*First*, the basis for Marquardt's Motion, the application of the Texas Torts Claim Act, has been rejected as inapplicable to federal claims brought in federal courts. *Pyle v. City of Harlingen*, No. 1:13-cv-147, 2014 U.S. Dist. LEXIS 37196, at *18 (S.D. Tex. March 20, 2014). *Second*, to the extent Texas intended the Texas Torts Claim Act to apply to copyright claims, such an application is preempted by the Copyright Act. *Ultraflo Corp. v. Pelican Tank Parts, Inc.*, 845 F.3d 652, 656 (5th Cir. 2017). *Third*, the Supreme Court has ruled that the Supremacy Clause prohibits states from passing laws that grant state employees immunity from federal law, *Haywood v. Drown*, 556 U.S. 729, 736-37 (2009), and the Fourth Circuit Court of Appeals has specifically found that argument applies to attempts by states to grant immunity from copyright claims. *Richard Anderson Photography v. Brown*, 852 F.2d 114 (4th Cir. 1988).

## STATEMENT OF THE ISSUES TO BE RULED ON BY THE COURT

Plaintiffs oppose Marquardt's Motion for Judgment on the Pleadings. The issues to be resolved are:

1. Does the Texas Torts Claim Act apply to federal claims brought in federal courts?

2. To the extent the Texas Torts Claim Act is intended to apply to copyright claims, is the Texas Torts Claim Act preempted by the Copyright Act?

3. Does the Supremacy Clause prohibit states from granting state officers and employees immunity from federal law?

## FACTUAL BACKGROUND

Michael Bynum is a widely published author and editor of sports history and memorabilia books. Dckt. Entry 15 at §§ 16, 17. Bynum's first book, *High Tide*, a profile of the 1977 Alabama football season, was published in 1978. As part of his research into Bear Bryant and through the research for his first publication regarding Texas A&M football, *Aggie Pride*, Bynum became interested in the 12th Man tradition. *Id.* at ¶ 21.

In 1997, Bynum hired Whit Canning, a sportswriter at the Fort Worth Star-Telegram, on a work-for-hire basis, to write a biography of E. King Gill for a planned book. *Id.* at ¶ 24. Canning delivered an article titled "An A&M Legend Comes to Life," (the "Canning Article"). *Id.*  The Canning Article was set to be the centerpiece of the book on the 12th Man tradition. *Id.* at ¶ 26. Bynum personally spent over 1,500 hours conducting research for and writing and editing the proposed 12th Man book. *Id.*

On June 18, 2010, Bynum e-mailed the Canning Article, as part of the draft book, to Defendant Brad Marquardt (and others). *Id.* at ¶ 28. It was a common practice for Bynum to have third parties read drafts of his books to ensure the facts presented were correct and to gather additional information and pictures for inclusion in the books. *Id.* at ¶¶ 25, 26, & 28.

The Canning Article included the following copyright management information ("CMI") on its cover:

> E. King Gill: The Life & Legend of Texas A&M's 12th Man
> By Whit Canning
> Copyright © 1998 Epic Sports
> All rights reserved

*Id.* at ¶¶ 29-30. Not only was this CMI included with the document, but Bynum's e-mail specifically stated this is a "draft version" of the book and that it was a "work in progress and is not in final form yet." *Id.* at ¶ 28. Further, page six of the document included a clear copyright

notice as well as a statement that, "no part of this work covered by the copyright hereon may be reproduced or used in any form or by any means graphic, electronic, or mechanical." *Id*. at ¶ 30.

In December 2013, Bynum corresponded with Marquardt regarding the book, apparently reminding Marquardt that he had a copy of the earlier draft. *Id*. at ¶ 46.

Despite clear markings that the work was protected by copyright, a month later, in January 2014, Marquardt gave a physical copy of the Canning Article to his assistant for her to type in Word format. Dckt. Entry 273-6. Marquardt's assistant emailed a Word version of the article to him without the CMI contained in the physical copy. *Id*. Marquardt then e-mailed the work to two colleagues without the previously included CMI. Dckt. Entry 265 at 6, ¶ 2; Dckt. Entry 273-7; Dckt. Entry 15 at ¶ 49.

Why? At that time, Texas A&M was promoting its "12th Man" tradition through an aggressive media campaign. Dckt. Entry 251 at ¶ 7; Dckt Entry 15 at ¶¶ 38-40. Marquardt's office, in conjunction with the Texas A&M Athletic Department, ran the campaign. Dckt. Entry 251 at ¶ 7; Dckt Entry 15 at ¶¶ 38-39.  The Canning Article was twice posted to Texas A&M's website and included in the TAMU Times electronic magazine, each time with the CMI removed. Dckt. Entry 273-5; Dckt Entry 15 at ¶ 40.

In January 2014, the website where the article was posted received approximately 10,000 unique visitors per day and approximately 50,000 daily page views. Dckt. Entry 15 at ¶ 41. Additionally, the link to the Canning Article was shared on social media approximately 700 times in the first two days it was available. *Id*. At the time the Canning Article was shared by the Twitter account *@aggiefootball*, that account alone had approximately 145,000 followers. *Id*. at ¶ 35.

- 4 -

Those actions caused Canada Hockey to file the instant lawsuit seeking damages for Marquardt's infringement of the article by posting it to the internet and social media and for his removal of the CMI from the document.

## STANDARD OF REVIEW

Marquardt correctly states the standard of review for a motion for a judgment on the pleadings. However, the instant motion is not merely a motion for a judgment on the pleadings, but is instead, a motion for reconsideration of the Court's March 19, 2019 Order denying Marquardt relief under this same argument.

Under Rule 54(b), a court may reconsider and reverse its decision when a "sufficient" reason exists. *Barnett v. Wells Fargo Bank, N.A.*, No. 4:19-cv-821, 2020 U.S. Dist. LEXIS 123724, at 4-5 (July 14, 2020 (Hanen, J.). In deciding if a "sufficient" reason exists, the Court must begin with the legal standard that originally applied, in this case the standard applicable to a motion to dismiss or for a motion for a judgment on the pleadings.

The standard for a Rule 12(c) motion for judgment on the pleadings is identical to the standard for a Rule 12(b)(6) motion for failure to state a claim. *Waller v. Hanlon*, 922 F.3d 590, 599 (5th Cir. 2019) (citing *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008)). To survive a motion for judgment on the pleadings, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing Twombly, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are

'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In reviewing a motion for judgment on the pleadings, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). The Court is not bound to accept factual assumptions or legal conclusions as true, and only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 678-79. When there are well-pleaded factual allegations, the court assumes their veracity and then determines whether they plausibly give rise to an entitlement to relief. *Id.*

## ARGUMENT

### I.    Canada Hockey's Claims are Not Brought "Under" the Texas Torts Claims Act.

### A.  The Texas Torts Claim Act Does Not Apply to Violations of Federal Law.

Marquardt argues that Canada Hockey's claims are brought pursuant to the Texas Torts Claim Act. For that proposition, Marquardt cites to Texas state court authority that all tort claims brought against a governmental unit "are assumed to be 'under [the Tort Claims Act]'" Dckt. Entry 285 at 4 (citing *Franka v. Velasquez*, 332 S.W. 3d 367, 379-80 (Tex. 2011)). Marquardt does not cite to any federal authority for that proposition because no such authority exists as it relates to violations of federal law.

Under the Supremacy Clause of the U.S. Constitution, "the laws of the United States . . . shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the Constitution or laws of any State to the contrary notwithstanding." U.S Const. Art. VI, cl. 2. Thus, Texas has no power to pass a law that limits the application of the Copyright Act.

Federal courts in this District have recognized this principle, expressly finding that the Texas Torts Claim Act applies in federal courts to state law claims but does not apply to federal law claims. *See Pyle v. City of Harlingen*, No. 1:13-cv-147, 2014 U.S. Dist. LEXIS 37196, at \*18 (S.D. Tex. March 20, 2014) (citing *Lapides v. Bd. of Regents of Univ. Sys. of Georgia*, 535 U.S. 613, 617 (2002)). In fact, every § 1983 case that moves forward against an individual Texas governmental employee, implicitly makes such a finding. The reason that such findings are implicit is that police officers and other governmental employees do not raise the Texas Tort Claims Act as it relates to violations of federal law because it is obvious that Texas law cannot override federal law. *See e.g. Gonzales v. Sanchez*, No. SA-23-cv-694, 2024 U.S. Dist. LEXIS 53469, at \*4 (W.D. Tex. Mar. 25, 2024) (defendants arguing immunity pursuant to Texas Torts Claim Act for state law claims, but not for constitutional claims or claims brought pursuant to the Americans with Disabilities Act); *Smith v. Criner*, No. 4:19-cv-1614, 2020 U.S. Dist. LEXIS 153014, at \*7 (S.D. Tex. Mar. 31, 2020) (applying the Texas Torts Claim Act to state law assault claim, but not to federal law claims); *Hartman v. Walker*, No. 1:13-cv-355, 2015 U.S. Dist. LEXIS 125027, at \*110 (E.D. Tex. Aug. 14, 2015) (Defendant asserting Texas Torts Claim Act only as to state law claims); *Adams v. City of Laredo*, No. L-08-165, 2011 U.S. Dist. LEXIS 54384, at \*37 (S.D. Tex. May 19, 2011) (Defendants asserting immunity through the Texas Torts Claim Act for state law claims, but not federal law claims); *Goodman v. Harris County*, No. H-03-4198, 2005 U.S. Dist. LEXIS 63004, at \*40 & 49-50 (S.D. Tex. Aug. 26, 2005) (Defendant asserts immunity from state law claims, but not federal law claims).

In short, Texas federal courts have made clear the Texas Torts Claim Act only applies to "common law cause[s] of action" and not to federal law. *Foston v. Galveston Indep. Sch. Dist.*, No. G-06-270, 2006 U.S. Dist. LEXIS 56652, at \*5-6 (S.D. Tex. Aug. 1, 2006). The Texas Torts

PD.49461856.1

Claim Act has no application to federal claims brought against individuals employed by the state. Such a determination ends the necessary analysis and requires denial of Marquardt's Motion.

### B. To the Extent that Texas Intended the Texas Torts Claim Act to Apply to Copyright Claims, Congress has Preempted Such an Application.

The Copyright Act preempts all state law which overlaps its subject matter, providing that "all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright . . . are governed exclusively by this title" and "no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State." 17 U.S.C. § 301(a).

As the Fifth Circuit explained, "Section 301 of the Copyright Act preempts state law claims that fall within the general scope of federal copyright law." *Ultraflo Corp. v. Pelican Tank Parts, Inc.*, 845 F.3d 652, 656 (5th Cir. 2017) (citing *Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 785 (5th Cir. 1999)). This preemption is broad, preempting state protection not only of fixed forms that could be subject to copyright protection, but also protections "that fall within the subject matter (that is, the scope) of copyright, regardless of whether the works are actually afforded protection under the Copyright Act." *Id*. (citing *Spear Mktg., Inc. v. BancorpSouth Bank*, 791 F.3d 586, 596-97 (5th Cir. 2015)). "As the Fourth Circuit put it, 'the shadow actually cast by the Act's preemption is notably broader than the wing of its protection.'" *Id*. at 656-57 (quoting *United States ex rel. Berge v. Bd. of Trustees*, 104 F.3d 1453, 1463 (4th Cir. 1997)).

While the Texas Torts Claim Act is silent as it relates to federal law generally and copyright law specifically, assuming that Marquardt's theory was correct—that claims under the Copyright Act were torts claims affected by the Texas Torts Claim Act—then the Act is preempted.

The Fifth Circuit applies a two-part test to determine if the Copyright Act preempts a state law. "Courts first ask whether the intellectual property at issue is within the subject matter of

copyright. If it is, then a state law claim is preempted if it protects rights in that property that are equivalent to any of the exclusive rights within the general scope of copyright." *Id*. at 657 (citing *Alcatel*, 166 F.3d at 785-86).

Here, there can be no dispute that the material at issue, a book chapter, is within the subject matter of copyright. *See generally Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991) (holding organization of a phone book sufficiently creative for copyright protection). Thus, to the extent that Texas intended the Texas Torts Claim Act to apply to copyright claims, such application would directly overlap with and be equivalent to a copyright claim brought pursuant to the Copyright Act. As such, if such an application was intended, the Texas Torts Claim Act would be preempted by the Copyright Act. This too would, by itself, be sufficient to defeat Marquardt's argument.

## II.    States Cannot Grant Individuals Immunity from Federal Law.

Not only is this a well settled application of the interplay between Texas state law and federal law, but courts across the country, including the United States Supreme Court, have come to the same conclusion finding the Supremacy Clause prohibits states from adopting laws to give their employees immunity from federal laws.

In *Haywood v. Drown*, the Supreme Court applied the Supremacy Clause to hold that a state—New York—could not pass its own laws to grant immunity for state officials and employees against federal claims being asserted in New York state courts. 556 U.S. 729, 736-37 (2009). The Court observed: "[t]hat New York strongly favors a rule shielding correction officers from personal damages liability and substituting the State as the party responsible for compensating individual victims is irrelevant." *Id*. at 737.

PD.49461856.1

It is obvious that, if a state lacks authority to immunize its officers or employees against federal claims asserted in its own state courts, a state certainly lacks the authority to grant immunity to state officials or employees against federal claims asserted in federal courts.

The Fourth Circuit's decision in *Richard Anderson Photography v. Brown*, 852 F.2d 114 (4th Cir. 1988) confirms this point in the copyright law context. The Fourth Circuit rejected the argument that Virginia state law immunity could immunize state officials accused of copyright infringement, holding that the Copyright Act was the supreme law of the land, which controlled over any state law attempts to diminish its reach. *Id*. at 122-23. "Any immunity for violation of rights [in the infringed] materials would obviously diminish the scope of the Act's protection." *Id*. at 123. Thus, "state law cannot provide immunity to persons sued for violating the Copyright Act." *Id*. at 122. Other courts have followed the analysis of *Richard Anderson Photography*. *See e.g. Berio-Ramos v. Flores-Garcia*, No. 13-1879, 2020 U.S. Dist. LEXIS 94617, at *3 n.1 (D.P.R. May 28, 2020); *Kersavage v. University of Tennessee*, 731 F. Supp. 1327, 1329-30 (E.D. Tenn. 1989) (finding state immune from copyright claims, but allowing claims to move forward against individual defendants).

Marquardt's attempt to use the Texas Torts Claim Act to shield him from liability under the Copyright Act fails under the Supremacy Clause, *Haywood*, *Richard Anderson Photography*, and the prior decisions from this District finding that the Texas Torts Claim Act has no application when federal law is at issue.

Again, this alone is sufficient to defeat Marquardt's Motion.

## **CONCLUSION**

Plaintiffs Bynum and Canada Hockey asks this Court to deny Marquardt's Judgment on the Pleadings.

Respectfully submitted,

/s/ David L. Patrón
David L. Patrón (Attorney-In-Charge)          Andrew W. Coffman
Texas Bar No. 24101336                        Mississippi Bar No. 106207
Lindsay Calhoun                               Texas Bar No. 3860598
Texas Bar No. 24134740                        PHELPS DUNBAR LLP
James H. Gilbert                              105 East Main Street, Suite 201
Louisiana Bar No. 36468                       Post Office Box 1220
(admitted *Pro Hac Vice*)                     Tupelo, MS 38802-1220
PHELPS DUNBAR LLP                             Telephone: (662) 842-7907
Canal Place | 365 Canal Street, Suite 2000    Facsimile: (662) 842-3873
New Orleans, Louisiana 70130                  Email: andrew.coffman@phelps.com
Telephone: (504) 566-1311
Facsimile: (504) 568-9130
Email: patrond@phelps.com
         lindsay.calhoun@phelps.com
         james.gilbert@phelps.com

and                                           and

Charles W. Prueter                            Warren V. Norred
(admitted *Pro Hac Vice*)                     Texas Bar No. 24045094
FORTIF LAW PARTNERS, LLC                      NORRED LAW, PLLC
2021 Morris Avenue, Suite 300                 515 E. Border Street
Birmingham, Alabama 35203                     Arlington, Texas 76010
Telephone: 205-792-2639                       Telephone: (817) 704-3984
Email: charles@fortif.com                     Facsimile: (817) 524-6686
                                              E-mail: warren@norredlaw.com

**ATTORNEYS FOR PLAINTIFFS**

<u>**CERTIFICATE OF SERVICE**</u>

I certify that, on May 16, 2025, this document was filed electronically and will be served

on all counsel of record via the Court's ECF system.

                                              /s/ David L. Patrón
                                              David L. Patrón